IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

THE UNITED STATES OF AMERICA, ex rel. MICHAEL T. BROOKS,

Plaintiff,

v.

TRILLIUM COMMUNITY HEALTH PLAN, INC. and AGATE RESOURCES, INC.,

Defendant.

Case No. 6:14-cv-01424-AA
OPINION AND ORDER

Jesse L. London
Attorney at Law
888 W. Park Street
Eugene, Oregon 97401
Attorney for plaintiff-relator

Reilley D. Keating
Stephen H. Galloway
Stoel Rives LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, OR 97204
Attorneys for defendants

AIKEN, Judge:

Plaintiff-relator Michael Brooks ("relator") filed this *qui tam* action against defendants Trillium Community Health Plan, Inc. ("Trillium") and Agate Resources, Inc. ("Agate") (collectively "defendants"), alleging violations of the False Claims Act ("FCA"), federal anti-discrimination laws, the federal Anti-Kickback Statute, and the Stark Law, as well as common law unjust enrichment. Relator's claims stem from alleged misconduct he observed while employed by defendants. Defendants move to dismiss all claims in relator's First Amended Complaint (doc. 34) pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). Defendants assert relator's claims should be dismissed because (1) the claims are time-barred, (2) relator failed to satisfy the pleading requirements stated in Rules 8 and 9(b), and (3) relator lacks standing to bring the unjust enrichment claim. For the reasons set forth below, defendants' Motion is granted.

**BACKGROUND**

Relator worked as a database administrator for defendants from 2005 to 2013. Relator describes the relationship between Trillium and Agate as "alter egos" with regard to his "assigned duties in the shared databases." Compl. ¶ 1. He alleges he received paychecks from both Agate and Trillium at different times. During his employment, relator contends defendants submitted false claims to the federal government in the form of duplicative Medicare and Medicaid claims for payment. Relator further alleges defendants violated (1) federal anti-discrimination laws, (2) the federal Anti-Kickback Statute, and (3) the Stark Law, which prohibits financial relationships between referring physicians and entities receiving referrals. Finally, relator alleges defendants falsely certified their compliance with all federal laws, despite their violation of the aforementioned laws.

Relator alleges he was "privy to intimate details concerning how [d]efendants' Medicaid and Medicare claims data was generated, maintained, and for what purposes it was used" during his employment. Compl. ¶ 1. He "frequently was asked by top officers in [d]efendants['] organization to search and manipulate data for reporting or other purposes on behalf of Trillium or Agate." Compl. ¶ 1. Relator alleges he "became very concerned with respect to potential claims fraud, improper disclosure of [personally identifiable and private health information], and discrimination against poor patients." Compl. ¶ 1. Relator was rebuffed when he expressed his concerns to one of defendants' senior officers. Shortly thereafter, defendants terminated relator, allegedly under false pretense.

After he was fired, relator "contacted state enforcement authorities to alert them to [d]efendants' misconduct"; the authorities were allegedly unresponsive. Compl. ¶ 1. Relator filed his original *qui tam* complaint in camera and under seal on September 3, 2014. *See* Doc. 3. The United States declined to intervene in the action on May 22, 2015, at which point the Court unsealed the complaint and ordered service upon defendants. *See* Docs. 12 and 13. Relator moved for appointment of pro bono counsel on June 10, 2015, and the Court granted that motion, appointing Jesse L. London as counsel. *See* Docs. 24 and 26. With the assistance of pro bono counsel, relator filed the First Amended Complaint on October 19, 2015. Defendants' Motion to Dismiss First Amended Complaint or, In the Alternative, For a More Definite Statement and Memorandum of Law (doc. 47) was filed on December 14, 2015, and is now before this Court.

**STANDARD OF REVIEW**

"[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint."[1] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Under Rule 12(b)(6), a complaint is construed in favor of the non-moving party, and its factual allegations are taken as true. *Id.* "To survive a motion to dismiss, [the] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires the plaintiff include in his complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Allegations of fraud or mistake must satisfy a higher pleading standard: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Because they involve allegations of fraud, *qui tam* actions under the FCA must meet not only the requirement of Rule 8, but also the particularity requirements of Rule 9." *United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) (citing *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001)). However, "[u]nlike the 'circumstances constituting fraud or mistake' which must be alleged with particularity, 'conditions of a person's mind,' such as scienter, can be alleged generally. *United States ex rel. McGrath v. Microsemi Corp.*, 2015 WL 6121568, *16 (D. Ariz. Sept. 30, 2015) (alterations normalized) (quoting Fed. R. Civ. P. 9(b)).

---

[1] "A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). "Because a dismissal of a complaint or claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner." *Id.*

"To comply with Rule 9(b), allegations of fraud must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee*, 236 F.3d at 1019 (quoting *Neubronner v. Miliken*, 6 F.3d 666, 672 (9th Cir. 1993)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997)). "Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010). If alleged fraud took place over several years, however, the complaint need not "allege, in detail, all facts supporting each and every instance of false [statement] over a multi-year period." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001).

**DISCUSSION**

Defendants assert three bases for dismissing relator's First Amended Complaint. First, defendants' contend the claims are time-barred by the FCA's statutes of limitation and repose because the representative examples relator provided in Exhibits A through D of the Complaint occurred before September 3, 2008. Second, defendants aver the First Amended Complaint is not adequately pleaded, specifically with regard to relator's false claim and certification claims. Third, defendants argue relator does not have standing to bring his unjust enrichment claim because he did not suffer an injury.

I. *Timeliness of Claims*

Defendants assert this Court should dismiss relator's claims because they are untimely. Timeliness is a threshold issue; as a private individual bringing a *qui tam* action under 31 U.S.C. § 3730(b), relator cannot bring his claim

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b). Relator filed his original complaint on September 3, 2014. *See* Doc. 3. Accordingly, 51 of the 56 representative examples listed in relator's exhibits for the First Amended Complaint fall outside 3731(b)(2)'s 10-year statute of repose because they occurred before September 3, 2004. Defendants argue the five remaining representative examples are time-barred by the 6-year statute of limitations because all occurred before September 3, 2008.

At this stage, it would be premature to conclude the statutes of limitations and repose bar plaintiff's claims. Defendants correctly state that any claims for violations committed prior to September 3, 2004 and September 3, 2008 are time-barred by the statutes of repose and limitations, respectively. At this stage, however, the fact that all plaintiff's representative examples occurred outside the statutes of limitations and/or repose represents a pleading deficiency rather than a bar to relief as a matter of law. As discussed above, Rule 9(b) pleadings must include the "who, what, when, where, and how" of the alleged misconduct. The First Amended Complaint broadly refers to activity throughout relator's employment with defendants, from 2005 to 2013. It also refers to "more

than 200,000 possible instances of duplicated billing data" obtained in discovery. Compl. ¶ 30. The problem is not that relator failed to allege violations within the statutes of limitation and/or repose — it is that he failed to do so *with sufficient particularity*. Representative examples are one way of meeting the particularity requirement. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010). But here, the representative examples cannot cure the particularity deficiencies of the Complaint because the vast majority of them are time-barred by the statute of repose. Relator may remedy this problem by providing timely representative examples[2] or by otherwise amending the Complaint to include particularized allegations within the statutes of limitation and repose.[3]

II. *Relationship between Trillium and Agate*

Relator's First Amended Complaint also inadequately pleads the relationship between Trillium and Agate. When a plaintiff alleges multiple defendants engaged in fraud, "Rule 9(b) does not allow [the] complaint to merely lump [the] defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). While the plaintiff is not required to "identify false statements made by each and every defendant" engaged in an alleged fraudulent scheme, the plaintiff must "differentiate

---

[2] Because section 3731(b) bars actions commenced either six years after the violation was committed or three years after the date when the "*qui tam* plaintiff knows or reasonably should have known the facts material to his right of action," whichever occurs later, *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217-18 (9th Cir. 1996), any representative examples that occurred on or after September 3, 2008 are timely. Whether representative examples that occurred between September 3, 2004, and September 2, 2008, are timely depends on when relator knew or reasonably should known the material facts for his claims. That issue is not before the Court in its consideration of this Motion.

[3] Representative examples outside of the statutes of limitation and repose may still serve as background evidence that defendants knew they were submitting false claims and certifications. *Cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (Interpreting the Title VII of the Civil Rights Act of 1964, the Court held that an employee was not barred "from using the prior acts as background evidence in support of a timely claim.").

their allegations . . . and inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Id.* at 764-65 (internal quotations marks omitted). The "plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989)).

Based on the First Amended Complaint, it is unclear whether relator alleges Trillium and Agate acted as "alter egos,"[4] acted jointly and separately in committing the various acts at issue,[5] or acted as co-conspirators.[6] Whatever relator's theory of Trillium and Agate's relationship with regard to the alleged false claims and certifications, relator has not pleaded that theory with sufficient particularity. The First Amended Complaint must allege the relationship between Trillium and Agate with particularity and each claim must inform Trillium and Agate of their alleged respective roles in submitting false claims and certifications to the federal government. Without this information, none of relator's claims are pleaded with particularity under Rule 9(b).

---

[4] In the First Amended Complaint, relator pleads Trillium and Agate "were treated as alter egos from the perspective of [relator's] assigned duties." Compl. ¶ 1. However, relator does not plead particularized facts to show Trillium and Agate functioned as alter egos for the purposes of relator's claims.

[5] Throughout most of the First Amended Complaint, relator alleges "defendants" falsely submitted false claims and falsely certified compliance with federal law. *See, e.g.*, Compl.¶¶ 30, 41, 49. However, paragraph 47 of the First Amended Complaint implies Agate may have acted alone in giving remuneration to and maintaining a financial relationship with physicians. *See* Compl. ¶ 47 (discussing shares of Agate stock as the alleged kickback). Based on relator's allegations, it is not clear when he is alleging Trillium, Agate, or both, committed the underlying acts of the alleged FCA violations.

[6] Relator alleges the defendants "conspired to defraud the federal government" and used "concerted efforts" in his Anti-Kickback Statute and Stark Law false certification claims. Compl. ¶¶ 69, 80. 31 U.S.C. § 1329(a)(1)(C) creates civil liability for conspiring to violate another provision of the FCA. From these limited references, the First Amended Complaint does not clearly indicate whether relator is alleging Trillium and Agate acted as co-conspirators in violation of 31 U.S.C. § 1329(a)(1)(C).

III. *Adequacy of Pleading*

Defendants also aver relator has not adequately pleaded his FCA claims under Rule 9(b) and, therefore, urge the Court to dismiss the claims. Relator's FCA claims consist of (1) duplicative billing in violation of 31 U.S.C. § 3729(a)(1)(A) and (2) false certifications in violation of 31 U.S.C. § 3729(a)(1)(B).

A. *Relator's Duplicative Billing Claim*

In the First Amended Complaint, relator alleges defendants submitted duplicative Medicaid bills in violation of 31 U.S.C. § 3729(a)(1)(A). Under section 3729(a)(1)(A), a person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" is liable to the federal government. 31 U.S.C. § 3729(a)(1)(A). To plead the claim, the relator must allege "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012). Defendants assert relator failed to adequately plead any of the four elements.

For the first element, relator alleges "there are approximately 300 false claims" for neonatal critical care, which "are only the tip of the iceberg in a sea of many tens of thousands" of duplicative billing entries. Compl. ¶ 32. Relator's allegations in paragraph 32 do not give the defendants notice of the particular alleged misconduct. The allegations do not describe the time, place, or manner of the alleged 300 false claims and they do not identify the roles of Trillium and Agate in submitting the allegedly false claims.

In an exhibit attached to the First Amended Complaint, relator also provides representative examples. One such example is reproduced below:

| **Claim Number** | 200309257400060 | 200309257400069 |
|---|---|---|
| **Claim Line** | 4729037 | 4729072 |
| **Provider ID** | 810154 | 810154 |
| **Vendor ID** | 10517 | 10517 |
| **Service Date** | 7/30/03 | 7/30/03 |
| **Procedure Code** | 99296 | 99296 |
| **Qty** | 1 | 1 |
| **Billed Amount** | $846.00 | $846.00 |
| **Contract Value** | $431.46 | $431.46 |
| **Net Amount** | $431.46 | $431.46 |
| **Date Paid** | 9/30/03 | 9/30/03 |
| **Check Number** | 87054 | 87054 |

Compl. Ex. B, Example 4. While relator's examples like the one above show several instances of billing under the same procedure code in the same amount, it is unclear whether the examples show duplicative billing. Relator alleges Procedure Code 99296 may not be billed more than once per day per patient; however, relator's representative examples do not include patient identifiers. Without a patient identifier, it is not possible to determine whether the allegedly duplicative Procedure Code 99296 billing entries were improperly submitted for the same patient twice in one day or were properly submitted for two different patients on the same day. Therefore, relator has failed to allege duplicative billing with sufficient particularity.

The third element, presentation of false claims to the United States for payment and approval, is also inadequately pleaded. While relator alleges in paragraphs 33 and 34 of the First Amended Complaint that defendants made and presented false claims, these allegations are insufficiently particular. Relator does not identify the roles of Trillium and Agate in allegedly presenting the false

claims to the government for payment. Further, as discussed above, most of the representative examples relator presents to satisfy the particularity requirements are untimely. Without identifying the defendants' respective roles or presenting sufficient timely particularized examples, relator has not adequately pleaded this element.

Defendants aver relator failed to adequately plead the second element, materiality, when he did not expressly allege the false claims were material to the government decision to pay the claims. In response, relator asserts its allegations that "[d]efendants' presented many claims" and that "a false claim was made and paid" are sufficient because "the materiality element is hardly at issue here." Pl.'s Resp. to Defs.' Mot. at 7 (discussing Compl. ¶¶ 33-34). In this instance, it is obvious that submission of the allegedly false claims was material to the government's payment of those claims. The Court will not dismiss this pleading on a technicality when all parties knew what was meant. Therefore, relator adequately pleads materiality in the First Amended Complaint.

Finally, relator also adequately pleads the fourth element, knowledge. "A person 'knowingly' submits a false claim not only when he or she 'has actual knowledge of the information,' but also when he or she 'acts in deliberate ignorance' or 'reckless disregard' of the truth or falsity of the information. *Lee*, 245 F.3d at 1053 (quoting 31 U.S.C. § 3729(b)(1)-(3)). Congress included this scienter requirement to ensure "that the [FCA does] not punish honest mistakes or incorrect claims submitted through mere negligence." *United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting S. Rep. No. 99-345, at 7 (1986)). In the First Amended Complaint, relator alleges as much as five percent of all Medicaid claims filed during his employment period were duplicative. Compl. ¶ 32 ("As a percentage of total claims processed of nearly seven million during the period for which [relator] already has access to data, the false claims are as much as 5%

of the total."). Therefore, relator asserts, "Because so many duplicative false claims exist as a percentage of total claims, especially when [d]efendants' role was to police the authenticity of claims, one can easily imply that the practice was intentional or reckless." Compl. ¶ 36. This Court finds these allegations adequately plead the knowledge element.

B. *Relator's False Certification Claims*

In his second, third, and fourth claims, relator alleges defendants violated the FCA by making false certifications to the United States regarding defendants' compliance with federal laws and regulations. *See* Compl. ¶¶ 56, 68, 79. Under the FCA, any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable to the federal government. 31 U.S.C. § 3729(a)(1)(B). To establish a section 3729(a)(1)(B) claim, the plaintiff must prove "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006).

The Ninth Circuit has recognized two sub-types of false certifications: express false certifications and implied false certifications. *Ebeid*, 616 F.3d at 998. Express false certification occurs when "the entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *Id.* In contrast, "[i]mplied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* For all three claims, relator argues defendants violated the FCA through implied false certifications.

1. *Common Deficiency Across Claims*

Relator failed to plead the false statement element with particularity for all three false certification claims. The false statement element is the heart of the FCA claim: "Violations of laws, rules, or regulations alone do not create a cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) (emphasis in original). Relator alleges defendants "made false certifications of compliance and caused other providers to make false certifications." Compl. ¶ 40; *see also* Compl. ¶¶ 56, 68, 79. The First Amended Complaint does not allege any details regarding when defendants made certifications to the federal government, what those certifications contained, or how those certifications were made. Without additional factual allegations regarding the implied false certifications, relator's FCA claims fail to meet the Rule 9(b) pleading requirements.

Defendants also assert pleading deficiencies specific to each of the three false certification claims in the First Amended Complaint. To adequately plead defendants falsely certified compliance with anti-discrimination laws, the federal Anti-Kickback Statute, and the Stark Law, relator must plead that the defendants violated those laws, element by element. *See Ebeid*, 616 F.3d at 998 (When alleging false statements, the plaintiff "must set forth what is false or misleading about a statement, and why it is false."). Therefore, relator must also plead the elements for each underlying violation.

        2.    *Relator's Second Claim*: *Anti-Discrimination Laws*

In his second claim, relator asserts "[d]efendants intentionally failed to follow Medicaid guidelines regarding nondiscrimination of patients." Compl. ¶ 37. However, relator does not indicate which anti-discrimination statute or regulation the defendants allegedly violated. Without such information, the First Amended Complaint does not notify the defendants of the elements of the

underlying violation. Relator and defendants disagree on whether relator needs to plead actual discrimination resulting from defendants' alleged misconduct. However, it is not possible to determine whether actual discrimination is an element of the underlying violation absent reference to the relevant statute or regulation. In his Response to Defendants' Motion to Dismiss, relator cites to guidelines published by the Department of Health and Human Services and the Center for Medicare and Medicaid Services. While the guidelines cited may be informative, relator still has not pleaded which Medicaid or Medicare statute or regulation defendants allegedly violated.[7]

Defendants further argue relator inadequately pleaded scienter with regard to the anti-discrimination certification claim. The scienter element requires the claim be made "with knowledge of the falsity and with intent to deceive" *Hopper*, 91 F.3d at 1265 (quoting the district court's decision). "Innocent mistakes, mere negligent misrepresentations and differences in interpretations are not false certifications under the [FCA]." *Id.* at 1267. Relator alleges defendants admitted that the discriminatory reports were created to allow physicians and hospitals to identify higher cost patients and that the reports were sold to employers "for the purpose of discriminating against their own employees." Compl. ¶¶ 41-42. Relator also names one example of such employer, Monaco Coach. Compl. ¶ 42. Based on these allegations, relator has adequately pleaded the scienter element.

3. *Relator's Third Claim: Federal Anti-Kickback Statute*

In his third claim, relator alleges defendants falsely certified compliance with the federal Anti-Kickback Statute. Relator alleges defendants violated the Anti-Kickback Statute by issuing stock to physicians to induce patient referrals "of business paid for by federal programs, including

---

[7] Further, a relator cannot rectify an inadequately pleaded complaint through his response; instead, he must amend the complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Medicare or Medicaid," to defendants' subsidiaries. Compl. ¶ 59-63. The Anti-Kickback Statute imposes criminal liability on any entity who

> knowingly and willfully offers or pays any remuneration . . . (A) to refer an individual to a person for . . . any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) to purchase, lease, order, or arrange for . . . any good facility, service, or item for which payment may be made in whole or in part under a Federal health care program.

42 U.S.C. § 1320a-7b(b)(2). Remunerations include kickbacks, bribes, and rebates, both direct and indirect, in cash or in kind. *Id.* The "knowingly and willfully" scienter element requires that the defendants knew they were prohibited from offering remuneration to induce referrals and that they "engage[d] in the prohibited conduct with the specific intent to disobey the law." *Hanlester Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir. 1995).

Defendants argue relator has not adequately pleaded scienter. In the First Amended Complaint, relator alleges defendants "knowingly and willfully [gave] remuneration in the form of shares of stock to medical service providers." Compl. ¶ 46. In his Response to Defendants' Motion to Dismiss, defendant clarifies his assertion, stating " the frequency and pattern of shares received correlating with number of referrals shows lack of mistake." Pl.'s Resp. to Defs.' Mot. at 14. Relator further argues that because defendants are "sophisticated actors," the only purpose of transfer of stock could be to induce referrals. Pl.'s Resp. to Defs.' Mot. at 14. This Court finds these allegations are adequate. Relator has put defendants on notice of the allegations against them and has alleged facts which, if proven, would permit a reasonable juror to infer scienter.

Defendants also contend relator did not adequately plead the materiality of this false certification. "To establish the materiality element, 'the false statement or course of conduct must be material to the government's decision to pay out moneys to the claimant.'" *Ebeid*, 616 F.3d at 997

(quoting *Hendow*, 461 F.3d at 1172). "Absent actionable false certifications upon which funding is conditioned, the False Claims Act does not provide such a remedy." *Hopper*, 91 F.3d at 1267. The First Amended Complaint states, "As a prerequisite to participating in federally-funded health care programs, Defendants [] certified . . . their compliance with the Anti-Kickback [s]tatute." Compl. ¶ 66. In this paragraph, relator alleges participation is conditioned upon certification of compliance with the Anti-Kickback Statute. Because participation and, therefore, certification, is a *sine qua non* of receiving funding, the materiality element is adequately pleaded. *See Ebeid*, 616 F.3d at 997.

4. *Relator's Fourth Claim: Stark Law*

In his final false certification claim, relator alleges defendants falsely certified their compliance with 42 U.S.C. § 1395nn, also known as the Stark Law. Under the Stark Law, if an entity has a financial relationship with a physician, the physician may not make a referral to the entity for designated health services payable through Medicare and the entity may not present a Medicare claim for any designated health services furnished pursuant to the prohibited referral. 42 U.S.C. § 1395nn(a)(1). A financial relationship exists if the physician has an ownership interest in, investment interest in, or compensation arrangement with the entity. *Id.* § 1395nn(a)(2). "Designated health services" include a variety of inpatient and outpatient services, as well as durable medical equipment. *Id.* § 1395nn(h)(6). Relator alleges several physicians had financial relationships with defendants because they held Agate stock, and those physicians referred patients to defendants' subsidiaries for designated health services. Relator also alleges defendants submitted Medicare and Medicaid claims for those referred services in violation of the Stark Law.

Relator's pleading of the Stark Law violation and accompanying false certification claim is inadequately particular. First, as discussed above, all examples relator provides of allegedly

prohibited claims are untimely.[8] Second, relator does not adequately plead materiality because relator does not allege in the First Amended Complaint that receipt of funding is conditioned on certification of compliance with the Stark Law. To adequately plead the Stark Law false certification claim, relator needs to provide timely representative examples or otherwise alleged particularized facts of the violation, and relator needs to plead materiality.

IV. *Unjust Enrichment*

Finally, defendants contend relator lacks standing to assert his common law unjust enrichment claim because he suffered no injury. In his Response to Defendants' Motion to Dismiss, relator concedes that he lacks standing for this claim. Accordingly, this Court dismisses the unjust enrichment claim (Compl. ¶¶ 83-85) with prejudice.

V. *Leave to Amend Complaint*

Both relator and defendants argue in the alternative for amendment of the First Amended Complaint. If a complaint fails to satisfy the Rule 9(b) particularity requirements, the court should grant the plaintiff leave to amend the complaint "unless [it] 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee*, 236 F.3d at 1019 (quoting *Lopez v.*

---

[8] Defendants also argue relator failed to adequately plead a Stark Law violation because the representative examples he provided are Medicaid claims, not Medicare claims. The Court is not convinced by this argument. While 42 U.S.C. § 1395nn(a)(1) specifically addresses Medicare claims, 42 U.S.C. § 1396b(s) makes the Stark Law applicable to Medicaid claims as well. *See, e.g., United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 666 (S.D. Tex. 2013) ("Although Stark originally applied only to Medicare claims, it was later expanded to apply to Medicaid claims. *See* 42 U.S.C. § 1396b(s) . . . . Moreover, even if its own Medicaid claims to [the State] did not create FCA liability, [defendant] could still be liable for causing [the State] to submit a claim in violation of Stark."); *United States v. All Children's Health Sys., Inc.*, 2013 WL 6054803, *7 (M.D. Fla. Nov. 5, 2013) ("Certifying compliance with the Stark Amendment to ensure [federal payment to the State] for Medicaid claims that violate the Stark Amendment would be a violation of the [FCA] in the same manner that certifying compliance for full reimbursement under Medicare would be.").

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)). The court should dismiss the complaint without leave to amend only "if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). Allegations of other facts could cure the timeliness and pleading deficiencies of relator's first, second, third, and fourth claims. Therefore, this Court grants relator leave to amend the Complaint to remedy the pleading deficiencies discussed above.

**CONCLUSION**

Defendants' Motion to Dismiss First Amended Complaint or, In the Alternative, For a More Definite Statement and Memorandum of Law (doc. 47) is GRANTED. Relator's unjust enrichment claim (Compl. ¶¶ 83-85) is dismissed with prejudice. Relator is granted leave to amend the remainder of the First Amended Complaint to meet the particularity requirements for allegations of fraud under Federal Rule of Civil Procedure 9(b).

IT IS SO ORDERED.

Dated this 29th of April 2016.

Ann Aiken

Ann Aiken
United States District Judge