REDACTED

May 28, 2021

**20-8413**



# IN THE
## SUPREME COURT OF THE UNITED STATES

### MICHAEL T BROOKS

#### <u>Petitioner</u>



Supreme Court, U.S.
FILED

AUG 2 8 2020

OFFICE OF THE CLERK

vs

### US COURT OF APPEALS FOR THE NINTH CIRCUIT CASE #19-71240
Brooks v US DOL Review Board #2017-0033
### US DOL ADMINISTRATIVE REVIEW BOARD CASE #2017-0033
BROOKS v Agate Health Care, appealing
### US DOL, ADMINISTRATIVE LAW CASE #2016-SOX-00037
Brooks v Agate Resources

#### <u>Respondents</u>

### ON PETITION FOR WRIT OF CERTIORARI

Michael T Brooks
32713 Vintage Way
Coburg, Oregon 97408
541-556-6130

**EXHIBIT 4**
**Page 1 of 49**

## TABLE OF CONTENTS

Table of Contents_____ ii
Questions Presented_____ iii
List of Parties_____ vi
Related Cases_____ vii
Inedex to Appendixes_____ viii
Table of Authorities Cited_____ viv
Statutes & Rules_____ ix
Opinions Below_____ 1
Jurisdiction_____ 1
Constitutional and Statutory Provisions Involved_____ 2
Statement of the Case_____ 2
A. In Forma Paueris, APCP 24 AND Motion To Appoint Counsel_____ 3
B. ADA, ADAAA, Rehabilitation Act Violations_____ 3
C. Corporate Structure of Centene and Agate_____ 9
D. Continuing Harassment by Agate &Oregon, Employment Department____ 12
E. Current Retaliation By Centene, Prescription Drugs, Testing_____ 13
F. 2017 Retaliation By Centene, Testing, Surgeries, Physical Therapy_____ 15
G. Origin of ALJ Cases - Berlin and Larson; original BOLI/OSHA Filing___ 17
H. Origin of ALJ Cases - Berlin and Larson; original BOLI/OSHA Filing___ 18
I. ALJ Confused By Stoel Rives and Brooks Proof of Filing_____ 22
J. Stoel Rives and Donna Brown; Criminal Violations_____ 33
K. Jeffrey Wertkin_____ 33
L. Reasons For Granting The Petition_____ 34
M. Conclusion_____ 35

## QUESTIONS PRESENTED

PRIMARY

1. May an Appellate Court ignore the statutory requirements of FRAP 24? Petitioner, Michael T. Brooks, had been granted in forma pauperis status at the District Court level (6:15-cv-0098, docket #5) and that was still operable. It had never been challenged nor rescinded under 28 USC §1915(a3).

2. Are the federal Article 3 Courts subject to Congressional statutes and international treaties to which the United States is signatory? The ADA, ADAAA, Rehabilitation Act plainly state that any agency receiving federal money is subject to the requirements of those acts.

3. May the Administrative Courts ignore Congressional statutes with regards to whistleblower claims? The Administrative Courts had contact with and conversations with the Seattle OSHA offices and its administrators. This violates statutory requirements separating and

EXHIBIT 4
Page 2 of 49

prohibiting such communications between the ARB and ALJ and US DOL. Yet, in FOIA filings we find that Seattle OSHA did communicate with the ALJ's, communicated with Stoel Rives, and never held a required investigation of Brooks' OSHA Act claims.

4. Under what circumstances may a court deny assistance to a disabled and impoverished litigant? Brooks showed, as required by the Appellate Court, that he could not afford medical and legal expenses on Social Security. Brooks requested the appointment of counsel because he was passing out, experiencing heart attacks, was hospitalized for increasingly worsening paralysis, was hospitalized for a brain infection and injuries that resulted in multiple sclerosis.

5. There is no rhyme nor reason to govern employers moving an employees jobs from "Exempt" to "Nonexempt". Nonexempt employees are paid for overtime. Exempt employees are not paid for overtime and can, and are, assigned long hours. Theoretically, "exempt" workers are salaried professionals that oversee other employees. Brooks was hired as a "Nonexempt" employee, the Data Warehouse Administrator. Brooks did not oversee anyone and certainly was not management. Agate simply changed his job to "exempt" so they could harass him into quitting by working him to work inhuman hours at two jobs; as a janitor, whenever MS. Korjenek felt like it,  and as a database administrator and programmer. If federal law permits this, you have a huge problem. At the very least, complaints of harassment by Brooks to Seattle OSHA, Oregon OSHA, US DOL Wage and Hour Division, and Oregon Bureau of Labor and Industries [BOLI] ended with Brooks being told that they would do nothing and could do nothing. It seems to me this violated the ADA and the Civil Rights Act.

SECONDARY

6. Does the State of **Oregon have sovereign immunity** to deny Oregon resident legal rights granted by the Congress, the Supreme Court, and the Constitution? Specifically, can Oregon deny Petitioner Michael T. Brooks, and other Oregon residents redress under

- the Civil Rights Act?

    *Oregon claims sole jurisdiction over civil rights cases and immunity from federal law… Under 42 U.S.C. § 2000d(4) - (7).….arises from or relates to the OHP Contract <u>shall be brought and conducted solely and exclusively within the Circuit Court of Marion County for the State of Oregon;</u> provided, however, <u>if a claim must be brought in a federal forum, then it shall be conducted solely and exclusively within the United States District Court of the District of Oregon.</u> In no event shall this paragraph 19 be construed as a waiver of the State of Oregon of the jurisdiction of any court or of any form of defense to or immunity from any claim whether sovereign immunity, governmental immunity, immunity based on the Eleventh Amendment to the Constitution of the Unites States" [Oregon DOJ OHP Contracts, in the section "Governing Law, Consent to Jurisdiction"]*

- the ADA, ADAAA, Rehabilitation Act?

- the whistleblower statutes enacted by congress?

    *Oregon OSHA: "Federal OSHA doesn't have jurisdiction in Oregon….We are a State Plan state. So we manage our own state plan, our own OSHA regulations and Bureau of Labor and Industries for Oregon handles the whistleblower worker retaliation claims.*

*That's the way it works in Oregon....OSHA doesn't have any jurisdiction here unless you're on a reservation or a controlled military base or something of that nature...And, if you called the Federal Labor and Industries people (US Department of Labor),  they can't do anything. You would have needed to call...BOLI, 971-673-0764* [from a recorded telephone call with Oregon OSHA Administration; one of four similar recordings].   **[Exhibit 1]**

*Federal OSHA seem to have agreed with Oregon and would deny whistleblowers access to federal protection. In the case of the Seattle regional office, every single whistleblower case brought against Oregon or Oregon contractors has been dismissed. In fact, federal employees at that office work with and communicate with Oregon lawyers and ODOJ Assistant Attorney Generals.*

- HIPAA Privacy Act Protections of Patients?

  *This was asserted to Brooks by an Assistant AG at the Oregon Department of Justice when Brooks reported the sale of employee and family medical, counseling, psychiatric, prescription drug, and laboratory records by Oregon Health Plan contractor Agate Resources in Oregon and 32 other states. Oregon claims exemptions from the federal statute.*

7. May the Courts and Administrative law judges disregard writings, declarations and evidence presented by Pro Se litigants and take that of attorneys instead?

8. May the State of Oregon and its Oregon Health Plan contractors abrogate treaties signed and ratified by the United States? In violation of this Court's ruling in 9 W. Hening, Statutes of Virginia 377-38●, 1821

   - *Agents of the Oregon Health Authority (OHA), a State of Oregon agency and acting as state representatives of Oregon and acting under cover of state law DID VIOLATE the Fourth Geneva Convention, Section 3 - "outrages upon the personal dignity, [and] in particular were humiliating and degrading". OHA **SOLD** to Agate Resources medical and counseling records of foreign college students, some of them the children of* ▮▮▮▮▮▮▮ *Agate Resources, in turn, sold those records to information warehouses, employers and agents of foreign governments.* Oregon **involved the United States in violations of the Geneva Accords and Treaties** - "International Covenant on Civil and Political Rights", "Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment", the "Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons", the "Conventions on the Rights of Children", all of which the United States has ratified.

   - *And "degradation" and "humiliation" fits the sale of a* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮*. **Exhibit 2** is an objection by Agate Resource's counsel and the Oregon District Court to hide this from the US Congress, the US State Department, the consular offices of the governments of these students, and this US Supreme Court.*

   - *Oregon's sale of patient records also violate HIPAA Privacy Act and other US laws, and UN Treaties "International Covenant on Civil and Political Rights", "Convention against*

**EXHIBIT 4**
**Page 4 of 49**

*Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment", the "Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons", the Conventions on the Rights of Children, all of which the United States has ratified.*

- *In addition, the **Oregon Health Authority collected and sold medical, counseling, psychiatric, laboratory, and prescription drug records of patients at the Oregon State (Psychiatric) Hospital.** These were sent monthly to Agate Resources in a zipped file format, containing the name of the OHA researcher who assembled those reports and other forensic evidence proving it could only come from OHA.*

9. Under what circumstances may a District Court Judge prohibit a citizen of the United States from informing his elected representatives, other US Courts and the International Courts and governments of victims of criminal acts by a state government and its contractors? May a District Court Judge issue a sweeping "protective order" [**Exhibit 3**] that precludes a whistleblower from obeying statutory law? That order precludes informing this Court or the US government about tax fraud by Centene, Agate Resources, LIPA, and its executives. The Byzantine corporate structure allows them to jump from state to state to state, employer to employer, on a legal whim. There is, in reality, nothing but Centene. All of its subsidiary's employees are just Centene employees, "leased" to a paper subsidiary with no facility, no equipment, no management, no resources.

     The District Court violated federal law when it did not notify US HHS of the records it was covering in its gag order and did not notify the IRS of tax and securities fraud. Stoel Rives contention that the public has no interest in knowing if Agate and Centene, the outfit handling their health care, are crooks is disingenuous at best. Agate has literally killed patients in order to reward executives with bonuses. Agate and Centene lied to the US government about the number of outstanding shares and the amount of money paid when Agate Resources was sold to Centene in 2015. And, Oregon and Agate broke several laws when they blocked out whole sections of the document governing the merger of Agate and Centene of January 25, 2015: "Agreement and Plan of Merger By and Among Centene Corporation, Prefontaine Sub, Inc., Agate Resources, Inc. and James Dalton, as the Stockholder Representative".

     James Dalton is the former Senior VP at Tektronix, where Brooks worked as a Tektronix Fellow. Mr. Dalton did not own any shares in Agate Resources. Agate Resources, though, had far more shares and money than were revealed to the IRS and state government. As of August 31, 2013, there were 103,202 shares worth $201,243,900. On top of that, there was $131 million in the reserve fund account. The IRS reports had Terry Coplin receiving $5.7 million. He would have gotten $10.6 million as of August 2013, but he was engaged in sider trading, buying shares from employees and doctors that did not know about the impending sale to Centene and would have had at least $15 million from shares alone and another $10 million from the reserve fund "sale" to Centene. How much did he pay in federal taxes? And, here are more whose payouts do not match the records Brooks has:

**EXHIBIT 4**
**Page 5 of 49**

- Terry Coplin, Agate CEO: $5.7 million (3,118 shares)
- Dr. Richard Finkelstein, Eugene anesthesiologist, Agate board director: $5.3 million (2,927 shares)
- David Cole, Agate chief financial officer: $4.2 million (2,298 shares)
- Dr. Leo Cytrynbaum, Springfield internal medicine doctor, Agate board director: $4 million (for 2,183 shares)
- Dr. Thomas Wuest, chief medical officer Centene; Agate and Trillium president and board director: $3.1 million (for 1,691 shares)
- Jim Torrey, former Eugene mayor, Agate board director: $2.5 million (for 1,364 shares)
- Shannon Conley, Agate chief administrative officer: $2.1 million (for 1,185 shares)
- Dr. Tod Hayes, Eugene emergency medicine doctor; Agate vice president, board director: $1.9 million (for 1,058 shares)
- Patrice Korjenek, Agate chief operations officer: $1.5 million (for 800 shares)
- Jordan Papé, businessman, president of Eugene-based Papé Group; Agate board director: $1.4 million (for 750 shares)
- Dr. Mark Meyers, Springfield family practitioner, Agate board director: $1.3 million (for 723 shares)
- Dr. Melissa Edwards, Eugene gynecologist, Agate board director: $840,000 (for 460 shares)
- Dr. Daniel Hutton, Springfield spinal surgeon, Agate board director: $550,000 (for 300 shares)

Brooks has the actual records and the shareholder records, and has those reported to him by Agate employees following his termination, show far more money paid to these executives and insiders than is being reported. And, some of what Stoel Rives is desperately trying to have destroyed are those records. Those records prove tax fraud. The reported shares were reported to have netted $109 million, which is a long ways off from $201 million that the actual records show. Brooks has the database shareholder records and Oregon and the US are looking at $92 million in shareholder fraud and $131 million (plus) for the sale of "reserve funds". And those reserve funds were simply patient medical expenses that Agate did not pay out to vendors for services. Oregon permits its OHP contractors to keep those reserve funds if they are not spent. This is why you see comments from patients like:

> 'This explains why Trillium will not pay out $50 for compression socks, much less replacing my $3800 leg braces" [letter to the editor, Eugene Register-Guard, 2014]

and why a local doctor told the Register Guard:

> "You might expect (this kind of behavior) from the business people — Papé and Torrey — but not from doctors who gave an oath to first do no harm. If you're going to screw over a population and not have any consequences, (Oregon Health Plan patients are) a perfect population. They have no power. This is not a group that are going to hire an attorney and file a class-action suit."

**EXHIBIT 4**
**Page 6 of 49**

## LIST OF PARTIES

.

All parties **do not** appear in the caption of the case on the cover page. A list of all possible parties to the proceeding in the court whose judgment is the subject of this petition is as follows.

US DOL ADMINISTRATIVE REVIEW BOARD CASE #2019-0078

US DOL, ADMINISTRATIVE LAW CASE #2018-SOX-00046
Judge Christopher Larsen
Office of Administrative Law Judges
90 Seventh Street, Suite 4-800
San Francisco, CA 94103

Oregon District Court 6:15-cv-00983-TC/JR/MK/A
Magistrate Judge Thomas Coffin
Magistrate Judge Jolie A. Russo
Magistrate Judge Mustafa T. Kasubhai
District Judge Ann L. Aiken
US District Court, District of Oregon
Eugene Division
405 East Eighth Avenue
Eugene, Oregon 97401

Carolyn D. Walker
Ryan Gibson
Reilley D. Keating
Stephan H. Galloway
Rachel C. Lee
Brianne L. Bridegum
Bradley F. Tellam
Brenda K. Baumgart
Attorney's For Agate Resources (in reality Centene Corporation)
Stoel Rives, LLP
760 SW Ninth Avenue, Suite 3000
Portland, Oregon 97205-2584

## RELATED CASES

**EXHIBIT 4**
**Page 7 of 49**

**US Supreme Court, Docket for 16-6236; Michael T Brooks v Employment Department, et al;** September 2016. The caption for this is the Unemployment Departments but it should be Agate Resources and the State of Oregon. The issues and incidents raised are ongoing

**US Supreme Court, Writ of Certiorari** - from Ninth Circuit Court, 19-35547, no case number assigned as of yet

**US Supreme Court, 20M-82** (referring to the above cited Writ of Certiorari)
Motion by Respondents to seal mention of the fact that Respondents sold medical and psychiatric and counseling records for foreign students from China, Russian, Saudi Arabia,  Jordan, etc. This request would broaden HIPAA beyond Congress's statue and violate HIPAA's"Uses and disclosures" - the public's right to know is guaranteed in Section 5 and treaty obligations of the "United Nations Conventions on the Rights of Children" to which the United States is signatory.

Lincoln v. BNSF Ry. Co. (10th Cir. 2018); failure of agency to file EEOC complaint

Lane v Franks; 13-483, April 28, 2014

Julia Davis v. Department of Homeland Security

Fabula v. American Medical Response, Inc

United States of America vs. Lindberg, Gray, Palermo, Hayes; 5:19-cr-22-FDW

Sewell v Freedom Health, et al; 8:2009cv01625 (2017)

Thompson v. North American Stainless, LP, 562 U.S. 170 (2011)

Leary v Centene Corporation; 14-CV-2547

M.D. et al v Centene Corporation et al; 1:18-cv-22372
Dual Diagnosis Treatment Center, Inc. et al v. Centene Corporation et al; 2:2020cv04112

https://www.contractormisconduct.org/contractors/67/health-net-inc
20 lawsuits against HealthNet (This is actually Centene dba Trillium Community Health Plan in Oregon and North California)

"Centene sued over lack of medical coverage" in 15 states; New York Times
https://www.nytimes.com/2018/01/11/health/centene-health-insurance-lawsuit.html

"5 Ways Insurance Companies Meddle in Your Health Care", US News and World Report, July 13, 2017

**EXHIBIT 4**
**Page 8 of 49**

## INDEX TO APPENDICES

APPENDIX C…US COURT OF APPEALS FOR THE NINTH CIRCUIT CASE #19-71240
Brooks v US DOL Review Board #2017-0033
                        appealing
APPENDIX D…US DOL ADMINISTRATIVE REVIEW BOARD CASE #2017-0033
BROOKS v Agate Health Care
                        appealing
APPENDIX E… US DOL, Administrative Law Case #2016-SOX-00037
Brooks v Agate Resources

## TABLE OF AUTHORITIES CITED

### CASES

In <u>City of Boerne v. Flores,</u> 521 U.S. 507 (1997)  the equal protection class of persons with disabilities fall into depends upon the facts and circumstances of the individual case. The Supreme Court held that there are three factors governing these cases: 1) The constitutional right(s) Congress sought to enforce in enacting the ADA; 2) whether there is a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and 3) whether title II of the ADA was an appropriate response to that history and pattern of unequal treatment.

Cochise Consultancy Inc. v. United States, ex rel. Hunt
*The Supreme Court likes to take cases where one District Court disagrees with another District Court. Here you have a case where the District Court and Appellate Court disagrees with the US Supreme Court and refuses to abide by your decision.*

Roell et al. v. Withrow, No. 02-69 (2003);  Rule 73

Turner v. Rogers, No. 10-10 (2011)
Matthews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)
            - due process
            **when incarceration is threatened, but what about character, ability to work, life?

Ingraham v. Wright
Wisconsin v. Constantineau
            -Due Process

EEOC, Retaliation

Murchison 349 U.S. 133 (1955)

**EXHIBIT 4**
**Page 9 of 49**

Marshall v. Jerrico, 446 U.S. 238, 242 (1980)
Schweiker v. McClure, 456 U.S. 188, 195 (1982)
*Rendell- Baker v. Kohn* (1982)
Mathews v. Eldridge 424 U.S. 319 (1976)
Lawson v. FMR LLC 571 U.S. ___ (2014)
      - Public Corruption, State Actors


## STATUTES AND RULES

**FY 2013 EEOC/FEPA Model Work Sharing Agreement**
Section 15(d) and 12  of the Securities Exchange Act of 1934, as amended
Exchange Act, Form 15 (share values exceeded $10 million)
**Civil Rights Act, both Title Vi and Title II**

**Civil Rights Restoration Act of 1987 (P.L. 100-259)**C clarifies the intent of Congress as it
relates to the scope of Title VI of the Civil Rights Act of 1964

**Section 504 of the Rehabilitation Act of 1973, as amended (29 USC § 794**)

**Refusal by the federal courts to grant required accommodations and** stays or extensions of
time during and while convalescing from surgery all violate **29 UCS 794**

**Section 1557 of the Patient Protection and Affordable Care Act** (42 USC § 18116 - PDF),
which provides that an individual shall not be excluded from participation in, be denied the
benefits of, or be subjected to discrimination on the grounds prohibited under Title VI of the
Civil Rights Act of 1964, 42 USC § 2000d et seq. - PDF (race, color, national origin), Title IX of
the Education Amendments of 1972, 20 USC § 1681 et seq. - PDF (sex), the Age Discrimination
Act of 1975, 42 USC § 6101 et seq. (age), or Section 504 of the Rehabilitation Act of 1973, 29
USC § 794 - PDF (disability), under any program or activity, any part of which is receiving
Federal financial assistance, or under any program or activity…

**Section 242 of Title 18** makes it a crime for a person acting under color of any law to willfully
deprive a person of a right or privilege protected by the Constitution or laws of the United States.
For the purpose of Section 242, acts under "color of law" include acts not only done by federal,
state, or local officials within their lawful authority, but also acts done beyond the bounds of that
official's lawful authority. Furthermore, those officials "shall be fined under this title or
imprisoned not more than one year, or both; and if bodily injury results from the acts committed
in violation of this section". The fines and imprisonment increase to ten years in cases involving
bodily injury.

**Americans with Disabilities Act of 1990 (ADA) (42 USC § 12101 et seq., Title II at 28 CFR
35) .** Books notes that when the federal courts tried to narrow the scope of this, the Congress

broadened this in 2008 with Pub. L. 110–325 effective Jan. 1, 2009. In Pub. L. 110–325, §2, Sept. 25, 2008, 122 Stat. 3553, explicitly broadened the scope of the ADA. Congresses intent was to apply that law to states and all federal agencies, including the federal courts. Brooks notes, even though the federal courts seem to forget this fact, that Congress created the federal courts under Article 3 of the Constitution Congress, if it so wished, terminate those Article 3 courts.

**Americans with Disabilities Act Amendment Act of 2008 (ADAAA) (P.L. 110-325, 42 USC § 12101 et seq. at 28 CFR 35)**

**45 CF 92.101 - Discrimination prohibited** - "…shall not, on the basis of race, color, national origin, sex, age, or disability, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any health program or activity to which this part applies
**45 CFR 611.3** - "…may not directly or through contractual or other arrangements, on the ground of race, color, or national origin
**45 CFR 125 - Prohibition On Discrimination** - may not discriminate based on an individuals age, expected length of life, present or predicted disability, degree of medical dependency, quality of life, or other health conditions.
**45 CFR 200 - Health Plan Standards**

**Federal Rules of Appellate Procedure**
**FRAP 24** - Proceeding in Forma Pauperis
*(3) Prior Approval. A party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless: (A) the District Court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding*

**28 USC §1915** - Proceedings in forma pauperis

**Whistleblower Statutes:**
**45 CFR §160.316** - Refraining from intimidation or retaliation for **opposing HIPAA violations**

*29 USC Section 1558, PL 111-148 - Affordable Care Act, Protection for whistleblowers*
*29 USC §218C, Affordable Care Act, Protection for employees opposing discrimination in health care*

*12 USCA. 5567 - Dodd Frank, employee protection*
*(4) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of*

**EXHIBIT 4**
**Page 11 of 49**

*any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau.*

***18 USC §1514A - Sarbanes Oxley****, Civil action to protect against retaliation in fraud cases*

### *Criminal Statutes*
### *Section 1107 Sarbanes Oxley (18 USC 1513e) -*
*Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.*

### 18 USC §1001- Crimes and Criminal Procedure
*whoever, in any matter within the jurisdiction of the executive, legislative, or <u>judicial branch</u> of the Government of the United States, knowingly and willfully—*
*(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;*
*(2) makes any materially false, fictitious, or fraudulent statement or representation; or*
*(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;*

## **OTHER**

**EXHIBIT 4**
**Page 12 of 49**

IN THE SUPREME COURT OF THE UNITED STATES
PETITION FOR WRIT OF CERTIORARI

Brooks respectfully prays that a writ of certiorari issue to review the judgment below.

## **OPINIONS BELOW**

For cases from federal courts:
1. The opinion of the United States court of appeals appears at **Appendix C** and is unpublished
US COURT OF APPEALS FOR THE NINTH CIRCUIT CASE #19-71240
Brooks v US DOL Review Board #2017-0033

The opinion of the United States Administrative Law Court appears at **Appendix D** and is unpublished
US DOL ADMINISTRATIVE REVIEW BOARD CASE #2017-0033
BROOKS v Agate Health Care, appealing

The opinion of the United States Administrative Law Court s appears at **Appendix E** and is unpublished
US DOL, ADMINISTRATIVE LAW CASE #2016-SOX-00037
Brooks v Agate Resources

---

\*\* Brooks was hospitalized and the Courts refused to grant an extension of time to appeal their dismissal of the below related cases:
II. The opinion of the US Department of Labor, Administrative Review Board, appears at **Appendix F** and is unpublished
US DOL ADMINISTRATIVE REVIEW BOARD CASE #2019-0078
Brooks v Agate Health Care

The opinion of the US Administrative Law Court  appears at **Appendix G** and is unpublished
US DOL, ADMINISTRATIVE LAW CASE #2018-SOX-00046
Brooks v Agate Health Care

## **JURISDICTION**

The jurisdiction of this Court is invoked under 28 U. S. C. § 1254(1), an appeal from the US Court of Appeals For the Ninth Circuit (9th Circuit).

Due Process Claus of the Constitution, 5th and 14th Amendments

**EXHIBIT 4**
**Page 13 of 49**

Constitutional Question on the ADA, ADAAA, Rehabilitation Act Applicability to the Federal
Courts and Congressional Mandates. (1) May the Article 3 Courts ignore Congressional
Mandates? (2) May the federal courts give their employees and judges rights that they deny
everyone else?

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article 3 of the US Constitution, Congress  may establish inferior courts from time to time

Fifth and Fourteenth Amendment, Due Process Clauses.
• This case involves procedural due process in a civil preceding
• This case involves substantiative due process - prohibitions against vague laws, the courts
  inventing law, especially with regards to discovery, in forma pauperis standards, and FRCP 73.
  The Courts have/are ignoring both statutory law and established case law
• The case involves due process in violation of Brooks's Bill of Rights in
    A. ignoring basic human rights for a profoundly disabled litigant,
    B. intentionally inflicting bodily harm on Brooks
    C. Harming by hiding evidence for hundreds of thousands of patients harmed by state
       officials
    D. The denial, by the Oregon District Courts, of Due Process for citizens in 33 states who
       health records were sold, bartered, and exchanged, doing them physical and financial
       harm.

Appeal of the Oregon District and Ninth Circuit Courts denying Petitioners The Right to
Counsel, Right to Effective Counsel in Civil Cases where the Life and Freedom of the Petitioner
is At Risk.

## STATEMENT OF THE CASE

19-71240, and the related and case #2019-0078,  were both decided on April 21, 2020.
This was no fluke; the courts illegally communicated. 19-71240 was dismissed for "failure to
prosecute", failure to pay court fees. Petitioner Michael T. Brooks was not able to appeal
#2019-0078 because he is incapable for working for more than a few minutes at a time due to
disabilities - paralysis of the left side, multiple sclerosis, impaired involuntary swallow reflex,
cardiac problems (atrial fibrillation, atrial flutter, bradycardia) due to spinal injuries resulting
from on the job injuries that Brooks' employer denied medical care for and terminated him
without care or recourse to care as punishment for whistleblowing.

**EXHIBIT 4**
**Page 14 of 49**

Brooks' former employer was the Oregon contractor empowered and tasked with approving or denying laboratory and radiological procedures, prescription drugs, specialist care. Brooks' employer has spent ten years preventing Brooks from obtaining care and caused and created Brooks' paralysis and multiple sclerosis.

## A.    In Forma Paueris, APCP 24 AND Motion To Appoint Counsel

Brooks was in formas pauperis at the District Court level [ 6:15-cv-00983, docket #5]. The Appellate Court ignored ARCP 25 and required Books to file a new application. Then, in an Order dated September 19, 2019, the Court wrote:

> **Petitioner's motion to proceed in forma pauperis (Docket Entry No. 2) is denied because we find that petitioner is not indigent. Within 28 days after the date of this order, petitioner shall pay $500.00 to this court. If petitioner does not comply with this order, the petition will be dismissed by the Clerk for failure to prosecute, regardless of further filings by petitioner. The motion for appointment of counsel (Docket Entry No. 10) is denied. No motions for reconsideration, clarification, or modification of this denial shall be filed or entertained.**

In what reality is a homeless Petitioner not "indigent"? Brooks cannot afford prescription medication, medical care, and personal assistance and housing and food expenses. Brooks cannot bath himself, dress himself, and cannot lay down without downing in his own saliva because the spinal injuries to his neck destroyed his involuntary swallow reflex.

The Ninth Circuit Judges ignored their requirements under FRCP 24 and with common sense. There is a process that the District and Appellate Court are required to adhere to reject a prior approved informa pauperis grant. No judge or court did that.

## B.    ADA, ADAAA, Rehabilitation Act Violations; Brooks' Poverty

Brooks was paralyzed on the left side and faced prescription drug costs of more than $800 a month, charges for physical therapy and warm water therapy, and for medical care. The core to Brooks' wrongful termination case was Agate Resources  - Centene Corporation's denying and interfering with Brooks' ability to get medical care or imagining and treatment.

Brooks has a lengthy list of injuries incurred on the job at Agate Resources:  a detached retina, three tears to the retina and the loss of vision to the right eye due to lack of treatment; a broken right foot and a crushed left foot and an injured (and never treated) lower back. Both the

head of Outpatient Physical Therapy at River Bend (Sacred Heart Hospital) and Brooks Primary Care Doctor wrote the Court letters asking for accommodations. The Courts ignored those and the medical records sent them.

In mid 2012, a mass was found in the lower lobe of Brooks' right lung. Agate refused Brooks and his doctors request for FMLA leave and time for surgery. Brooks was distraught and his doctors wrote Agate asking that Brooks be permitted to take some of the three months of vacation he had coming to get treatment. Agate refused and not only refused accommodation, Agate demanded complete access to the the doctor and medical records.

Agate denied Brooks' request to telecommute when he had broken feet.  Instead, Agate COO Patrice Korjenek had Agate employees pick Brooks up from home and drop him off at work early in the morning.  (Originally, Korjenek tried to force Brooks to pay for a taxi to and from work.) Brooks would be demeaned by being forced to work as a custodian until 8:30 AM. Then, Brooks would work as a programmer and DBA until 7 PM or so. Korjenek would leave him with no ride home. Brooks had a sleeping bag, pillow, a box of instant oat meal, and shaving kit in his filing cabinet because he had to sleep on the floor of his cubical at least one or two nights per week. Brooks couldn't even get food unless his supervisor, Amanda Cobb, felt like everyone ordering takeout food.

The lack of care was what cost Brooks the sight in his right eye in 2014 and led to the collapse of the right lung in June 2018 and cancer surgery on July 2019. That cancer surgery had to be done as an outpatient because Centene was blocking authorization for that (2" diameter irregular mass right next to the spine; invasive squamous cell carcinoma).

Brooks needed counsel because Brooks was incapable of proceeding without counsel. As his doctors wrote to the court, he was incapable to sitting up for more than 15 minutes with pain and spinal compression that led to his passing out. Brooks did not want to be a informa pauperis. Brooks was so poor he could not afford medication and had to beg money from friends for doctor appointments, warm water therapy, medication and food.

Brooks' "sin" was that he had spoken out at a staff meeting in 2012 about Agate's profiling patients on racial and social-economic (foster children) grounds. Agate was selling patient records and was denying sick patients access to care to save money for executive bonuses. In violation of their Medicaid contract with CMS, Agate had 23,000 plus patients without a primary care doctor. That permitted Agate to keep the entire $650 a month flat rate

EXHIBIT 4
Page 16 of 49

Medicaid/CHIP/SCHIP stipend for those patients and deny them access to opiates, hypertension, and other restricted drugs that required doctor oversight.

When those patients started using emergency room services instead of urgent care, Agate created and distributed "Hot Spotter Reports" that ended with ER's not seeing patients. A patient would check in but not be seen for hours, "waiting them out". The Court can check the Eugene-Register Guard newspaper, patients have died in those waiting rooms from heart attacks and other serious illnesses because they were not seen.

Agate refused to sign off on Brooks' Workmans Compensation paperwork (form 801). After they terminated him, Agate destroyed records. Brooks has enough emails to prove that, however. Brooks had to pay for his own medical expenses as teams of three or more Stoel Rives attorney's stalled and dragged this case out for eight years.

Brooks paid for surgery to the right foot on March 21, 2010. That was a work related injury. The left foot injury has never been treated because that involves microsurgery for crushed bones and joints. The medical records report this as edema. That foot swells if Brooks walks on it for more than a few hundred feet, at best, and Brooks ends in a wheelchair for months.

The edema discussed in Dr. Arnsdorf's chart notes are from the left foot. It still swells and Brooks ends in a wheelchair for three or more months.

Brooks had an injured lower back injury is far worse than you think:

**L4-L5, L5-S1; Anterior extension of disk material is seen which extends into the retroperitoneum at the level of the aorta and cava as seen on imagine #19.** [There are other injuries reported at L2-L3]

And Brooks has more than $2000 in unpaid Court costs , and $3000 in medical costs, from the District Court when a Magistrate Judge ordered him to print, scan, assemble into single files, and write logs for 5.2 GB of PDF files on three memory sticks. 5.2 GB of PDF's is at least 200,000 pages and as many as 600,000 pages.

Those PDF files were the result of scanning three bankers boxes of documents and 20 or so large notebooks of documents,  by an unknown party; probably appointed counsel  Marianne Dugan.  Those were "taken" (stolen) from Leiman and Johnson's Law Offices on September 10, 2017. Most of the papers have never been seen again.  None of the documents marked as original has ever been seen again.

**EXHIBIT 4**
**Page 17 of 49**

Before scanning, the documents were apparently removed from notebooks and folders. In no particular order, documents were shuffled and crossed PDF file boundaries. Individual PDF files contained 20 or more files or pieces of files. Those memory sticks also included random newspaper clippings, Lane County counsel minutes, pages from old case documents, none of which had anything to do with this case or Brooks. They were just "padding".

Mixed with those, however, were real attorney-client emails and correspondence, pro se work product, color photographs, telephone and meeting recordings, etc.

Brooks was unable to stand or walk, but the Court ordered him to print those PDF's off, sort and organize them into separate individual documents, rescan them, and write a meaningful log for them. Look at docket numbers #92 and #93. Brooks tried to file an appeal of this abuse by the Court and the Magistrate Judge refused to allow it.

Brooks suffered further upper spinal injuries from that. Brooks ended in the emergency room on October 30, 2017, for "lower back pain", on November 7 for "severe back pain"/ possible heart attack, Sacred Heart Urgent Care on November 3 and 13 for progressive paralysis of the left side and much pain in the upper spine. Brooks was sent to Dr. Jose L.R. Sioco III, on November 3, 2017; at Wendy Lange, FNP, on November 7; Dr. Katherine Beckstrand on November 10; and Peter Lunger, PT, on November 16.

Brooks was denied medical imaging and treatment for more than year, but an eventual MRI (in August 2018) showed:

**C2-3: There is mild broad-based posterior disc bulging**
**C3-4: Broad-based posterior disc protrusion effaces the ventral subarachnoid space and produces moderate to severe canal stenosis.(AP canal dimension proximal to 5 mm) and indentation of the ventral cord cord surface.**
**C5-6: Broad-based posterior disc protrusion effaces the ventral) space and produces moderate to severe canal stenosis (A P canal dimension proximal to 5 mm) and indentation of the ventral cord surface.**
**C6-7: There is minimal broad-based posterior disc bulging**

Centene denied access to surgery and cut off physical therapy. These conditions continued to worsen through 2018. On December 1, 2018, Brooks was transported to Sacred Heart Hospital with a temperature of 102.6. It jumped to 105 and, in spite of Centene's fighting it, Brooks was admitted into the neurological unit where the more than 30 tests he had been denied since 2013 were done.

EXHIBIT 4
Page 18 of 49

The Magistrate Judges full well knew of this, as did Stoel Rives. They saw it as an opportunity to bury Brooks in paperwork. It was no different in the Administrative Court. That surgery took place on January 17, 2019. Brooks had a heart attack on the operating table and doctors kept him in the hospital for a week. Brooks was released to home, "bed rest". Actually in a recliner because Brooks could not afford the electric hospital bed.

The Appellate Court was abusive. Brooks needed treatment for the new cardiac probems, needed a surgery for a cancerous growth next to his spine (July 2019) and had a series of heart attacks that led to a 7.5 hour long heart surgery on January 31, 2020.

At the Ninth Circuit, Brooks would file requests for extensions of time . The Court would automatically refuse them. In fact, telling about about impending surgery was an invitation to issue Orders and for Stoel Rives to file hundreds of pages of motions, declarations, and documents.

Indeed, the Appellate Court refused to accept a Brief Brooks filed on November 19, 2019, because it was over  length. Brooks' heart stopped on November 18. He is told this was bradycardia, not a heart attack. That resulted in Brooks' loosing consciousness and collapsing on his computer, smashing ti. Brooks lost all of his work, but had a good draft that he sent to the court with a letter describing what had happened. The Court returned that, refused to accept it, and gave Brooks 21 days to write a new Brief and submit it. Brooks sent that. The Court rejected that….two days before Brooks underwent the heart surgery, but because Brooks did not have PACER, that Order arrived on February 4, 2020, four days **after** Brooks underwent heart surgery! The Court knew the dates of surgery and the only conclusion Brooks or anyone else can come to is that they did that maliciously.

This is from a motion Brooks wrote those judges after he had recovered enough to be able to write:

> **Plaintiff's  loss of consciousness resulting from the cardiac nerve damage  is extremely dangerous. An episode on November 18, 2019, and December 24, 2019, resulted in Plaintiff smashing his mouth  and head into the kitchen table. Doctors primary concern was that Plaintiff takes Xarelto, for which there is no way to stop bleeding, and they were fearful of a brain hemorrhage. The episode on November 18, 2019, resulted in Plaintiff falling onto the kitchen table and smashing his head into the computer, breaking it and losing all of his work.**
> **It needs stressing that that injury, that episode, was directly caused by trying to comply with THIS Court's orders. Then, this court casually dismissed the Brief**

**EXHIBIT 4**
**Page 19 of 49**

and motions because they did not comply with length and formatting rules this
court decided to apply. This court waited and filed that two days before the critical
surgery. It was sent out and arrived two days after that surgery and was withheld
because the stress of trying to deal with it would killed Plaintiff.

Plaintiff did not receive the Court's Order denying his Brief until February
17, 2020. Records show it arrived two days after Plaintiff had heart surgery,
something this Court was well aware of. That Order was withheld, to prevent
Plaintiff from becoming upset until February 17. Even, on February 17, since he
could not sit, type, walk, lift more than ten pounds, still unable to swallow, partially
paralyzed on the left side from spinal injuries, Plaintiff could not do anything
about it until he had help…that being today, February 22, 2020.

Again, Plaintiff had previously informed this Court, he was to undergo major
heart surgery. Plaintiff spent seven hours on the operating table on January 31,
2020, and subsequently has been unable to do anything. Plaintiff has slept and been
unable to do anything more and his doctors will not permit him to do anything else.
The Court knew that, too! Plaintiff is providing a color digitized imagine his heart
and the surgery done.

Those "bubbles" are cauterizations of the heart. Plaintiff had both atrial
fibrillation and atrial flutter that resulted in an erratic heart rhythm in excess of
400 BPM and as low as 30 BPM. The value on the upper right side was repaired.
The lower valves have problems due to Plaintiff's being denied access to treatment
for over on two years. Every bit of this is due to untreated compression of the spinal
system, especially for vertebrae in the neck and a damaged spinal sheath that led to
an infection of the brain stem.

Plaintiff resumes therapy on Monday, February 24, 2020. Plaintiff might be
able to represent himself sometime after the end of March. This was why Plaintiff
requested the appointment of counsel. And, that is only maybe. If Plaintiff has
another arrhythmia episode, he will end up back in surgery. [Brooks filed on
February 24, 2020, with the Ninth Circuit Court, 19-71240]

Brooks neck-upper spinal surgery ended with the complete loss of his involuntary

swallow reflex and diminished reflexes in the left ankle, knee, foot, arm, and hand. Brooks has

atrial fibrillation, atrial flutter and bradycardia [medical records are in **Exhibit 9** and Brooks

wants them public. Brooks cannot make a fist and cannot hold a pen or pencil. Brooks cannot sit

up for more than 10 to 15 minutes. After 15 minutes of sitting, Brooks usually passes out.

His back pain is worse with sitting greater than 15-20 minutes and he has to lie
down to alleviate pain. The burning in the left anterior thigh is exacerbated by
standing or walking.…He has some decreased grip in the left hand, decreased
strength in the left leg as well. He denies any incontinence. The burning in the left
anterior thigh is exacerbated by standing or walking.…He has some decreased grip
in the left hand, decreased strength in the left leg as well. He denies any

> **incontinence. Review of Symptoms: Appetite loss, difficulty sleeping due to back pain, impaired memory (which he attributes to lack of sleep), frequent falls, headaches. Reflexes are diminished at the ankles and knees, ED, sensation diminished in the distribution of the left lateral femoral cutaneous nerve distribution in the anterolateral thigh; left foot and ankle swelling associated with a prior fracture with edema…[Dr. Arnsdorf, chart notes 1/23/2018]**

Centene was the Benefits Administrator for Oregon and denied Brooks access to medical care, including an MRI's request by a neurologist and his PCP. On December 1, 2018, Brooks ended up in the emergency room with a 102.6 temperature that climbed to 105. Brooks had a brain infection and lesions resulting for spinal injuries that caused multiple sclerosis.

> **… in MS, the sheath covering nerve fibers in the brain and spinal cord becomes damaged, slowing or blocking electrical signals from reaching the eyes, muscles and other parts of the body. This sheath is called myelin…Although several treatments and medications alleviate the symptoms of MS, there is no cure.**

In other words, and this is self evident, Centene deliberately caused Brooks to become paralyzed and develop multiple sclerosis. They used their position as Oregon's Benefits Manager to purposefully harm a whistleblower. The person in charge of this a Centene, the former President of Agate Resources, Trillium, and LIPA, was Dr. Thomas Wuest. This is the same Dr. Thomas Wuest that Brooks had produced records on for claims fraud. This was the owner of Slocum Orthopedic who tried to alter Brooks' medical records. All of this was sent to that Judges in 19-71240

## C.    Corporate Structure of Centene and Agate

Agate Sources , according to Oregon Department of Consumer and Business Services Case No. 15-04-022, Trillium and other Agate Resources subsidiaries had no employees, facilities, equipment, management or resources. Those were all leased by Agate. LIPA, which was both Lane Independent Physicians Association and Lane Individual Practice Association, "LIPA", was a wholly owned subsidiary of Agate.  Fewer than 200 physicians and a few executives owned shares in an enterprise where Oregon gave Terry Coplin an exclusive to sell physicians rights to treat Medicare, Medicaid, and CHIP patients (as of 2012 ACA patients were added to this and Agate Resources, in spite of lacking a license, sold medical insurance to businesses in 33 states). Coplin kicked back money to "his doctors" from state and federal money.

**EXHIBIT 4
Page 21 of 49**

As of August 31, 2015, the Centene Corporation acquired all outstanding shares of LIPA and Trillium stock, leaving those subsidiaries empty shells. All of the employees of the various subsidiaries became Centene employees.

This is a "flexible" structure allowing Centene to commit fraud, fire whistleblower, ignore SEC regulations and state and foreign laws with impunity. It is done by the subsidiary.

To understand how Centene was able to deny Brooks medicare care, understanding this structure is key. Brooks is dual insured - Medicare and as a dependent on his wife's Oregon Health Plan insurance (OEBB) as a public school teacher. Currently that is under Kaiser Permanente. It was under MODA Health from 2013 through October 1, 2020.

Centene, under its Trillium  Community Health Plan subsidiary is both the Pharmacy Benefits Manager (PBM) and Benefits Manager for public employees. Every request for a prescription drug or medical services has to go through Centene for approval or denial of services.

Trillium, acted as eviCore. It could act, and has, as MODA, Cigna, Optum, United Healthcare, TriCare, as the federal government and as state contractors for Oregon, New York, Washington, California, Nevada, the UK, Spain, Serbia, and so on.

The big problem with this is "Agate has never been issued a certificate of authority evidencing the authority to transact insurance in Oregon" [Oregon Cease and Desist Case INS 15-12-003; 2/10/2016] [**Exhibit 10**]. That decision creates a huge problem for OHA, trying to do a favor for Centene, because Agate Resources was the sole owned of Employers Health Alliance, EHA, The Alliance, doing insurance business in Oregon and 33 other states since September 24, 1999.

Agate has a letter from a lawyer, Peter D. Ricoy, of the Portland firm Schwabe, Williamson, & Wyatt, P.C , which they use to try and counter the state's $10,000 fine and Cease and Desist Order. That lawyer reasons:

**Trillium is an Oregon corporation and an Oregon domiciled Health Care Service Contractor, and is controlled by Agate Resources, Inc., an Oregon corporation ("Agate"). Consequently, Agate is considered to be a domestic insurer for purposes of this Form A pursuant to ORS 732.518(3)**

ORS 732.518 sets forth the Organization and Corporate Procedures of Domestic Insurers for *purposes of mergers and acquisition.* Section 518 provides the definitions for acquisitions and mergers. It has nothing to do with conducting insurance business.

In the state's Cease and Desist Order, under which Coplin was fined $10,000 (and Terry Coplin signed Consent of Entry to Order - "Agate Resources, Inc. voluntarily and without any force or duress consents to the entry of this order expressly waiving any right to a hearing in this matter.")

> **Agate did not hold a certificate of authority under ORS 731.072(1). Agate violated ORS 731.022 and ORS 731.354 because Agate transacted insurance without a certificate of authority issued under ORS 731.072(1). In accordance with ORS 731.988(1), the Director may assess civil penalties in an amount not to exceed $10,000 <u>per violation</u> against persons who violate any provision of the Insurance Code.**

ORS 731.066 sets out who is licensed to conduct insurance business in Oregon:

> **1) An authorized insurer is one authorized by a subsisting certificate of authority to transact insurance in this state.**
> **(2) An unauthorized insurer is one not so authorized. [1967 c.359 §14]**

Agate Resources and Centene were both in violation of ORS 731.146 for proposing insurance contracts, taking applications for insurance from Hispanic Immigrants that contacted them and were enrolled by them because Agate posted Spanish language notices advertising for enrollment in Hispanic grocery stores, emergency rooms, urgent care centers. They received a $650 monthly stipend in violation of 146(c), and Agate violated both 146(h) and both Agate and Oregon violated 42 USC 18054 and 26 USC 162(c) and (e)(1)(A) Influencing legislation .

Agate was the Plan Administrator for the EHA family and was continually in violation of 29 CFR § 2510.3-16 - Definition of "plan administrator" with the full knowledge of the State of Oregon. They did not even make an attempt to comply with the reporting requirements of Title I, ERISA. Brooks, personally informed and sent records to the Oregon Attorney General and Secretary of States about these violations between 2006 and 2017. Brooks informed OSHA and the US Department of Labor about them in 2012 through 2018. They actually tried to cover up Oregon's criminal wrong doing.

The registration number for Employers Health Alliance is 712380-84. The registered agent is Barbara L Nay at Stoel Rives. There was an administrative dissolution of this in Oregon

in 2010, but it still is in business in other states - Arizona, etc. For EHA the registration number is 096537-91. This was registered on August 6, 2002. It was registered to Coplin and Agate Resources, but switched to Barbara Nay in 2004. Alliance Healthcare Services, 437441-84, is now registered with CT Corporate Services as a Delaware Corporation. It is currently active.

This corporate structure exists for the sole purposed of facilitating fraud, both fraudulent conveyance and fraudulent transactions. Centene, or Agate's, lawyers will lie to your face telling you that are not and never had been nor represented XXX. You have to parse their words. You will know, have witnesses that an employee of Trillium represented themselves as "eviCore" or some other company. That, as far as their attorney's are concerned, was a representation of a paper entity and the employee was never actually working for eviCore, they were always a Centene employee. If pressed their attorney's will admit that Centene might have worked with Care Core or Cigna or eviCore, but beyond that they will deny, deny deny.

The same thing happens when patient profiling. Brooks has the tables Agate and Centene's Analytics Department developed. They are quite specific in ranking patients by whom will get care and who will not and they are based on race, socio-economic placement (foster children, migrant worker, unaccompanied minor, student), age, sex, disability, race, national origin (they have an entire separate category for Hispanic immigrants), and education level.

You will get a glimpse of this if you look at the hundreds of lawsuits filed against Centene and its hundreds of subsidiaries over the years.

- M.D. et al v Centene Corporation et al; 1:18-cv-22372
- Dual Diagnosis Treatment Center, Inc. et al v. Centene Corporation et al; 2:2020cv04112
- https://www.contractormisconduct.org/contractors/67/health-net-inc
- "Centene sued over lack of medical coverage" in 15 states; New York Times
- https://www.nytimes.com/2018/01/11/health/centene-health-insurance-lawsuit.html
- "5 Ways Insurance Companies Meddle in Your Health Care", US News and World Report, July 13, 2017
- Leary v Centene Corporation; 14-CV-2547

## D.    Continuing Harassment by Agate and Oregon, Employment Department

Stoel Rives usually has three lawyers to each of Brooks' cases. The court refuses to appoint counsel, and Brooks is stuck with hundreds of pages of dense legal documents, dozens of motions. It is worse when Brooks wins, as he has done, in December 16, 2013 [4-UI-08128] or 2016-FRS-037.

Stoel Rives was involved in the pay to play scheme with Kitzhaber's two person board that overturn the Court decision in 4-UI-08128, as well as having their private investigator Donna Brown being passed off as a BOLI Civil Rights clerk taking Brooks' case. Add to that, a disgraced former State Senator whose wife worked for Agate and a Kitzhaber campaign aide. The author of the board decision was Agate's own attorney and Stoel Rives partner Carolyn Walker!

That was even legal in Oregon because the board "**need not conform to common law or statutory rules of evidence and other technical rules of procedure"**. That was contained in an appeal to this Court did not take, Supreme Court docket #16-6236.

On October 26, 2016 in 2016-FRS-037, Brooks won his SOX filing deadline caseOn October 26, 2016, Judge Berlin wrote:

> **Findings. Viewing the record evidence in the light most favorable to Complainant (as the non- moving party) and drawing all reasonable inferences in his favor, I find a genuine issue as to whether Complainant mistakenly filed his whistleblower complaint with another agency within 180 days of the termination. Complainant"s initial step was a call to the U.S. Department of Labor to complain about the termination. He called Wage & Hour, not OSHA. He says he called "to lodge a complaint," but he does not explicitly say that in fact he did complain. Wage & Hour would not have been likely to accept a complaint for whistleblower retaliation: It is OSHA"s responsibility to accept such claims, not Wage & Hour"s. The record is silent as to what response Wage & Hour gave Complainant, other than to refer him to the Oregon Bureau of Labor and Industries. Nothing suggests that Wage & Hour informed Complainant that it could not accept a whistleblower complaint and that he had to call OSHA.**
>
> **As a whistleblower complaint may be filed by telephone with any OSHA employee, it follows that complaining about whistleblower retaliation to an employee of the Department of Labor"s Wage & Hour Division is an example of when "a complainant mistakenly files a complaint with the another agency instead of OSHA within 180 days after becoming aware of the alleged violation." That is exactly what the tolling provision establishes as sufficient.**
>
> **As Wage & Hour suggested, Complainant called the Oregon agency to complain, including his complaint about whistleblower retaliation. In the course of time, he was told that agency did not handle whistleblower cases. Because Wage & Hour had referred Complainant to the Oregon agency, he believed the Oregon agency"s intake worker was mistaken. But he did not leave it at that.**
> **Instead, he contacted the U.S. Department of Labor in Washington, albeit another Wage & Hour office. Drawing every reasonable inference in Complainant"s favor, it appears that he told this Office about his whistleblower complaint. That again**

triggers the tolling provision: a telephone whistleblower complaint mistakenly made to the wrong agency at the Department of Labor.

In addition, he continued to pursue the matter with the Oregon Bureau of Labor and Industries. An employee of that agency seems to have accepted a telephonic whistleblower complaint no later than March 3, 2014, which is within the 180-day filing limit. The state agency"s employee appears to have commented that Complainant"s complaint included a whistleblower component, and to have offered advice about the legal requirements to prove a whistleblower claim. It is another example of a step sufficient to trigger tolling.

The call to the U.S. Department of Justice is arguably another action that triggers the tolling provision.

Complainant explains that the varying responses and referrals that he was getting from these agencies left him frustrated and confused. But he diligently continued to try to find out where he should file his whistleblower complaint and to be sure that he had sufficiently filed it. [Berlin Decision October 26, 2016]

Stoel Rive's appealed this and argued that Brooks had an attorney, Arnold Law, after he was terminated. Brooks hired Arnold Law because he thought Agate's executives were being misled by Patrice Korjenek and were firing Brooks because of his medical issues and he needed medical care. Brooks gave Arnold law every dime he had, around $10,000 on October 3, 2013. That was gone and Books owed them an additional $1500 as of December 16, 2013. This is in the billing records. Brooks had no attorney after December 18, 2013.

Brooks provided all of the billing records  and emails between himself and Arnold law, but all he seems to have done is breach some sort of attorney-client privilege that gave Stoel Rives access to even more of Brooks' recovers.

Arnold law was hired over health and unemployment. They were sent documents by BOLI even though at no time did they represent Brooks before BOLI. Arnold law took no part in the filings Brooks made with OSHA, the EEOC, Oregon OSHA, or BOLI. The billing records were shown to prove that because Stoel Rives said Brooks was lying.

This should not matter, given the timelines, but it angered Brooks. Brooks provided records and proof that he did not have an attorney between December 18, 2013, and March 26, 2014.

## E.    Current Retaliation By Centene, Prescription Drugs, Testing

Centene, under the alias of their Trillium subsidiary, has intervened, maliciously, with Brooks prescription drugs and even doctor assignments and laboratory reports. Centene, acting as Kaiser's Pharmacy Manager, altered Brooks prescription for Xarelto to Pradaxa in November, December 2020, and January, February and April 2021. No attempt was made to contact Brooks' cardiologists or primary care doctor (in fact, Centene "fired" Brooks' primary care doctor and substituted different ones). They also ended Brooks prescription for Metropolol to regulate heart rhythm because Brooks has atrial flutter, atrial fibrillation, bradycardia, and multiple sclerosis (MS). The MS was caused by the District Court as was explained in the companion writ for 17-35547.

The consequences of suddenly ending Xarelto are severe

**"..headache, fatigue, dizziness, lightheadedness, easy bruising, back pain, nausea, heart palpitations, high blood pressure, Emotional disturbances, such as depression, restlessness, anxiety, possible suicidal ideations, sleep difficulties, trouble concentrating, and problems thinking...[Janssen Pharmaceuticals, Inc. 2020]**

**F.    2017 Retaliation By Centene, Testing, Surgeries, Physical Therapy**

In 2017 Centene denied Brooks access to physical therapy and medical imaging, in spit of the fact that Brooks was experiencing paralysis, the loss of involuntary reflexes, pain, and was losing consciousness. At that time, the insurer was MODA Health, but the Benefits Manager was still Centene. Agate lawyers, at Stoel Rices, were also representing MODA Health and MODA's HIPAA Compliance Officer, was giving Stole Rives copies of Brooks and his neurologist appeals:

**Requested servicies: CPT72141 - Magnetic Resonance Imaging (MRI)...**
**Service Provider:    WILLAMETTE VALLEY IMAGING**
**Date(s) of Service:  6/21/2018**
**Claim amount:        n/a**
**After a careful review of the documentation provide by DR. ROBERT ARNSDORF, we regret to tell you that this kind of service is not covered for the following reason: Based on eviCore Spine Imagining Guidelines Section SP 1.1 General Considerations, we cannot approve this request. Your <u>records show you have neck pain</u>. They also show a request for a magnetic resonance imaging (MRI) scan of your spine...A MRI is supported for your type of pain if one of the following applies to you. One...Three, you had a recent tissue sample taken for lab testing (biopsy) result that was not normal. Four, you had a recent infection, Five, you have had a cancer in the recent past. Your records do not show that one or more of these apply to you. [6/6/2018]**

EXHIBIT 4
Page 27 of 49

This was one of dozens of ever changing excuses for refusing that procedures. Prior to that it was directly from MODA, dated April 20, 2018:

> **Re: Insured: Michael Brooks**
> **ID: \*\*\*\*\*\*; Group: \*\*\*\*\*; Reference ID: A104520616**
> **Dear Dr. Robert Arnsdorf**
>
> **Moda Health contracts with eviCore healthcare to review requests for certain services for medical necessity and appropriateness on behalf of Moda Health members. eviCore has re eived a retro authorization request for CPT 72156 - Magnetic Resonance Imaging (MRI), a special kind of picture of your neck without contrast (dye) rendered on 4/6/2018.**
>
> **Moda Heath requires prior authorization to be requested and obtained prior to the date of service rendered….**

That procedure had no been performed and Doctor Anrsdorf had to go through all kinds of appeals to get that straightened out. Evidently, what led to this was his sending in Chart Notes when he first requested authorization for an MRI on January 23, 2018:

> **Mr. Brooks informs me that he is a "whistle blower" against Trillium. He says that on November 3, he was asked to provide a court report which required him to sit all night. He said the aggravated his back pain and caused increased symptoms in the left lower limb as well as stabbing pain in the left upper limb…he does have pain in the left foot and ankle which he associates with a prior fracture with edema….His back pain is worse with sitting greater than 15-20 minutes and he has to lie down to alleviate pain. The burning in the left anterior thigh is exacerbated by standing or walking….He has some decreased grip in the left hand, decreased strength in the left leg as well. He denies any incontinence. He has been unable to have erections since November 3, which is different for him.**
>
> **Review of Symptoms: Appetite loss, difficulty sleeping due to back pain, impaired memory (which he attributes to lack of sleep), frequent falls, headaches. Reflexes are diminished at the ankles and knees. Sensation diminished in the distribution of the left lateral femoral cutaneous nerve distribution in the anterolateral thigh…**

On April 6, 2018, Brooks was sent back to Dr. Arndof:

> **Michael returns with persistent symptoms in the left arm and leg. His symptoms are worse because he cannot do water therapy and has to wear a cardiac monitor. If he can et into a pool every day, it takes away much of the pain. He continues to complaint of numbness in the entire left hand associated with tingling. The left arm feels weak. He continues to complain about pain and numbness in the left lateral**

**thigh. He complains about leg cramps at night. Physical examination: Sensation to a pin prick is diminished. He has diminished pain in the left lateral thigh Recommendation: We will proceed with an MRI of the cervical spine to rule out root nerve compression causing his reflex changes and impaired sensations**

The reader will note the disconnect between MODA-eviCore's claims in their refusals to provide imagining and physical therapy and Dr. Arnsdorf's Chart Notes, were sent to them. Dr. Arnsdorf's office resorted to filing appeals to have authorization moved to a state medical panel, as is required by law/. MODA refused. So did Kaiser with the changed prescriptions and doctors.

Brooks got involved and wrote MODA an appeal to David Nessler Cass, MODA's HIPAA Compliance Officer, only to find that letter quoted in Court filings by Reilly Keating!

That is when Brooks called vendors and was told that eviCore (or whatever else they called themselves because different insurers had different paper Benefit Managers) was Trillium. The Chief Medical Officer in charge of that was Dr. Thomas Wuest, the former President of Trillium and Agate Resources and the man Brooks has provided records to the Court for hundreds of millions of dollars in claims fraud. This was the owner, along with Agate CEO Terry Coplin, of Slocum Orthopedic, a company they built using fraudulently obtained Medicaid and Medicare money.

This is made possible by the convoluted corporate structure of Centene, which is used to facilitate fraud. Trillium has no employees. Trillium does not have facilities, equipment, managers, or even assets. Neither does (if they still even exist) Agate Resources, Health Police Research Northwest, EHA, the Alliance, LIPA, Agate Properties, Ambetter, HealthNet, eviCore, the mail order pharmacies, DME vendors, home health, professional and medical credentialing services, or any of the hundreds of businesses operated by Centene in the US, Canada, UK, Spain, Serbia, and maybe Russia.

## G.    Why Stoel Rives Is Motioning this Court To Redact Records

"Bad press", revelations that they sold foreign ( ) college student records, is the reason for the Oregon District Court and three Stoel Rives attorney's trying to get this Court to declare that merely reporting Centene sold a

is somehow a HIPAA violation.

**EXHIBIT 4**
**Page 29 of 49**

HIPAA pertains to information permitting the identification of an individual. Brooks reported one example of the kind of record Centene sold for 5,197 ██████ students over a 15 year period. There were, in fact, ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████.

The point is, no OHP contractor and certainly not Centene nor Agate should not have even had those records. Possessing thm was illegal under HIPAA, 45 CFR 164.508. They were prohibited from having counseling, drug and alcohol abuse, HIV, STD, psychiatric and student records. **But Agate-Centene SOLD them!**

You cannot discuss why Centene were prohibited from records without describing the contents of the records and none of that violates HIPAA.And all of that is legal under Section 261-4, Public Interest and Benefit Claus of HIPAA:

> **5) Permitted Public Interest and Benefit Activities.**
> **For whistleblowing**
> **For revealing victims of abuse, neglect or domestic violence.**
> **For health oversight activities (e.g. the public's right to know)**
> **For judicial and administrative proceedings**
> **For law enforcement purposes**

All it might violate is the cover wished for by a big pocketed corrupt multinational healthcare company looking to keep its crimes a secret.

### H. Origin of ALJ Cases - Berlin and Larson; original BOLI/OSHA Filing

Brooks and members of Brooks family were threatened and assaulted for Brooks' whistleblowing against Agate, Centene, and Oregon. Brooks wife and daughter were followed. Brooks son was threatened (Coburg Police/Lane County Sheriff complaint C20160046) and both Brooks and his son were physically assaulted (Ore State Police complaint CA10830/Russatto). Brooks yard was torn up and his fence damaged when a large dark blue pickup truck drove across the lawn and through a fence to avoid Brooks and his neighbors when he was discovered with a listening device.

It was the Oregon State Police and detective Russatto that filed the OSHA complaint that led to ALJ Berlin's courtroom. Judge Berlin initially decided to grant Brooks right to a hearing. Stoel Rives at that claimed that Brooks was represented an attorney.

A check of the records shows **Berlin deciding in Brooks favor on October 26, 2016.** In other words, Brooks won:

> **Findings. Viewing the record evidence in the light most favorable to Complainant (as the non- moving party) and drawing all reasonable inferences in his favor, I find a genuine issue as to whether Complainant mistakenly filed his whistleblower complaint with another agency within 180 days of the termination. Complainant"s initial step was a call to the U.S. Department of Labor to complain about the termination. He called Wage & Hour, not OSHA. He says he called "to lodge a complaint," but he does not explicitly say that in fact he did complain. Wage & Hour would not have been likely to accept a complaint for whistleblower retaliation: It is OSHA"s responsibility to accept such claims, not Wage & Hour"s. The record is silent as to what response Wage & Hour gave Complainant, other than to refer him to the Oregon Bureau of Labor and Industries. Nothing suggests that Wage & Hour informed Complainant that it could not accept a whistleblower complaint and that he had to call OSHA.**
> **As a whistleblower complaint may be filed by telephone with any OSHA employee, it follows that complaining about whistleblower retaliation to an employee of the Department of Labor"s Wage & Hour Division is an example of when "a complainant mistakenly files a complaint with the another agency instead of OSHA within 180 days after becoming aware of the alleged violation." That is exactly what the tolling provision establishes as sufficient.**

At that point, Stoel Rives file a motion to reconsidered and resorted to lying. First they claimed that Brooks had a lawyer and produced an email by a former attorney at Stoel Rives, Ryan Gibson, purportedly between himself and Michael Vergamini where Mr. Vergamini claimed to represent Brooks.

The date on that was September 2, 2014. Now, this would have had no bearing on the case, but Brooks did not know Mr. Vergamini on September 2, 2014. In fact, Books filed a motin for Mandamus with the Oregon Supreme Court on September 2, 2014, over the Oregon Department of Justice withholding evidence Brooks filed with the court of Agate selling employee and their family's medical records. That was filed Pro Se and Brooks does not even think the Court would allow him to file any motion if he was represented by counsel. Furthermore,  and Mr. Vergamini stated he had never heard of that email and he had kept all copies of his emails. Brooks suspects this was another forgery.

In the Coppinger-Martin case the Ninth Circuit decided that Coppinger-Martin filed an SOX claim too late. Stoel Rives finessed that into meaning if Plaintiff had ever hired a lawyer for any reason, he somehow lost all rights to tolling and had to have filed a whistleblower retaliation claim. That is not what Coppinger says.

Coppinger, regardless, Brooks has tried, repeatedly, to show (a) that he did not have an attorney when he filed and did not use an attorney in his BOLI case and (b) that **it would not have mattered because Brooks filed within the statutory time** in effect, 180 days for SOX, ADA, ADA, Dodd Frank, False Claims Act, (retaliation), FMLA, and 30 days for OSH Act.

In Coppinger-Martin, the plaintiff filed a whistleblower action under SOX with OSHA on October 13, 2006. Nordstrom moved to dismiss her case as untimely/late because she had terminated her on April 21, 2006. At the time there was a 60 day filing deadline for SOX complaints.

ALJ Berlin simply ignored Brooks' telephone records and other proofs, but especially his recordings with BOLI attorney Jeremy Wolff. Berlin was off in the weeds citing Stoel Rives waving that fictitious September 2, 2014, letter. That would not have mattered in any event because Brooks filed with BOLI and that March 3, 2014, recorded telephone call with Mr. Wolff proves that Brooks had filed with BOLI with specific complaints on "securities fraud", "violations of insurance regulations", "violations of HIPAA" and the "Civil Rights Act".

In fact, it would not matter if Brooks had 100 lawyers, because Brooks fhad an initial contact with  initial with OSHA-Oregon OSHA, the EEOC, and BOLI on September 26, 2013.

Brooks has an email from the US Department of Labor OIG telling Brooks he has to file with Oregon OSHA:

> **For more information, you may visit OSHA's Whistleblower Protection Program website at www.whistleblowers.gov/ or you may call the Local OSHA Office for assistance. The office to best answer your questions referring to retaliation is the Local Oregon - Salem OSHA office. You may contact this office at (503) 378-3272.**

When Brooks contacted that office he was told:

> **OO.    Federal OSHA doesn't have jurisdiction in Oregon. We are a State Plan state. So we manage our own state plan, our own OSHA regulations and Bureau of Labor and Industries for Oregon handles the whistleblower worker retaliation claims. OSHA doesn't have any jurisdiction here unless you're on a reservation or a controlled military base or something of that nature.**

**EXHIBIT 4
Page 32 of 49**

That was emphasized in several other calls to Oregon OSHA.

> ***OO:    Do me a favor. Go to the Oregon OSHA website, please...it's got a couple of***
> ***pages. ...if you look at the statutes ...it comes up as 29 USC 218C, which is the***
> ***Affordable Care Act. It comes up with Sarbanes Oxley, because this is a publicly traded***
> ***company 18 USC 1514A and it used to come up with Privacy Act...Dodd Frank,...12***
> ***USCA 5567...***

Brooks was placed on Administrative Leave (September 16, 2013) based on an
anonymous complaint that Agate refused to reveal to Brooks. Brooks called and spoke with
OSHA, the EEOC and BOLI about his whistleblower claims on September 26, 2013. Brooks
provided telephone records proving that. Brooks was terminated the next day, on September 27,
2013. Brooks was still assuming this was health related and concerned his speaking out against
patient profiling and did not suspect it was whistleblower retaliation until his private Microsoft
email and cloud accounts were hacked into on September 20, 2013. Emails and documents were
opened and deleted. An eventual report by Microsoft showed these to be by Agate Resources and
Stoel Rives (the 9/20/2013 intrusion was from a public WIFI terminal, WayPort 64 in downtown
Seattle, a block away from Stoel Rives Offices. Brooks also has two emails containing malware
from sent by Agate HR Manager, Nanette Woods on September 18, 2013, and September 24,
2014. Brooks also obtained records of the hacking firm Agate used, DragonWorks, and the dates
and times of their intrusions and photographs of  and witnesses to the dark blue truck they used.

OSHA told Brooks that BOLI had jurisdiction and the task of taking his complaint.
Brooks called and spoke with OSHA and telephone records show OSHA returning that call and
Brooks' working with a BOLI intake clerk to write down his complaints. That would have
satisfied the filing deadline as of September 26, 2013.

Note that Brooks related the fact that his job was

But, let's assume that Brooks' claims needed to cite specific statutes. That was done
before March 3, 2014. A telephone call from BOLI attorney Jeremy Wolff refers to:

> **...statutory claims that we have to cover on in the complaint...There are two**
> **statutory claims for the disability related thing. ..the harassment complaint...**
> **discriminatory termination. Multiple claims that the termination was motivated by**
> **disability. And also kind of a whistleblowing retaliation claim...based on security**
> **fraud and violations of health insurance regulations and HIPAA is also relevant on**
> **this as well [Ex.7 - page 8]**

**EXHIBIT 4**
**Page 33 of 49**

March 3, 2014, was exactly 158 days from September 27. If you wanted to really stretch it, if wold be 168 days from September 16. Brooks swear, though, that he had no idea he was being terminated until the last minute on September 27, 2013. Also on that recording is Wolff making arrangements with him to come to BOLI headquarters with his evidence. Mr. Wolff was filing and cross filing other complaints. Brooks signed an additional complaint on March 6, 2014 and Wolff had that notarized. Brooks kept notes at that March 6, 2014, meeting [**Exhibit 7B**]. Note the filings BOLI is covering - Sarbanes Oxley 18 USC 1514A, Affordable Care Act - 29 USC 218C, Dodd Frank - 12 USC 5567 & 15 USC 7a-3, False Claims Act - 31 USC 3729 - 3733, OSH Act - 27 USC 660(c), HIPAA -45 CFR 160.316.

Brooks signed the HIPAA complaint affidavit, but had nothing written down to prove the statute Mr. Wolff named. Brooks looked that up when he got home that night. Brooks did not get a copy of the complaint signed on March 6, 2014. Mr. Wolff was looking into cross filed complaints with HHS, but all Brooks has in his notes is "Section 189 or 159". Brooks cannot read his own writing and the original was stolen by Marianne Dugan.

Brooks makes copies of his emails and documents and has ones received from Agate HR Director Nanette Woods on September 18 and September 24, 2013, contained malware/spyware that permitted an unknown party to remotely look into Brooks' computer.

Brooks filed a complaint with Microsoft, his email and cloud account vendor. Brooks was not able to get records of the intrusions from Microsoft until BOLI attorney Jeremy Wolff intervened and got Microsoft to give Brooks the IP records and dates and times of intrusions. Brooks did not get that until May 20, 2014. Brooks sent off a copy of this to Mr. Wolff and BOLI on May 21, 2014.

Brooks had to pay to have the malware/spyware removed from his MacBook Air computer. It was never the same after, however, and Brooks did not trust it. Agate wrecked that computer and, later, a MacBook Pro Brooks bought to replace it.

Brooks has records of all of this, including the hacking and malware. Brooks filed a criminal complaint with the FBI about that on June 19, 2014.

## I.    ALJ Confused By Stoel Rives and Brooks Proof of Filing

Judge Berlin was just plain wrong about when Brooks filed, about who Brooks filed with, and about when Brooks had an attorney, bur that is a rabbit trail he did not need to go down.

Brooks is trying to cut through the fog created by Stoel Rives. Brooks was fired by Agate on January 27, 2013. Brooks has telephone records proving the spoke with the OSHA, the EEOC and Oregon Bureau of Labor and Industries (BOLI).

Brooks hired Arnold Law from October 3 2013 through December 18, 2013. Arnold law went through the $10,000 retainer Brooks gave them in that amount of time just seeing the unemployment matter. Brooks owed them $1,500 more dollars. They had nothing to do with OSHA, Oregon OSHA, BOLI nor the Department of Labor. All of those records were provided to Berlin and to the ARB. BOLI sent Arnold Law papers, but Brooks told Oregon that Arnold Law did not represent him and was charging him to forward those papers to him. Brooks asked them to stop. They did not.

Next, Stoel Rives claimed (and Judge Berlin wrote) that Brooks had retained Michael Vergamini on September 2, 2014. Brooks had not even met Mr. Vergamini on September 2, 2014. That was the day Brooks filed suit against Oregon and BOLI for apparently not having filed the whistleblower and medical claims Mr. Wolff can be plainly heard talking to Brooks about in the recording made on March 3, 2014, six month prior. Instead, BOLI tried to pass off a document by a Stoel Rives Oregon had working at BOLI, Donna Brown, who they assigned to Brooks' case in violation of all manner of laws. Ms. Brown was put in a position to query Brooks about what he knew, who else knew, where proof of his allegations was.

Brooks met and hired Vergamini for one day, November 18, 2014. Brooks did not know how to dismiss a suit with leave to refile it. The EEOC was opening an investigation of BOLI and Brooks had to dismiss that suit, but did not trust anyone at that point, so he wanted to maintain that suit somehow. The first time Brooks ever met Michael Vergamini was in September 2014. The first legal contact noted in Brooks calendar and in emails was on November 16, 2014,  when Brooks had Mr. Vergamini help him write a Brief to the Oregon Court of Appeals in an unemployment case. Berlin wrote:

> **The civil action filed on September 2, 2014, also defeats Complainant"s equitable tolling argument in a second and independent way. As discussed above, Complainant alleged in the district court that he was attempting to raise wrongful termination claims, including claims related to Sarbanes-Oxley. Consistent with this, Complainant only dismissed this district court action when defendant State of**

**Oregon (BOLI) agreed to amend his BOLI complaint to add a Sarbanes-Oxley whistleblower complaint. That was plainly a purpose of the litigation. But, crucially, it was an attorney, Michael D. Vergamini, who signed the voluntary dismissal papers on behalf of Complainant on November 18, 2014. Even if Mr. Vergamini first began his representation of Complainant on that date, November 18, 2014, it was 503 days before Complainant filed the OSHA complaint on April 4, 2016. Complainant was charged with knowledge of how to proceed on his claims and did not do so for 503 days, making them untimely.**

Brooks brought up what he thought was an already filed Sarbanes Oxley case with the Oregon Supreme Court in a PRO SE filing "PETITION FOR A PEREMPTORY WRIT OF MANDAMUS" filed on September 2, 2014. Brooks did not even know Vergamini. Don't you think if Brooks was represented by an attorney he would have used them instead of proceeding Pro Se? Instead, Brooks wrote:

**I suspect that this is a consequence of the political fallout of the Cover Oregon fiasco. I don't care about politics, but I did collect records, notes, database tables, made note of conversations, and much other information concerning wrong doing by Agate and the Oregon Health Authority, payoffs to public officials (again), agency heads, elected officials, businessmen, aides, OHP contractors, and wrong doing by the Oregon Justice Department. The timeline of the Petitioners reporting illnesses, the dates are repetition of multiple hacks of the Petitioners computer, the utterly insane wiretaps of his cell phone, these actions is far to cute to be coincidental and Agate and the State should be punished for cooperating with this outfit in harming the Petitioner.**

**I had collected, and stored on my work computer, records of payoffs and fraud, some of it encrypted. A Spoliation letter was received by Nanette Woods, at Agate, on October 3, 2013. She ordered the destruction of those computers that day. The computers were destroyed the following morning, October 4, 2013). That destruction of evidence, especially <u>in the face of a Sarbanes Oxley complaint</u> is a felony, punishable by a 20 year prison sentence and a $20 million dollar fine.**

The whistleblower complaint filing deadline with BOLI was March 26, 2014. Brooks was well aware of the filing deadline and was "bugging" BOLI to file. Brooks filed and BOLI accepted whistleblower retaliation claims before March 3, 2013. In a telephone call recorded, and entered into evidence with the LJ and ARB, BOLI attorney Jeremy Wolff was recorded saying [**Exhibit 7**]:

**...statutory claims that we have to cover on in the complaint...There are two statutory claims for the disability related thing. ..the harassment complaint... discriminatory termination. Multiple claims that the termination was motivated by**

**disability. And also kind of a whistleblowing retaliation claim…based on security fraud and violations of health insurance regulations and HIPAA is also relevant on this as well [Ex.7 - page 8]**

This was medical profiling, the sale of patient records:

**I was the data warehouse administrator and so I got to see things like stock options where they were paying off politicians by giving them stock bonuses. I got to see this stuff. I got to see some of the files where they were rolling up records for employers that had the employees and all of their dependents and the total medical costs, risk conditions etcetera and they were giving them back to the employers. [Ex.7 - page 3]**

Brooks can be heard in the recording talking about whistleblower claims involving claims fraud, double billing [Ex.7 - page 5]. Brooks was intending to file those claims Mr. Wolff arranged for Brooks to come to BOLI headquarters on March 6, 2014.

Note from conversations, Mr. Wolff s collecting whistleblower records from Brooks on Medical fraud, bribes paid to OHA officials like that $5000 a month he and Mr Anders talk about in that recording that was paid for psychiatric hospital patient records.

Stoel Rives then brings up the court appointed attorney Jesse London. London was assigned by Ann Aiken and had very little to do with Brooks, much less his wrongful termination case. In any event, London, too, had nothing to do with Brooks until months after the recorded filing of whistleblower claims by Brooks in the recording with BOLI attorny Jeremy Wolff on March 3, 2014. London and no other attorney was doing anything with Brooks between December 18, 2013 and March 26, 2014. Stoel Rives created a rabbit trail that had judges chasing after meaningless facts. Listen to the recording or read Brooks' transcript of that recording, something the ALJ's and ARB and Ninthe Circuit should have done and did not.

Some clarification is necessary. Brooks has phone records showing he contacted federal OSHA, Oregon OSHA and BOLI on September 26, 2013. Federal OSHA told Brooks to contact Oregon OSHA when he contacted them. Brooks did not trust Oregon and wanted this clarified. In an email the US Department of Labor told Brooks he had to contact Oregon OSHA, and went on to explain the statutes (At the time, OSHA oversaw Workman's Compensation, too):

**For more information, you may visit OSHA's Whistleblower Protection Program website at www.whistleblowers.gov/ or you may call the Local OSHA Office for assistance. The office to best answer your questions referring to retaliation is the Local Oregon - Salem OSHA office. You may contact this office at (503) 378-3272.**

When Brooks contacted Oregon OSHA, they told him that federal OSHA and the US
Department of Labor and SEC had no jurisdiction in Oregon. The complete conversation is
recorded and Brooks made a transcript of it in **Exhibit 1**.

> **OO.    Federal OSHA doesn't have jurisdiction in Oregon. We are a State Plan state.
> So we manage our own state plan, our own OSHA regulations and Bureau of Labor
> and Industries for Oregon handles the whistleblower worker retaliation claims.
> OSHA doesn't have any jurisdiction here unless you're on a reservation or a
> controlled military base or something of that nature.**
> **Me.    But I ended up with you when I called federal OSHA. They just transferred
> me straight over to you.**
> **OO.    Right. And that's what they do, because they don't have any jurisdiction
> here.**

In another call to OSHA hotline on July 3, 2018, Brooks was trying to file a complaint for
continuing retaliation by being denied access to medical care. He was, again, transferred directly
to Oregon OSHA who still claimed sole jurisdiction. What is frustrating is that the ALJ's and
ARB both were given these recordings and they obviously did not listen them. They ignored
Brooks because he was Pro Se. They apparently did not even read Brooks filing.

> **OO:    Do me a favor. Go to the Oregon OSHA website, please…t's got a couple of
> pages. …if you look at the statutes …it comes up as 29 USC 218C, which is the
> Affordable Care Act. It comes up with Sarbanes Oxley, because this is a publicly
> traded company 18 USC 1514A and it used to come up with Privacy Act…Dodd
> Frank,…12 USCA 5567… Oregon OSHA contracts with BOLI to provide
> enforcement of complaints filed under this (unintelligible) number.…**

The ALJ and ARB are ignoring federal statutory law and their own regulations on tolling
in the <u>OSHA Whistleblower Investigations Manual.</u> It does not matter what BOLI or Seattle
OSHA or Stoel Rives say. Brooks quoted from the regulations that every OSHA office in the
country is supposed to abide by. Its a Congressional mandate! If a whistleblower files a
complaint with BOLI or Oregon OSHA, it is as if it was filed with federal OSHA like it or not,
and tolling ceases:

> *1. **<u>The employer has actively concealed or misled the employee regarding the existence
> of the adverse action or the retaliatory grounds for the adverse action in such a way as
> to prevent the complainant from knowing or discovering the requisite elements of a
> prima facie case</u>**, such as presenting the complainant with <u>forged documents</u>…*
> ….

*4. **The employee mistakenly filed a timely retaliation complaint relating to a whistleblower statute enforced by OSHA** with another agency that does not have the authority to grant relief (e.g., filing ... complaint **with a state plan**.*

More to the point, BOLI Attorney Jeremy Wolff , told Brooks that he fit the definition of "public employee" under ORS 659A.200 and 839-010-0010

**A "public employee" is ...**
**(b) Employed by or under contract with any person authorized to act on behalf of the state, or agency of the state or subdivision in the state, with respect to control, management or supervision of any employee;**
**(d) Employed by the public corporation established under ORS 741.001**

And ORS 741.001 describes the Oregon Health Exchange and its contractors.Trillium Community Health Plan... Under that, Brooks is a federal contract employee, also!

The Oregon Insurance Exchange is a public corporation created by the Oregon Legislature in 2011 under SB99. In particular, it describes Trillium, which is a stakeholder and licensed to conduct business as a contractor of the Insurance Exchange. Furthermore, Trillium audited claims for Medicare, Medicaid, and SCHIP insurance programs for the state of Oregon and CMS. Under that, too, Brooks was a federal contract employee and a state employee under ORS 659A.200.

The facts of this are quite simple. The US Department of Labor ARJ's and ARB got it completely wrong when they wrote that Brooks had filed his whistleblower retaliation complaints late. They simply did not listen to Brooks's recordings, ignored the transcript, ignored what he wrote, and ignored the law. Larsen wrote:

*These facts are undisputed:*
*.....*
*2. **On April 4, 2016, Complainant filed a whistleblower retaliation complaint with the Occupational Safety & Health Administration. OSHA dismissed his complaint on April 13, 2016, and Complainant requested a hearing before an Administrative Law Judge in OSHA Case No. 2016-SOX-00037, Brooks v. Agate Resources, LLC.***
*Motion, Exhibit 14, p. 1. Complainant argues at length (Answer, pp. 29-35) that he filed an earlier complaint with OSHA on September 26, 2013. But this was the issue in Case No. 2016-SOX-00037, as discussed more fully below, and Administrative Law Judge Steven B. Berlin decided this issue against Complainant.*
*3. In Case No. 2016-SOX-00037, Complainant alleged claims under the whistleblower protection provisions of the Affordable Care Act and the Sarbanes-Oxley Act.*

> **Motion, Exhibit 14, p. 1; no contradictory facts alleged or demonstrated in Complainant's Response. In his Answer (pp. 36-44), Complainant raises a number of other issues, but never denies having alleged claims under SOX and the Affordable Care Act in Case No. 2016-SOX-00037.**
>
> **4. By Order issued March 6, 2017, Administrative Law Judge Steven B. Berlin found the April 4, 2016, complaint to OSHA untimely because there was no factual basis for equitable tolling, and denied Complainant's claims in Case No. 2016-SOX-00037.**
>
> **On the record before me, it appears that when Judge Berlin ruled against Complainant in Case No. 2016-SOX-00037, Complainant took two steps. First, he appealed Judge Berlin's decision, which he had every right to do. Second, he filed this case, based on the very same facts – something he had no right to do. Accordingly:**
>
> **1. Respondent's Motion for Leave to File SurReply is DENIED.**
>
> **2. Respondent's Motion for Summary Decision in this case is GRANTED, without prejudice to the determination of the pending appeal in Case No. 2016- SOX-00037.**
>
> **So Ordered, Christopher Larsen, ALJ**
>
> **Order Granting Summary Decision, 2018-SOX-00046]**

ALJ Larsen was misled by Judge Berlin and both were mislead about dates  and the statutes filed under by Stoel Rives.  It is obvious neither ALJ lisened to the recording or bother to read the transcript of it. They ignored a pro se litigant telling the truth  and they paid attention to three Stoel Rives attorneys dispensing falsehoods. Read Judge Berlin's decision:

> **The regulations further particularize that the complaint must be filed with the Occupational Safety & Health Administration. Unlike EEOC charges of discrimination and section11c  retaliation cases under the Occupational Safety & Health Act, there is no work-sharing or cross-filing agreement between the U.S. Department of Labor (or OSHA) and state agencies on the processing of whistleblower complaints under either of the statutes involved in the present case.**

Instead of listening to the Brooks' recording and upholding the law, Berlin and Larson and the ARB listened to Centene and Oregon's attorney's lying to them. Never mind that BOLI Tod Brooks they not only could, but were cross fining, read the US DOL Whistleblower Investigation Manual on "Dual Filing" (p.1-4, State Plans and "Equitable Tolling" (p.2-20) is very clear:

> **Dual Filing.**
> *States must include in their policy document(s) a description of their procedures for informing private sector complainants of their right to concurrently file a complaint...*

And, from Oregon OSHA's own directive given to their employees [page 3]:

> ***Dual filing– Complainant has the right to concurrently file with federal OSHA and
> BOLI. Complainant will be notified of these rights during the BOLI screening process.
> Federal OSHA will defer to the state plan to conduct their investigation, but this
> preserves the complaint's right to seek a federal remedy should BOLI be unable to
> effect appropriate relief.***

Berlin, Larsen, the ARB, all had a telephone recording of Brooks speaking with BOLI attorney

Jeremy Wolff on March 3, 2014, where Wolff discussed having filed whistleblower retaliation

claims with OSHA! They all had Brooks citing them the actual statutes written and they ignored

them.

      If they had bother to listen to the recordings, they would have heard BOLI attorney

Jeremy Wolff arranging for Brooks to meet with him at BOLI headquarters on March 6, 2014, to

sign another whistleblower complaint and for Brooks to provide evidence and discuss further

statutes to be filed under. Brooks signed another formal complaint and that was notarized on the

spot. That statement was signed and notarized at BOLI headquarters! They were either cross

filed or BOLI made a monumental administrative error that ought to see their contract with

OSHA cancelled. That is not Brooks fault, nor is it his problem if someone paid attention.

Brooks filed complaints and the complaints were being covered by BOLI and cross filed **before**

March 3, 2014. Brooks and Wolff can be heard orally discussing them on March 3. A further

notarized complaint was filed on March 6, 2014. All of this is perfectly clear.

      It would not matter if Brooks was represented by an attorney or not because this was

within the filing deadlines. Brooks was not, in fact, represented by an attorney because he plainly

did not have one on March3, before March 3, or March 6. The only remaining question is

"**Where are Brooks' Complaints**"? Mr. Wolff was pretty clear that those were sent to Seattle

OSHA and Seattle OSHA has claimed not to have received them. You have a recorded telephone

call, an eye witness to the BOLI meeting in the form of a newspaper reporter, and Brooks' own

testimony and meeting notes. Something smells wrong about this whole thing.

      And not, March 6 was 20 days before the filing deadline. Heck, if someone wanted to

quibble, March 6, was 171 days after September 16, 2013, the date Brooks was placed on

administrative leave based on a secret complaint. So, even if they ignore the telephone records

and BOLI worksheets from November and December 2013, they still have Brooks filing with

BOLI and they have a recording from Oregon OSHA telling Brooks that federal OSHA has no

jurisdiction, that as a State Plan state, Oregon requires Brooks to file with BOLI! And, you have

Brooks SIGNING new complaints on March 6, 2014, at BOLI headquarters. And those were also being **cross filed** with **US HHS** and **federal OSHA**.

Mr. Wolff and BOLI had cross filed complaints under the Affordable Care Act, Family and Medical Leave Act, The Civil Rights Act - Title VII, The Age Discrimination Act (for replacing Brooks with a younger H1-B worker), and retaliation for opposing medical redlining and patient profiling for discrimination based on age, race and "national origin" , disability, and sex. There were state claims, also, but Mr. Wolff said Brooks was covered as a public employee according to BOLI's reading of ORS 659A.200 - 234 before March 3, 2014. Brooks signed a complaint for additional filings on March 6, 2-14, at BOLI headquarters. Supposedly, all of those complaints were sent to Seattle OSHA. What happened to them?

However, that problem still leaves Brooks as having filed, and done so legally, as of March 6, 2014, at the very latest. Stoel Rives and ALJ Berlin's arguments about lawyers is just so much fog. Brooks did not have a lawyer on March 3 or March 6, 2014. Brooks is recorded with a BOLI attorney discussing his case. Those are the only legal filing requirements.

Take a look at the notes in **Exhibit 7B** to see what Brooks was talking about with Jeremy Wolff. On page 5 of those notes , Mr. Wolff specifies the whistleblower statutes he has/is filing under: Sarbanes Oxley - 18 USC §1514A and §1513e, Affordable Care Act - 29 USC §218C and "Section 1558" and "PL 111-148", Dodd Frank - 12 USCA. §5567, retaliation for objecting to HIPAA violations - §160.316 (Mr. Wolff also spoke about the Privacy Act and OSH Act). Mr. Wolff was cross filing with US HHS and mentioned a statue that Brooks wrote down as "Section 189" or "Section 159". **WOLFF TOLD BROOKS** he **was going to telephone US HHS OIG about what statute to file under**.

**Mr. Wolff was cross filing with both US HSS and OSHA by March 20, 2014, which thought was the deadline.**

**Mr. Wolff drafted whistleblower and medical complaints with Brooks and had Brooks sign it.** Brooks was assured that his filing with BOLI was the proper venue. Brooks recalls he was told that BOLI had already cross filed complaints with the regional OSHA office in Seattle. So what happened to those? Clearly March 6, 2014, is well before April 4, 2016 and Brooks saw and signed complaints that were sent to that office. Something is very very wrong.

September 27, 2013, marked beginning of the clock for filing. **30 days from that date** (OSH Act Complaint's only) would be October 27, 2013. **180 days from that date** (Sarbanes

**EXHIBIT 4**
**Page 42 of 49**

Oxley, Dodd Frank, Affordable Care Act, Americans With Disabilities Act, Family and Medical Leave Act, Title VII Civil Rights,) would be March 26, 2014.

Brooks met all of those deadlines: Brooks had filed medical and retaliation claims with the EEOC, Oregon OSHA, Oregon Bureau of Labor and Industries (BOLI) on September 26, 2013. Brooks **received** two call from BOLI intake clerk Monica Mosley October 1, 2013 (8:46 AM, 9:04 AM). That, ended tolling on all statutes OSHA handles as of October 1, 2013.

The facts are quite clear. Brooks spoke with BOLI and the EEOC about his complaints on September 26, 2013. BOLI called back and took down those complaints on October 1, 2013. And Brooks was engaged with BOLI intake clerks drafting written complaints within 30 days of this termination. According to both federal OSHA  (in the FY13 FAME Report, for example) and the EEOC, BOLI is their state contractor empowered to take complaints.

All of this has been ignored by the two ALJ's and ARB for the Department of Labor, as well as the District Court and 9th Circuit Court Judges. There seems to be a problem with federal judges ignoring Pro Se litigants and statutory law, ignoring the law, ignoring the fact that Centene was withholding critical medical care from a whistleblower in violation of SOX Section 1107 and 806 and having had illegal ex parte communications with the ARB:

> *In the case at bar, <u>Complainant filed the complaint on July 3, 2018</u>\*\*\*. As noted by the ALJ, the Complaint filed the alleged complaint alleging the same set of facts as an earlier complaint, <u>**which a different ALJ had concluded was untimely filed. The ARB affirmed this earlier decision on March 25, 2019\*\*.**</u> Brooks v Agate Res., LLC, ARB No. 2017-0033, ALJ No. 2016-SOX-00037. We agree with the ALJ's summary of the procedural history of the case before us and that granting Respondent's motion for a summary decision was in accordance with the law.*
>  [ARB decision April 21, 2020]

….Complainant filed a whistleblower retaliation complaint with the Occupational Safety & Health Administration by telephone on <u>April 4, 2016.</u> Nine days later, on April 13, 2016, [Seattle] OSHA issued a "Secretary's Finding" dismissing the complaint as **untimely filed**. Complainant Objected and requested a hearing before an administrative law judge.

> **Complainant failed to file a timely complaint with the Occupational Safety & Health Administration on either of his whistleblower claims. As a matter of law, any application of equitable tolling ceased beyond the limitations period, rendering the April 4, 2016, <u>filing untimely</u>.** *Accordingly, Complainant''s complaint is DENIED and DISMISSED in its entirety.*
>  [Decision in by ALJ Berlin on March 2017]

**EXHIBIT 4
Page 43 of 49**

Berlin had the Wolff and OSHA recordings, Brooks' phone records and statements, and OSHA Whistleblowers Investigations Manual in hand. How on earth did he come up with April 4, 2016? Berlin seems to base his decision on the contention by a Seattle OSHA that Brooks was supposed to file with them, but they told him to file with BOLI back in 2013! The claim that Brooks did not file with them is hogwash and disproven by the recording with Wolff and the email from US DOL OIG. Berlin's dismissal was contrary to federal law and OSHA's written policy: "**employee.. filed a timely retaliation complaint...with a state plan**."

In addition to that the recordings between Brooks and BOLI and Brooks, Oregon OSHA, US DOL OIG, and US DOL whistleblower hotline, Brooks was told that he had to file with Oregon OSHA. You and those Department of Labor Courts have recordings of that!

Brooks wrote this to every single administrative judge and not one even addressed it. Brooks doesn't think they read what he wrote at all. They clearly did not listen to the telephone recordings. And all of this misses the fact that Brooks signed complaints on March 6, 2014, at BOLI headquarters that were being cross filed with US HHS and with OSHA. That a previous cross filing was made before March 3, 2014. The obvious question is "what happened to those complaints? It is beyond question that Brooks met the filing requirements.

This is and was whistleblower complaints covered under *18 USC 1001* and *18 USC 1513e.* Someone either committed a monumental administrative error or they committed a crime. Either way, Brooks has been harmed and the only remedy is for the Supreme to take this case.

If any one of those judges, ALJ's or the ARB had shed their blind bigotry of Pro Se litigants, this case would have been decided in arbitration years ago. Instead, here we are. What you have, though, is collection of administrative and federal judges that have made a mockery of the legal system in this country and they harmed a Pro Se litigant.

Your choice, Brooks was misled by Oregon, his employer under state law, or Brooks "mistakenly filed a timely retaliation complaint relating to a whistleblower statute enforced by OSHA with another agency… with a state plan state"). Either way, Larsen, Berlin, the ARB look ridiculous. How on earth can judges miss the laws they are supposed to uphold when the plaintiff goes to the trouble of printing them out for them. Brooks met the filing deadlines and it becomes obvious that Oregon and BOLI deliberately attempted to derail a Sarbanes Oxley case and harm the whistleblower.

**J.      Stoel Rives and Donna Brown; Criminal Violations**

Brooks was assigned a Spanish speaking intake clerk by BOLI. Brooks is hard of hearing and could not understand her. Brooks was working with BOLI filing whistleblower retaliation complaints and the intake Clerk, Monica Mosley, crossed them out when Brooks added them to the number paragraph worksheet she sent Brooks. Brooks asked to speak with her supervisor to straighten this out.

Brooks was transferred to Donna Brown. Ms. Brown confirmed that. What Brooks found out several months later was that Donna Brown was a Private Investigator for Stoel Rives. Brooks does not know how she came to be passed off as a BOLI employee. That should bring criminal charges down on her, BOLI, Oregon, Centene and Stoel Rives.

Brooks is going to assume that no one wants to make this a criminal case because it involves current political VIP's, including President Biden's largest campaign money bundler, Michael Niedorff, Three US Senators, and two sitting governors. So respondent's will weasel word this by backdating her hire date and say she wasn't working for Stoel Rives, even though she was passing documents and information to them in December 2013. However, Brooks has snapshots of several LinkedIn pages that show that alternation.

Even with that, however, Donna Brown was a licensed private investigator, not a BOLI intake clerk. She had been an employee of Stoel Rives and had worked on the Dean Harris whistleblower case involving Agate Resources. She had conflicts of interest and should never have been assigned Brooks' case.

**K.      Jeffrey Wertkin**

Next, look up Jeffrey Werkin, the US Attorney out of Washington who was selling Medical fraud case files to companies across the US. Mr. Werkin was caught when he sold Brooks' file to Centene for $310,000.

What is curious about this is it involves the Portland US Attorney's Office. Get the letter from *former* Portland US Attorney Neil Evens to the Distirct Court. He elects 'not to involve the government in Brooks case', but he wants it seals because its records involve another case. That case was the Wertkin sting involving Oregon, US DOJ OIG, Centene, Seattle OSHA and Stoel Rives. Evens literally trade Brooks case for Centene's cooperating in that sting. The loose end in this is how did the records sent to Neil Evens and Kevin Burke at the Portland US

Attorney;'s Office get to Wertkin in Washington D.C. with supposedly no one else at DOJ headquarters seeing them?

In a meeting in Portland, December 17, 2015, Brooks met with a group of attorneys 9 plus paralegals from three or four law firms) about this case. Charese Rohney was there. She was an attorney that Brooks had tried to get to take this case. In front of the entire group Ms. Rohney revealed that Neil Evens had contact her in April 2015 and told her the US government was not going to intervene because (a) Brooks did not have CPT codes and claims records and (b) Brooks was lying.

Brooks had three bankers boxes of documents with CPT codes that were nothing. But claims. Also, Brooks had database snapshots on DVD disks that were encoded. Brooks could not have been lying. Rohny saw that and told Brooks what she knew. She was angry about being misled. Brooks wrote everything down and sent a complaint to Michael E. Horowitz. That resulted in the resignation of Evans. Wertkin got a 30 month sentence.

### L.    Reasons for Granting the Petition

Brooks' health and professional life were destroyed for doing the right thing. He has been impoverished by the courts and defendants in retaliation for acting honoraby. The key points will determine and set policy for the:

- Brooks was informa pauperis. That had never been rescinded the the Appeals Court error ed and violated ARCP 24 in denying Brooks informa pauperis status.
- The Appellate Court and District Court erred in not appointing counsel for Brooks. Brooks required, still requires the appointment of counsel. Brooks is not merely indigent, Brooks is incapable of even dressing himself or taking a bath on his own, much less representing himself in a complex case with three to sex Stoel Rives attorneys opposing him. The Appellate Court is in violation of the Americans With Disabilities Act that applies to all federal agencies receiving federal funds. These courts are creations of the US Congress and receive federal funds for their operation. Also, Employe and Judges of the Article 3 Courts are covered by the ADA, so they acknowledge those statutes. Ignoring Brooks and other disabled litigants sets up an Orwellian discriminatory imbalance between the courts and petitioners. Are "some pigs more equal than other pigs?

EXHIBIT 4
Page 46 of 49

- Brooks has testified and provided documents, including statement that were in his original Personnel File on September 16, 2013, that show he had injuries sustained on the job that were not treated in violation of the Rehabilitation Act, the ADA and ADAAA; the FRCP and ARCP, and other statutes and rules established by Congress to the federal Article 3 Courts as Congress intended and to states and lawyers

Brooks has shown beyond any shadow of doubt that he filed his complaints with BOLI, OSHA and the EEOC in a timely manner as he was instructed to file. AJB Berlin was misled was Stoel Rives with rumors of attorneys and the Coppinger-Martin case that had nothing to do with Brooks' filing. Stoel Rives used that to libel Brooks, to call into question his integrity. Brooks swears, however, that he had no knowledge of any communication between Vergamini and Stoel Stoel Rives until November 2014.

- Oregon's allowing a Stoel Rives investigator to oversee Brooks' complaints and the "missing" complaints provides an indication of felony evidence tampering by BOLI and the State of Oregon. **18 USC 1001**, *18 USC 1513e are very applicable criminal statutes that should be applied against not merely Oregon, but also Stoel Rives.*
- The application of Sarbanes Oxley, HIPAA, an other laws pertaining to healthcare to state governments and state founded public corporations in light of the ACA and Congress's "outsourcing" healthcare and the money. That has resulted in organized crime in state governments (and Brooks was the DBA that did the OSHU "Ten State" study on state DME fraud and can prove this)
- Revisit setting professional, ethical, and legal guidelines for judges and attorneys before the federal courts. Disabled litigants are entitled to damages from attorney's and the Article 3 courts for their ignoring Congressional mandates in the ADA, ADAAA, and RA. The individual lawyers and judges should be fined and pay restitution as if they were any other agency employee that failed in their obligations to the disabled.

## M.    Conclusion

Brooks is asking for a summary judgement and a Protective Order, at least for his medical claims. Brooks was injured on the job and those injuries have been caused to become much worse with Agate and Centene meddling and interfering with necessary medical care. Brooks needs medical care now. Brooks has been denied medical care for nearly 8 years with horrible consequences. It is a no brainer to force Centene to pay for care for Brooks' eye, feet,

and back. Brooks needs expensive compression socks and orthopedic shows that cost $250. Brooks cannot afford those and the pair he is wearing are five years old and falling apart.

Brooks needs prescription eye glasses to compensate for the lack of surgery for his right eye. Brooks has trouble reading normal sized print, cannot see a television screen from ten feet away. And, Brooks requires accommodations where he can live. Brooks has been a burden to his family and friends. Brooks is tired of begging for a spare room. He cannot sleep in a normal bed, anyways, and the alternative has meant sleeping in homeless shelters. Brooks wants a trailer. Air Street makes a handicap equipped trailer for disabled in their International and Flying Cloud models. Those feature wide doors and interior space that will accommodate a wheelchair and can be fitted with an electric step that will permit a wheelchair confined person to enter and exit them. A hospital style bed is fitted to the handicap model which will elevate Brooks and allow him to sleep in a bad for the first time since November 2017.

Brooks would ask this Court for a directed judgement for back salary and damages based on the amended complaint from 6:15-cv-00983-TC/JR/MK/AA [**Exhibit 8**]. Brooks is willing to submit this to arbitration. Brooks does not want to be rich. He merely wants to be made whole and be able to live out his life in peace away from Oregon.

If Respondent's will not do this, Brooks wants every dime capable of being clawed from Centene, Oregon, and every executive and individual involved. Then, Brooks is asking that this Court:

• Restore 6:14-cv-01424-AA
• Restore 6:15-cv-00983-AA
• Restore all of Brooks whistleblower retaliation claims, including any and all statutory claims that would have been filed but for interference by Stoel Rives and Oregon
• Disqualify Stoel Rives and all of its expert witnesses
• Disbar and Sanction Stoel Rives and Sanction Centene and Agate's former executives, personally, required them to pay for Brooks expert counsel. Korjenek, Coplin, Sattenspiel, Wuest personally prevented Brooks' getting medical care and Brooks wants each of them criminally prosecuted and sued individually for the maximum in damages.
• That the new trials be scheduled in a new venue outside of the Ninth Circuit and the interference of Oregon or the Oregon District Court.

- Brooks wants the return of all evidence in the possession of Stoel Rives and all evidence he filed for in RFP's that the Court and Stoel Rives misrepresents as not having been filed -

  The Rico v Mitsubishi Motors case made this an easy decision. Simply based on the evidence given to the 9th Circuit Judges Stoel Rives was disqualified. They participated in theft of Brooks' case documents and hid that fact by lying to the Court. The 9th Circuit ignored it . Rico v. Mitsubishi Motors 42 Cal. 4th 807, 171 P.3d

- Brooks wants Aiken's protective order struck and the evidence made public with the deadlines missed due to Aiken's ruling modified to permit the victims of the crimes described here to file suit against Oregon, Agate, Centene, MODA, and Stoel Rives.

Respectfully Submitted, May 28, 2021

Michael T. Brooks
Pro Se
32713 Vintage Way
Coburg, Oregon 97408