| | |
|---|---|
| **From:** | Mike Brooks |
| **To:** | Keating, Reilley |
| **Subject:** | SLAPP SUIT, LR 7-1a notification |
| **Date:** | Monday, August 9, 2021 2:59:23 PM |

Reilly Keating
August 9, 2021

The records you refer to were sent to the US Supreme Court, Justices Roberts, Thomas, Alito, and Barrett. As I said to them in the cover letter, I did not know what to do with those nor make of them:

**The records in the exhibits are from [a person claiming to be] a national news broadcaster who would not tell me where they came from. The producer needed an explanation about records they had in their possession. These were some of the 64 GB+ records that had been stolen from Leiman and Johnson law offices on September 10, 2017. Those records were stored under a gag order from District Judge Ann Aiken. Why a news organization had them in June 2021 is a huge question. Who is handing out these records? These can do further harm victims.**

I brought up Judge Aiken's Protective Order and sent the justices copies of it to the justices and expressed my concerns that the court was exceeding its authority in making orders in that order.

Aiken's order contravened 45 CFR 164.400-414, the HIPAA Breach Notification Requirements of HIPAA and parallel laws by the SEC and FTC. When I was given the copies I sent to the justices I was tempted to send them to Congress but I cannot tell if I can legally send that kind of information to Congress. I could send it to the federal courts and state and federal investigators and, in the case involving the US Department of Labor, I could send it to the Solicitor and Secretary. I sent it to the Courts and to that Solicitor. I was opened by a clerk at the Supreme Court and, I gather, that is where you obtained an copy…illegally I might add.

THAT IS A FRESH HIPAA BREACH and requires notification of the the Secretary, SEC and FTC by you. The fine for not doing so is $55,000.

When Aiken and McSyne closed 6:14-cv-012424, they closed off all future actions. As of the date of that closure, I did not have any PHI. I did not, in fact, have my own documents. All of that was in the possession of Leiman and Johnson, London and Dugan.

I received a memory stick of attorney-client emails I referred to in an email on September 21, 2017 and I received. I would be more than happy to share that with a judge, but not with you or your firm. As for the other half box of junk, junk is what it was. It was copies of OSHA Fact sheets, newspaper clippings,, etc. The only things of any value were copies of my original filing of the wrongful termination suit on 9/2/2014 and refiling on 6/4/2015 along with the BOLI files and copies of emails.

ALL of that had been stolen by Dugan. I did not have any of that and I scanned it and made copies. The Ex Parte filings with Judge Jolie were complaints about only that tiny bit of the massive information I had collected. Dugan took 95% of what I had. I need to realize that I collected everything I could lay hands on from 2006 through 2013 and subsequently from another engineer and whistleblower inside of Agate. I knew of the terminating doctors and Agate lying on reports to CMS. I had those records. Dugan took them! Dugan did more damage to wronged human beings, to the poorest patients, than you can possibly imagine. Just understand, I don't have anything of yours or Agate;S that would be covered by the Protective Order. I do not have PHI except for my own. I do have records that were published at one time or another, including the alternative physicians fee schedules unlawfully used by Oregon and OHA, minutes from Agate/Trillium/Centene Board meetings, legal documents and cases and some information from lawyers and state governments suing Centene. I have what most people think of as a photographic memory (I cannot word for word quotes from documents, but I have an excellent recollection of the contents and am on the lookout for lawsuits that I can help with.

The letters I wrote, which means you are still somehow hacking into my computer read:

**Why?…There are tens of thousands of people that were denied medical care, denied home and auto loans, denied jobs, because these left wing protected bast\*rds SOLD their medical records. As far as I am concerned, that REQUIRES you to them to suffer just like those patients suffered. You can watch you wife die from breast cancer in order that some corporate executives can get an extra $55,000 in bonuses to divide up. You can rot**

EXHIBIT 2
Page 1 of 6

**in h*ll while your little girl dies from treatable [irritable[ bowl disease or leukemia or heart disease. You can lose your job because you or your spouse have marriage problems and trying to work them out with a counselor. Those records, and a lot more are being sold TODAY and the a**holes in the courts violate the law by not ordering the patients recive notice of that deliberate breach.**

I would give much to have those records and be able to send them to patients, but I do not. Believe me, if I did, I would have been in court forcing Centene to comply with the HIPAA Breach Notification Requirements. That would cost them billions and probably put those bast*rds out of business. I am still trying to get the US Supreme Court to order that and, barring that, I fully intend to go to Congress. I may not have the records but BOLI, the US Department of Labor, the Oregon Secretary of State all sure do. And, if they are legit, CBS might actually have a soul and turn those over to Congress.

What you have been doing is continuing LYING to me. I do not and did not have PHI or even 95% of my other documents as of the date I gave them to Leiman and Johnson and you know it. I received paper copies of PHI and ended up speaking with someone I do not know, and do not wish to know, about this case. Newspaper reporters are like lawyers - untrustworthy and care about fame and money and care not one bit about human beings that were hurt by the likes of Centene and Agate.

I wanted / want to protest Aiken's gag order as unlawful and order Centene comply with the HIPAA individual and mass media public disclosure requirements. I was told I could not do that because the case was closed. However, the earlier stuff you went through was also unlawful. It placed me in double jeopardy with no rights. So, if you file your motion, I will appeal to the US Supreme Court and hit you with a SLAPP suit and I am told that this will provide grounds for reopening the qui tam suit. I will be aggressively contacting lawyers. Aiken had all sorts of problems when she demanded information and when your misleading Brief was accepted by the Court.  ….. with me, the only expert witness, being excluded.

That whole qui tam case was weird and deliberately mishandled by Aiken and McShayne. I was prohibited from participating in it. Jesse London was assigned by Aiken. Without my inout, he hired Leiman and Johnson and they, again without my input, hired Dugan. I Amy have met with Leiman and Johnson three times. I may have met with Dugan six times. In fact, I have an email from Drew Johnson telling me NOT to contact Dugan. I was supposed to email him and he would confer with Dugan and get back to me.

Dugan was a virulent Anti-Trump fanatic and I was a Trump voter. I had the snot beat out of my on March 7, 2016, in downtown Portland, two blocks South of the City Center Marriott on Broadway. There was a hat shop across the street from the Marriott back then, and I had ordered a custom that for my wife's birthday (coming up on April 5).
    I was in a wheelchair at that time (you can verify that with correspondence with Paul Bruch and the Court in July and August 2015

**As the Court knows, in early July, my left foot was injured. Because it was swollen and quite painful, I attempted to schedule an appointment to see my primary care physician, Dr. Katherine Beckstrand, at PeaceHealth Medical Clinic, Santa Clara. Dr. Beckstrand had no openings, so I was sent to see Dr. Stephen Hallas, an associate in the same clinic. Dr. Hallas ran some x-rays, put me in a cast and told me to make a followup appointment in two weeks, if the foot still hurt. He suspected a sprain, because he could see no obviously fractures, just soft tissue damage and swelling. I had a followup appointment with a nurse practitioner, Sylvia Little, who took more x-rays and sent them out for "reading". That found verified old soft tissue and joint damage.**
**As always, since 2013, I was asked how this had happened, and I explained about the broken foot, the putting off surgery at Agate's request, and the damage the left foot suffered as a consequence of this.**
**Well, today, when I called, because the swelling is awful, I am in agony, I called Dr. Beckstrand's office to schedule another followup appointment. Ms. Little said that Dr.**

EXHIBIT 2
Page 2 of 6

**Beckstrand would need to order an MRI done and refer me to an in-house Orthopedic surgeon, because she suspected that something internal inside the joint had been broken. I was transferred to some central location, where I was told that, because this was a work related injury, I could not be seen.**
**Now, I had filed with BOLI for this, old doctors about this, since 2013. Why suddenly now? My suspicion is, since I am a Medicare patient, Agate handles my claims and has access to me records, that hey have something to do with this. The fact is, no one will see me. I'm trapped in this bureaucratic nightmare, with a likely broken foot, a Workman's Comp claim that was never processed by he state of Oregon (one that is likely well beyond any time limit for processing), being refused medical treatment unless I "pay cash".**
**I am requesting his Court's intervention. I have put up with harassment of this sort for several years. I need medical treatment now. Long term swelling, such as I have, can result in blood clots and death. I think I need a court order to PeaceHealth that I will be treated and a retraining order or injunction prohibiting Agate from further interference. However, I am simply not sure of what can or should be done with this. I am, frankly, at a loss. I am, however, requesting the Court's assistance, as I cannot figure out where else to turn to. [8/20/2015, letter to Paul Bruch]**

I was blocked off at the stop light. My rear tailgate was pried open (and I have photo's of that, too) and a screeching mob, ostensively protesting the Hammonds and other whites squabbling over the remains of the Malheur Indian Reservation that was stolen from my people in 1879. Four to six of these nutbags scrambled over the seats, kicked me out of my own car and beat the cr*p out of me right there. One threatened to kill me with the crowbar that they used to pry open the rear door. The leaders of those early AntiFa nuts were Aiken's kids, Jake and Zack Klonoski.I have no idea if either of them was there, but the leader screaming at me sure looked like the one picture I have seen of Zackary Klonoski.

   A Portland Police care was less than a block away and could see the whole thing and did NOTHING.

Again, I have a complete trail of emails proving everything I say. On January 18, 2017, I received an email from Drew Johnson:
Hi Mike,

   **Your team of lawyers were talking and we believe it is time to collect your evidence and get it cataloged and ready for the next stages of litigation in your cases. You've told us that you've got a bit of a library in a room at your house. We thought I could come out in my truck with some empty boxes and pick up what you've got and bring it to our office so we can start to get our hands around it. Sound good?**
   **What would be a good time for me to come to your house to pick up your evidence and move it to our office? Could do it this weekend or next week, but not before. Let me know what works for you.**
       **Thanks.**
       **Drew**

I answered:
Oh...the electronic records are chaotic and on three computers. Messy, but I use Tine Machine and back them up at least once a week.

Mike

**EXHIBIT 2**
**Page 3 of 6**

**Marianne Dugan, who was working for the qui tam lawyers answered:**

**I have three notebooks and now all three have been scanned.**
**Mike, it is not obvious from quick review what the three books you brought me contain. Are they organized in any particular manner?**

    In order to comply with the gag order, I turned over all PHI to Leiman and Johnson. I turned over everything I had. They wanted to copy it. Also, they were fearful of Oregon raiding my home and taking what I did have and storing it in that law office was both for safe keeping and to deny **you** and Oregon knowledge of what I did have
    Later, on will see an email to Marianne Dugan where I had to go to Leiman and Johnson's Law Offices just to pick up my own notebook, telephone records, and a memory stick she wanted. I had to leave my computer/ I had an old MacBook Pro and a MacBook Air with nothing on them except drafts of motions I was filing with the ARB and you.
    I have those computers, still, although one was badly damaged when I passed out and crushed it on November 18, 2019. That was and multiple times in November 2020. I will trade you the Air, which would still have deleted but recoverable files on it in exchange Centene's stepping up and providing medical care for the injuries THEY AND AGATE CAUSED and a promise to cease intervention in future case. The collapsed lung makes exercise impossible and I end up gasping for air just from doing water walking and physical therapy.

I gave all of my records to Leiman and Johnson. The only time I saw records after January20, 2017, was when I went to Leiman and Johnson and got evidence that I gave to Marianne Dugan.

    **I don't want to disturb your call. I met with Marianne and need to get some papers, especially the wrongful termination notebook and the Verizon call record notebook. We have a filing due in 12 days and I need that information. Marianne said I can scan that at her office, so you will have them scanned, if that hasn't already been done.**
    **I'm outside your building, waiting in my car. Let me know when I can pick these up.**
**Thank you**
**Mike Brooks**

I recall very clearly what Dugan wanted and that was not PHI. I was Verizon phone records and a notebook of emails from Agate to me.

Fast foreward to September 9, 2017, when I first discovered that Dugan was sending you rcords without my or the other lawyers permission of knowledge:

**Hi Marianne - As you know we have a quantity of client documents on the conference table at Leiman & Johnson. To the best of my knowledge, they have not been scanned. I am going to be around tomorrow and Monday but gone the rest of the week. Drew I believe is gone until the end of the week. I can box these documents up and deliver them somewhere. I have made that offer to Mike and I am copying him on this email. Mike - I am willing to have these delivered to Coburg on Monday if that's what has to happen. Just so L&J is not impeding the production of documents in your pending case. Please let me know what is required. Thanks. Regards. Alan [9/9/2017 7:23 PM]**

I responded
    **I tried to telephone you at your office and emailed you, but you evidently did not get**

EXHIBIT 2
Page 4 of 6

that. My intent is to come by your office on Monday, likely around 1:00, and pick those up. Because of hours spent sitting, trying to do these Production requests, both feet are badly swollen. If the get too swollen, it's akin to over inflating a tire. It does soft tissue damage that can take weeks or months to heal and THAT lands me in a wheelchair for weeks or months. I will be wearing booth foot braces and and can safely carry one load, too.

     So, I will call you and try to park as close to the front door as possible, perhaps double park. If you and Drew could help, we could put everything in the back of the RAV and I'd be on the road home.

     I need to be home at 2:40, when my grandchildren's bus arrives at the end of our cul-de-sac.
Mike Brooks
541-556-6130


     E.G. As of September 9, 2017, I did not have **ANY** PHI. I did not, in fact, have my own phone records, my emails and correspondence with the EEOC, BOLI, etc.
     On September 10, 2017, a Sunday, Marianne Dugan went to Leiman and Johnson's office. I know this because her phone geolocation has her texting Galloway from that office. Dugan took EVERYTHING that was in that office. I demanded my documents from her and was ignored. I asked for the intervention of the Court and you and you refused.

     In fact, on September 21, 2017, I received an email from Alan Leiman that Dugan has just dumped a box of document off at their office. None of my memory sticks was included and my MacBook Air was missing. You had everything or Dugan withheld records from you.
     They gave me attorney-Client emails that had been stolen:
I just started looking and found attorney client emails:
Arnold Law 10/13/2013
Arnold Law 10/03/02013
Arnold Law 11/22/2013 - re: preservation of evidence,
Alan Leiman 12/20/2016 to Reilley Keating
Kevin Dagforde to Alan Leiman 12/09/2016
Michael Vergamini 11/16/2014, re: BOLI suit refiling
Jesse London 4/28/2016 - email to the federal court
**ALL** of the attorney emails from Honeywell and Intermec, where I am an expert witness and all marked attorney--client
and, what the attached file:
Brooks220.pdf |9/21/17


Alan answered me:

**Mike - Attorney client privileged communications are communications between you and your attorney not between your attorney and third parties such as other attorneys. Since we are not representing you any longer it is not appropriate to continue conversing since I do not want to be perceived as giving you legal advice when you are not my client. Best for the future. Regards. Alan**

So, YOU had all of my emails and kept that from me and the Court for years.

**I am now finding emails from Charese Rohny and Linda Williams from Kafory Law, *ALL* of my correspondence with the federal investigators, every plan, note and and document I made while planning these suits pro se.**
Marianne really screwed up. Virtually all of your research, along with notes you made on case files from other cases in in here, too.
Mike [9/21/17 2:37 PM]

EXHIBIT 2
Page 5 of 6

And, again from Alan:

**Mike - Maybe those are not what she produced - Maybe those are just copies of everything she copied. I don't know. You will have to ask her. We returned the memory stick to you because you are the former client and this is your data. Before reaching conclusions please reach out again to Ms. Dugan. I cannot represent that the last memory stick we gave you earlier this afternoon contains what was produced to Stoel Rives. If that is what was produced I am not in any position to provide an opinion as to the appropriateness of the production. Regards. Alan**


**You know the rest. I got toe three memory sticks from you and I returned them. I am told I should not have returned them but what is done is done. Those were the only and sole piece of PHI I had that were covered by the Protective Order. I do not trust you and I do not trust the Oregon District Court. I will love to have this transferred to the DC District Court and will find an attorney and sue Centene for if you press this. I do not have documents or records and you fill well know it. I am not in the habit of lying, YOU ARE and CENTENE IS. I am a boy scout and will die a "Boy Scout". You stole my health and money. You defamed me. I did NOTHING wrong and you full well know that.**

**Mike Brooks**

EXHIBIT 2
Page 6 of 6