FILED 23 AUG '21 10:32 USDC-ORE

August 20, 2021

Michael T. Brooks
mibrooks@mac.com
32713 Vintage Way
Coburg, Oregon 97408
Telephone: 541-556-6130
Pro Se

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

**MICHAEL T. BROOKS**                    Civil No. 6:14-cv-01424-MC
    **Plaintiff**
        **v**

**AGATE RESOURCES INC., Doing Business
as Trillium Community Health Plan, Inc., et al
    Defendant**

# Answer
### and
# Counter Motion To Find Defendant Guilty of Retaliation For Reporting Non-Compliance With The HIPAA Breach Notification Statutes

The Relator referred to in this retaliatory action is Mike Brooks, a disabled whistleblower. Brooks has no idea if he is the plaintiff or defendant in this long closed action. Brooks was not part of 6:14-cv-01424, except figurehead "relator". He was not permitted to participate in it. The District Court hired a Pro Bono attorney and he hired a law firm and together they hired Marianne Dugan. Ms. Dugan deliberately sabotaged Brooks' case by stealing his evidence, documents, work product, case strategy documents, from a locked room at Leiman and Johnson Law Offices and gave them to Stoel Rives.

That evidence consisted of three banker boxes of paper documents, roughly 20 3-ring binders (mainly 2" and 3' versions) of court an administrative agency filings, rough drafts of those filings, communications with the agencies, and paperwork like OSHA Fact Sheets. There were more than 40 memory sticks (thumb drives) and an unknown number of DVD's. There were an unknown number of CD's, and, at times, a MacBook Air computer.

The theft took place on Sunday, September 10, 2017. All of Brooks' records were transported and stored there on January 18 and 19, 2017:

> **Your team of lawyers were talking and we believe it is time to collect your evidence and get it cataloged and ready for the next stages of litigation in your cases. You've told us that you've got a bit of a library in a room at your house. We thought I could come out in my truck with some empty boxes and pick up what you've got and bring it to our office so we can start to get our hands around it. Sound good?**
>
> **What would be a good time for me to come to your house to pick up your evidence and move it to our office? Could do it this weekend or next week, but not before. Let me know what works for you. [email from Drew, 1/18/2017]**

In support of the assertion that all documents were taken and stored:

> **I don't want to disturb your call. I met with Marianne and need to get some papers, especially the wrongful termination notebook and the Verizon call record notebook. We have a filing due in 12 days and I need that information. Marianne said I can scan that at her office, so you will have them scanned, if that hasn't already been done.**
>
> **I'm outside your building, waiting in my car. Let me know when I can pick these up. Mike [email to Alan Leiman 3/8/2017]**

Then, fast forward to September 9, 2017:

> **As you know we have a quantity of client documents on the conference table at Leiman & Johnson. To the best of my knowledge, they have not been scanned. I am going to be around tomorrow and Monday but gone the rest of the week. Drew I believe is gone until the end of the week. I can box these documents up and deliver them somewhere. I have made that offer to Mike and I am copying him on this email. Mike - I am willing to have these delivered to Coburg on Monday if that's what has to happen. Regards. Alan [9/9/2017 7:23 PM]**

Brooks responded:

> **I tried to telephone you at your office and emailed you, but you evidently did not get that. My intent is to come by your office on Monday, likely around 1:00, and pick those up. Because of hours spent sitting, trying to do these Production requests, both feet are badly swollen. If the foot gets too swollen, it's akin to over inflating a tire. It does soft tissue damage that can take weeks or months to heal and THAT lands me in a wheelchair for weeks or months. I will be wearing booth foot braces and can safely carry one load, too.**

**So, I will call you and try to park as close to the front door as possible,
perhaps double park. If you and Drew could help, we could put everything in the
back of the RAV and I'd be on the road home.**

**I need to be home at 2:40, when my grandchildren's bus arrives at the end of
our cul-de-sac. Mike**

On Sunday, September 10, 2017, while Brooks was out of town, Dugan entered Leiman and

Johnson's offices and took all of the documents stored there. She claims to have sent those to

Stoel Rives, but Stoel Rives claims to have not received hard copies of documents and none of

the original documents, thumb drive or computer.

Brooks was told by two different sources, however, that Stoel Rives drove down to

Eugene and picked up three banks boxes of documents, the thumb drives, DVDs, CDs, and

notebooks from Dugan on the evening of September 10.

Brooks had fired Dugan on September 7, 2017, and communicated that to Alan Leiman.

The Magistrate Judge, who Brooks did not consent to and wrote timely objections about, and

was forced upon him..that judge denied Brooks right to terminate actively harmful counsel and

post dated that firing to September 13.

The Court knew that Stoel Rives and Dugan entered into an agreement to postpone

discovery until October 31, 2017. Stoel Rives knew that Dugan was in Standing Rock, North

Dakota, working as the senior counsel for some outfit calling itself the Civil Liberties Legal

Defense Center by early May 2017.

The Court somehow permitted Stoel Rives to abrogate the agreement to postpone

discovery and file an RFP and other documents while Dugan was out of state and out of

communication, while Stoel Rives engaged in a Kabuki Dance of phone calls (to a number with

a message telling caller she was out of the office until August!), overnight mails (that were

returned because there was no one to sign for them….and thereafter Stoel Rives sent them with

no signature required).

While all of this theater was going on, Stoel Rives could have called Dugan's co-counsel,

London, Leiman, or Johnson, or even Brooks, but they did not. So for three and a half months,

Stoel Rives supposedly was filing motions and pretending to communicate with Dugan.

Dugan arrived back in Eugene on August 8, while Brooks was meeting with federal

investigators in Seattle, and sent Brooks copies of Stoel Rives filings in the form of broken and

unreadable PDF's. Then, she dropped out of site and would not answer phone calls or emails.

Brooks was driven home, late, on August 10 and was able to repair and open one PDF

and emailed Dugan about it. No answer. Over the next few days, Brooks extracted the words

from the documents and read them. He called Dugan, emailed her, went to her office. No answer, no one there, crickets.

Brooks had never even seen an RFP and did not have the slightest idea of what to do with one. There was no one to help Brooks. London-Leiman-Johnson suddenly developed an allergy to Brooks and were "indisposed". Look at that September 9 email below! They knew they were in trouble by hiring Dugan in the first place and were likely fearful of lawsuits, sanctions, Oregon Bar rebuke.

Brooks was refused his right to file anything with the Court because "you are represented by counsel". On August 25, Brooks caught Dugan in her office and gave her a "hybrid motion" to file with the court requesting accommodations for his injuries. That contained medical records, under seal, as exhibits. Dugan did not fie the request ad, instead, took Brooks' medical records and sent them to Stoel Rives.

No federal court has ever resolved the question of their being bound by the ADA, ADAAA and Rehabilitation Act. They ignore Brooks' filings. Brooks went to far as to file a suit which the court has ignored. So did the Supreme Court. How is a paralyzed, penniless, former employee with injuries supposed to even participate in Court?

ON August 31 the Court sanctioned Dugan and fined here roughly $1,500 with more to come if she did not do as Stoel Rives said. Dugan, then apparently joined the Stoel Rives team and sent Respondent's everything she had, including attorney client emails, work product, Brooks' Pro Se work product (stolen) , medical and tax records, Verizon phone records from 2006 until present with notes on everyone Brooks had spoken. None of these have ever been seen again.

After all of this, in July 2018, Brooks found an email from Galloway to Dugan from August 23, 2017, that showing Respondents having had Ex Parte assistance from the Court - the were told the contents of the District Court Order for August 31, 2017., nine days before it was made. This was before Dugan had even replied to Respondent's Motion to Compel filed on August 15, 2017. Interestingly, there is no LR 7-1 statement, which the Court uses to dismiss Petitioner motions Motions, like three RFP's filed in 2014 and 2015. Stoel Rives simply ignored an RFP filed by Arnold law in October 2013. The District Court permits Stoel Rives to operate lawlessly and with impunity.

Brooks was missing documents and contacted Leiman about getting them from him. On March 21, 2017, Brooks was emailed to come to their Eugene office. Brooks was given a

memory stick by Alan Leiman that contained backup copies of attorney client emails and work product. There was no PHI or any document from Agate on that memory stick

> **I just started looking and found attorney client emails:**
> **Arnold Law 10/13/2013**
> **Arnold Law 10/03/02013**
> **Arnold Law 11/22/2013 - re: preservation of evidence,**
> **Alan Leiman 12/20/2016 to Reilley Keating**
> **Kevin Dagforde to Alan Leiman 12/09/2016**
> **Michael Vergamini 11/16/2014, re: BOLI suit refiling**
> **Jesse London 4/28/2016 - email to the federal court**
> **\*\*ALL\*\* of the attorney emails from Honeywell and Intermec, where I am an expert witness and all marked attorney—client. And the attached file:**
> **Brooks220.pdf      [email from Brooks to Leiman, 9/21/17]**

Alan Leiman answered:

> **Mike - Attorney client privileged communications are communications between you and your attorney not between your attorney and third parties such as other attorneys.  Since we are not representing you any longer it is not appropriate to continue conversing since I do not want to be perceived as giving you legal advice when you are not my client.  Best for the future.  Regards.  Alan**

Really? Why would anyone want to tell any attorney anything?

> **I am now finding emails from Charese Rohny and Linda Williams from Kafory Law, \*ALL\* of my correspondence with the federal investigators, every plan, note and document I made while planning these suits pro se.**
> **Marianne really screwed up. Virtually all of your research, along with notes you made on case files from other cases in in here, too. Mike [9/21/17 2:37 PM]**

And, again from Alan:

> **Mike - Maybe those are not what she produced - Maybe those are just copies of everything she copied.  I don't know.  You will have to ask her.  We returned the memory stick to you because you are the former client and this is your data.  Before reaching conclusions please reach out again to Ms. Dugan.  I cannot represent that the last memory stick we gave you earlier this afternoon contains what was produced to Stoel Rives.  If that is what was produced I am not in any position to provide an opinion as to the appropriateness of the production.  Regards.  Alan**

Marianne Dugan was THEIR hire, their attorney that they assigned. I had nothing to do with that travesty. From a length September 9, 2017 email:

> *How in the heck did you people come up with her? She has been uncommunicative from the beginning and, apparently, everything I wrote ended up in*

*an email file, unread. I have all of those emails, too. I didn't pester her. I simply didn't hear from her for months on end, with flurries of emails every once and a while.*

*She [Dugan] blew this case up and wants to drop it and trade off the SOX, ACA, this case, and the Qui Tam case, so she won't have to pay for attorney fees. I don't know what she is up to, but you had better find out. Her meeting for yesterday was moved to today and, then, moved again. She was the one that wanted the attorney emails and I wrote you all about that to give you a heads up.*

That should deal with any idea that Brooks had or has some secret stash of documents that Stoel Rives or Agate or Centene has any claim on. I f you want those documents, look to London, Leiman, Johnson, Dugan, Stoel Rives, Oregon, and especially a US Attorney, Jeffrey Wertkin , who was arrested peddling Brooks records and served 30 months in a federal prison for it. Wertkin got those from the Oregon US Attorney Brooks sent those records to on September 10, 2014.  He was forced to resign by the OIG over that.

The Court can verify Wertkin, but Brooks suspects the Court has known about that all along and that is the primary reason Brooks was not allowed to to participate in the False Claims Act case, why the Court appointed London and allowed him to hire those other attorneys, why the Court and they assigned Dugan to his wrongful termination case, why the Court assisted Stoel Rives on August 22, and why those Magistrate Judges was simply imposed without regard to Rule 73, and why Brooks was denied his right to discovery, his appeals were unlawfully blocked., and why this case was dismissed.

You have a worker injured on the job, fired less than a week after MRI Results showed the need for surgery. You have a company caught red handed hacking into that workers email and cloud accounts and taking and destroying whistleblower records. You have Stoel Rives instllating their investigator in BOLI, pretending to be Brooks' special intake clerk.

That investigator got records and inside information, interrogating Brooks for Stoel Rives. A real BOLI attorney, Jeremy Wolff, did not see any records or notes by her, and knew of her as the unpaid  Special Aide To The Oregon Labor Commissioner.

Wolff was fired for inquiring about that and requesting subpoenas and statements from Brooks; former co-workers. Thus, you have Stoel Rives representing the state and connected politically engaged in federal felonies and violations of their federal EEOC and Department of Labor contracts. Stoel Rives lied in Court about Respondent's being the Benefits Administrator that was denying Brooks access to critical medical care that caused his heart problems, paralysis and multiple sclerosis. The Judge knew all of this and did nothing. SOX Section 1107…

Agate was the Benefits Administrator for public employees, school teachers and Medicare patients. They accessed Brooks' records and knowingly withheld medical care because they knew it would cause physical harm to Brooks. Respondent's used medical care as a weapon to retaliate. They caused the collapse of the right lung by denying medication, CT scans and possible surgery. They caused  the loss of vision in the right eye by withhold eye surgery. They caused the permanent foot injury by blocking critical surgical care. They caused Brooks multiple sclerosis and paralysis. All of those were treatable, were preventable, and this criminal enterprise and their counsel did "knowingly, with the intent to retaliate, takes any action harmful to Brooks" for whistleblowing. SOX 1107...

The denial of an MRI and treatment for injuries to the upper spine and brain stem caused multiple sclerosis, Brooks would not have this if doctor authorizations had been granted:

> ... the sheath covering nerve fibers in the brain and spinal cord becomes damaged, slowing or blocking electrical signals from reaching the eyes, muscles and other parts of the body. This sheath is called myelin...Although several treatments and medications alleviate the symptoms of MS, there is no cure.

Again, these are criminal assaults done in retaliation for whistleblowing. The current action by SToel Rives, making untrue and hysterical accusations and demanding Unconstitutional "remedies" by this Court is also retaliation.

Centene's Chief Medical Officer, Dr. Thomas Wuest, former President of Agate, former President of Trillium, business partner of Terry Coplin, multi-millionaire stock holder who Brooks discovered committing claims fraud with Terry Coplin, a doctor who built a medical business empire with the proceeds from medical fraud, that Dr. Wuest was the person denying Brooks' doctors requests for services by MODA and, then by Kaiser Permanente (where he and Trillium were caught and Trillium was fired..but only after he wrecked Brooks health).

Add to that MODA's Compliance Officer, David Nessler-Cass giving Reilly Keating copies of Brooks' appeals to MODA for services. Those are HIPAA record violations committed by Stoel Rives; a $55,000 fine and criminal charges were mandatory and this Oregon District Court did nothing.

Because of this Court Brooks' involuntary swallow reflex was destroyed making it impossible for him to sleep in a bed, laying down because he will drown on his own saliva; they are responsible for the heart arrhythmia, the heart attacks, the torn valve, the passing out, hemorrhaging, the 7.5 hour long heart surgery, the spinal surgery, and monthly drug costs that mean the difference between mailing Court documents, paying for gasoline or eating and dying from a stroke. YOU are responsible.

Stoel Rives even hid correspondence and agreements between Dugan and themselves. Brooks had no idea of what his appointed counsel had been up to until just before this case was dismissed for Brooks' refusing to accept another corrupt state crony as a Magistrate Judge appointed to his case.

Brooks is also comfortable in believing that the weird secretive "news producer" asking questions about evidence they just happened to have gotten from "someone" was a Stoel Rives setup. To begin with, when has lack of verification stopped CBS or any other news outfit from printing anything. They invent stuff, including evidence. Having what is clearly real evidence would have any present day news outfit printing it day in and out and, depending on their political slant, blaming it on Trump or Biden.

*Why do you think I sent it to the Supreme Court. I do not trust Stoel Rives or the District Court. Judge Aiken had two sons that led a protests against some white ranchers that were protesting grazing and water rights on MY LAND. As Stoel Rives and Oregon both know, I am Native American, Shoshone-Blackfoot. Oregon and the US government stole our land in 1879 when they ignored the Malheur Indian Reservation Treaty and attacked us unannounced. That sparked the Shoshone-Bannock war, which of course we lost, and whites divided or land up as homesteads, mining and timber and railway claims, and a "national grassland" without ever actually terminating that treaty. So the land is still ours.*

*It was evidently Judge Aiken's two sons organized the Hammond-Bundy protests in Portland. A mob of them attacked me and beat me up on March 7, 2016, in downtown Portland, two blocks south of the City Center Marriott where I had driven to pick up a hat for my wife's upcoming birthday. They blocked my car and pried open the tailgate and four or so of them crawled screeching like maniacs over the seats and kicked me out of the RAV4 onto the pavement. They spit on me, kicked, slapped and punching me, and threatening to cave my head in with that crowbar. White racist scum. THAT was in newspapers because I was in a wheelchair when Portland's left wing social justice warriors took it upon themselves to attack an old Indian man for having a Trump bumper sticker. That was the start of Antifa. The story made in into several newspapers, mostly European. It made the front page of RT. I still have the photograph of the tailgate with the crowbar pry marks. I honestly did not know who those kids were.*

*I suspect that Judge Aiken knew this, too. She does now and I want an apology. There aren't any coincidences in this case. Nothing is an accident. Dugan clearly knew because she heard the whole thing from Drew Johnson. (I do not like Trump, BTW, I just loathe the Clintons. I voted against Hillary.)*

Those records that magically appearing seemed sketchy and Brooks wrote that to Reilley Keating about that, which she attached as Brooks' to her declaration. So nothing is a surprise to this counsel. They are playing games and using this as another pretext to retaliate...probably because Kaiser cut their contract with them over their cancelling and altering Brooks' prescriptions, his primary care doctor, scheduling spurious and costly laboratory tests, and denying actual necessary services..

Brooks was not about to offer his head on a chopping block, so he sent those records with an explanation to the US Supreme Court. It needs mentioning that the records were weird pieces of records, printouts, from electronic records stored at Leiman and Johnson that Brooks knew of. Except for one record that Brooks has never seen before.

So, you had:

- 235 positive HIV lab reports. These not only include the name and address of the patients, those records contained <u>Social Security or Student Visa numbers for each patient</u>. Brooks sent that record to this court in the past.
- marriage counseling records that were sold to employers
- two different homesick foreign students who wet the bed and two more records of a 16/17 year old <u>high school</u> exchange student hospital visit for alcohol poisoning
- High school exchange and college women who had abortions while in the US. These were from a western country, mixed with three or four records from women from SE Asia. Brooks has no memory of ever seeing this record. Also, <u>this is NOT how Agate organized these records</u> and Agate's collections targeted woman from Middle Eastern, North African countries and Islamic families. Those always contained family background information, too, and that is missing
- Just the pharmacy claims and diagnostic information for involuntarily committed patients at the Oregon State (Psychiatric) Hospital and from various county psychiatric units around the state. These were part of a zipped records set from OHA that Agate received in 2010. Brooks recalls these clearly. SO, why just the prescription drug records?
- a few actual family claims for Monaco Coach Corporation employees that resulted in layoffs. These included the layoff dates that I looked up and cross references from Agate's insuring them under its EHA plan. So I know these are from the report I gave to the Oregon AG on May 8, 2007 ; June 28, 2007; and July 10, 2014. There were more than 13,000 records in these sets and this sample was ten pages and roughly 500 records total.

- A random selection of records from Lane Home Medical (LHM) showing Stark Law violations and 200% plus overcharges on contracted amounts for a drug administered to premature infants breathing problems due to undeveloped lungs (C9003). Agate had claims with this prescribed by optometrists and given to 18 year olds. The maximum amount allowed for this by CMS was $588, too, but Agate was charging $1500 to $4000 for it. I clearly recall $12 million plus in recoverable overcharges. Agate's mail order pharmacies were far worse than Lane Home Medical, which is why I suspected a setup; but LHM operated across state boundaries (Louisiana, California, Texas, Virginia, Maine, Ohio, New York and is still in operation in Louisiana and Virginia, just as Employers Health Alliance is still operating in Arizona.

This was a really simple case. Injured worker; no treatment for on the job injuries with witnesses; Agate shown altering and destroying records — Order medical care. Whistleblower fired after wiretapping. Proven because Agate was so dumb they did it from Agate and Microsoft had their IP addresses, geolocations and can even identify the computer used to hack into Brooks' emails and cloud. It was Korjenek! Order payment of back salary and payment of salary going forward to age 72. Award damages for real pain and suffering and defamation.

Understand something, Brooks will be dead. You have all likely killed him. He has, at best, three years left to live and his legacy is going to be this case on steroids. I mean to see this story known around the world. Brooks is telling the truth and Centene is an evil corporation that need to be put out of business.

Stoel Rives is asking you to kill Brooks. Put him in jail and he drown and choke to death. Fine him and he is so close to the line he will be afford medication and that will mean a stroke within days assuming he does not drown first. Respondents know that. They can see Brooks medical records! This action is attempted homicide, in retaliation for whistleblowing.

Throughout this document Brooks refers to Agate. Stoel Rives insists he was employed by Agate because Trillium did not have any employees, they were all Agate employees. Today, however, Agate Resources is an empty shell owned by Centene with no employees or assets and Trillium's workers and administrators are all Centene employees. That, however, can change as easily as you change a shirt. In just the last two years, Agate Resources has been a private company located in Bend, a Centene shell standing between Centene and Trillium, an arm of CareCore and Centene's competitor Cigna and back again, Agate isn't a chameleon, its a classic fraudulent conveyance. So is Trillium and all of those other weird slightly different versions of

Trillium and the more than 900 "subsidiaries (empty shells) operated by Centene. They are all fraudulent conveniences used to perpetuate both constructive and actual fraud. You cannot even believed claims that Ribera Salud is a half owned subsidiary of Centene because Centene has two shell that own both halves. It is 100% Centene's subject of fraud investigations across Europe.

And Cetene learned this from Agate. When Agate refers to LIPA being a wholly owned subsidiary are they referring to LIPA1 or LIPA2" As Brooks wrote for investigators on October 29, 2015:

> *LIPA is actually two organizations, Lane Individual Practice Association and Lane*
> *Independent Physicians Association. For the sake of convenience, I will called the*
> *"Individual" one LIPA1 and the "Independent" one LIPA2 (there are more). All were*
> *started by Terry Coplin. LIPA1 has 212 shareholders that 40% or 60% of Trillium*
> *Community Health Plan. LIPA1 issued two types of stock, "A" - physician's only and "B'*
> *executive/reward/bribery-money laundered shares. LIPA2 is a fraudulent DME vendor*
> *I bring this up because I don't think xxxx ever "got" the distinction. Similarly, there are*
> *other "shells", Lane Home Medical, LOHP Pharmacare, EHA Pharmacare, and that new*
> *mail order pharmacy business. This is captured by these queries:.....*

I am not certain if even Centene or Stoel Rives knows or understands the labyrinth of shells Coplin, Cole, Wuest, Cytrynbaum, and Finkelstein (Cole's brother in-law) created. There are two to five or more companies operating under the same acronym. When you are looking at Trillium, for example, cannot know which entity you are dealing with. Coplin was engaged in both actual and constructive fraud. "Agate Healthcare" was seemingly established purely and 100% to facilitate constructive fraud.

Before we get into the interesting stuff, we need to dispose of the false accusations. Agate claims Brooks somehow broke HIPAA with quotes they take out of context. First, they cannot dictate what I can and cannot writ in a Writ of Certiorari to the US Supreme Court. They raised a stink about 20-8177 and the Court allowed them to redact two sentences.

I wrote a reply to that, as they full well know, and a Court Clerk "accidentally" returned it. I filed an appeal to 20M82 and that same Clerk refused to accept it under Rule 44. So, I filed it with individual justices.

In rebutting defense counsel very much like Stoel Rive's objections, the Secretary of HHS answered:

> *HIPAA is not concerned with every piece of information found in the records of a*
> *covered entity or a patient's chart. But rather, with "individually identifiable health*

information," or PHI.  45 C.F.R. § 160.103. **_PHI must be able to identify an individual_**. Read, also, 45 CFR 164.512(f)(3) There is a specific carve out for specific information both to identify and inform victims.

What Stoel Rives is claiming as new in their quotes, Brooks submitted over a year ago. It was simply left because Supreme Court Rules prohibit changes beyond the minimum necessary for re-submittal. Stoel Rives knows that. Furthermore, they take those quotes out of context:

> **Motion for Order to Show Cause Why Relator Should Not Be _Adjudged in Civil Contempt_... Mr. Brooks' petition for writ of certiorari in Supreme Court Case No. 20-8413 contained some of the same medical information about two of the students that he had previously included in his petition in Supreme Court Case No. 20-8177 and also added new information. <u>One student was described again by nationality, family of origin, gender, and the reproductive health services that the student obtained. Another student was described again by nationality, gender, student status, medical condition and, for the first time,</u> Mr. Brooks disclosed a specific form of treatment that this student received.**
> [Michelle Lee, Respondent Attorney in Motion To Oregon District Court Judge Ann Aiken? Judge Michael McShayne? 8/12/2021]

The quotes referred to in that over the top screed are: (And I am leaving out the words they object to so they do not have any excuse to create another rabbit trail.)

> **... "degradation" and "humiliation" fits the sale of a Russian freshman student's records of seeking counseling for \*\*\*\* or a Saudi Princesses getting \*\*\*\*. Exhibit 2 is an objection by Agate Resource's counsel and the Oregon District Court to hide this from the US Congress, the US State Department, the consular offices of the governments of these students, and this US Supreme Court. [Example provided where Agate and Oregon violate the Fourth Geneva Convention, Section 3 - "outrages upon the personal dignity, [and] in particular were humiliating and degrading".] [read 45 CFR 164.512, especially (f)(3); identifying the specific breach is <u>required</u>]**

Likewise, they object to:

> **"Bad press",  revelations that they sold foreign (Russia) college student records, is the reason for the Oregon District Court and three Stoel Rives attorney's trying to get this Court to declare that merely reporting Centene's wholly owned subsidiary, Agate Resources, sold a Russian student's counseling records for \*\*\*\* is somehow a HIPAA violation.**
>
> **HIPAA  pertains to information permitting the identification of an individual. Brooks reported one example of the kind of record Centene sold for 5,197 Russian students over a 15 year period. There were, in fact, more than one Russian student that sought counseling or medical help for \*\*\*\*. There was more**

**than one Saudi female student that obtained \*\*\*\*. There was more than one UK student that had a positive \*\*\*\* test result and there was more than one Scandinavian female student who was treated for \*\*\*\*.** [page 17, Brooks: Writ of Certiorari for 20-8343]

This is harassment and retaliation. In Darveau v. Detecon, Inc., the Fourth Circuit held that the kind of groundless threats made by Stoel Rives in the Motions are retaliatory(i) lacks "reasonable basis in fact or law" and (ii) was filed with "retaliatory motive." 515 F.3d at 341. Brooks asserts that is the case and asked for sanctions and an order to cease and desist. Keating's wild calls for this Court to overrule the Supreme Court, the Appeals Courts, the US Congress and Administrative agencies established by Congress is so manifestly at intimidation that the retaliative motive is self evident. Add in the physical retaliation and you have a criminal complaint against Stoel Rives.

**NOTHING** in what Brooks wrote would identify an individual and nothing Brooks has written identifies an individual. It describes crimes by Agate. Agate's counsel are running a fog machine, hide the facts and blame the whistleblower for simply reporting crimes committed by their clients. Which brings up a problem, Centene is paying the bill, is guilty of crimes, why aren't they listed as a defendant.

Stoel Rives is guilty of violating that Protective Order and stewing records around and seeks to blame Brooks. Brooks started keeping records in 2006 when that nurse came to his cubicle and asked for those three reports on Monaco employees. Brooks kept those records secure and secret from 2006 through 2014, when those US Attorney's were given them. In 2017, in compliance with the Court's Protective Order, Leiman, et al took charge of them and Stoel Rives backed Dugan into a corner and participated in the theft of those records.

Stoel Rives seems to think Brooks has additional records. Brooks does not knowingly have any records that ever belonged to Agate. He cannot swear that there is not some record in a subfolder somewhere or that some line from a record is note mentioned in a note. Likewise, Brooks learned that Courts treat attorney's like an extension of you. Well, my attorneys were not honorable. London came to me and asked me to take an $80,000 settlement from Stoel Rive. I told him that would not even cover my medical costs. London told me to have the surgery done at the Foot and Ankle Clinic and walk away from the bill. I am not white. I am Native American and we do not do lie and cheat like white people evidently do.

Brooks destroyed files and pieces of PHI used as examples in files. Whole files had to be destroyed because Brooks simply cold not do that fast enough to comply with the Court Order.

That saw thousands of hours of work upended. As this Court and Stoel Rives are aware, Brooks has limited ability to write or even sit up. That Order made an appeal of the Order to the Supreme Court impossible. Denial of due process. Brooks is disabled and requires time to write. The Courts are bound by the ADA. There is no exemption in the ADA, ADAAA, or Rehabilitation Act for the Article 3 Courts.

There are reportedly records in Europe. Brooks does not know if this is true or not. Brooks was encouraged to file with the UN Human Rights Commission and did so. He was told they could not take the case until he had exhausted all legal remedies in the US. He will pursue this case. Keating motion to supercede the Supreme Court, Congress and International law were submitted to the US Supreme Court last week. I truly doubt they will be pleased to see:

> *...Prohibiting Relator from publicly filing any Confidential Information in any federal or state court in the United States or filing it with or disclosing it to any foreign or international forum or tribunal or foreign government, and...*

The really troubling fact is that this is a political trial and it was from the beginning. It involved a deep pocketed, politically connected contractor, retaliation for Brooks providing evidence of wrong doing concerning Kitzhaber... Today this involves Centene and what Brooks knows about Centene and Washington politics. Brooks knows a lot about Centene...

Now, even a cursory reading of HIPAA Breach Reporting requirements in 45 CFR 164.400 - 414, or a look at the examples HIPAA publishes of individual and public notifications, shows that what Petitioner wrote and Stoel Rives objected to is required. It is not a HIPAA violation. It is a requirement to meet minimum standards. Counsel is asking for a legal coverup.

Again, there was no PHI breach in this sentences Brooks wrote. They are the minimally required description of targeted patients and criminal committed broken by Agate.

The requirements are really simple. Within 60 days of receiving those records the covered entity is required to comply with the individual and public notification. The District Court, however, has held knowledge and records of this secret and sealed for eight years!

The individual requirement is spelled out in §164.404(c).

(a) Tell the patient of what happened and the date(s) of the breach "Executives of Agate Resources collected and sold medical, counseling and psychiatric, laboratory (including HIV, STD and genetic test results), medical imaging, and prescription drug records for employees, foreign exchange high school student, foreign college students, public employees, public school teachers, Medicare, Medicaid, ACA, SAIF and privately insured members and their families. In Oregon, Trillium Community Healthcare, an empty shell operated by Agate Resources, acted as the Benefits

Administrator for private insurers. They conducted these activities between 2000 and 2013, inclusive.

(b) A description of the types of unsecured protected health information that were involved in the breach (such as whether full name, social security number, date of birth, home address, account number, **diagnosis, disability code, or other types of information were involved**). This, in examples, is an ordinary language description of the medical records sold - HIV, STD, bedwetting, abortion, etc. This is the individual notification and the entity is required to detail the records sold for the individual being addressed. Merely saying that disability codes were sold does not meet the minimum requirements. A plain language description of the ICD 9 or 10 codes is required

(c) Any **steps individuals should take to protect themselves** from potential harm resulting from the breach (e.g. "your records were sold to US, and foreign information warehouses and cross referenced with personal information about your parents from your student records and may be used to blackmail you or your family ". "Your health information was sold to XXX Credit agency and you may be paying 3 to 5 points extra on your home or automobile loans". "Your information was sold to employer XXX when you applied for a job in 2012. That information may have been illegally used to discriminate against your being hired for that job". None of these examples  are fictional, either. All of these happened to victims.

Again, if a specific instance of these is known, and records Petitioner researched and stored at Leiman and Johnson had specific instances, including layoffs and pre-textual firing by employers, that information is required to be sent to the victim as part of the individual notification.

Respondents, as admitted to Petitioner in a Rule 26 conference by Ryan Gibson on August 12, 2015, destroyed records that were covered under two different spoliation letter. Trusting Respondent's with the sole copies of records is an invitation for them to destroy them.

(d) A brief description of **what the covered entity involved is doing to investigate the breach, to mitigate harm to individuals**, and to protect against any further breaches;

(e) Contact procedures for individuals to ask questions or learn additional information, which shall include a toll-free telephone number, an e-mail address, Web site, or postal address. [**§ 164.404(c) individual patient requirement**]

Under the **pubic notification requirement,** §164.406, if the breach involves 500 or more patients (10 or more under FTC statute and SEC rules) **requires** the covered entity (Oregon Health Plan) to send out press releases to the major newspapers and television stations in every city where victims reside that correspond with §164.404(a) and (c). There is a specific whistleblower carve out in the SEC regulations (21F) and §502(j) "protects disclosures of and retention of HIPAA-protected material both to a **whistleblower** attorney and to the government" So long as Brooks is in the US or international courts pursuing this case, the Oregon District

Court exceeds its jurisdiction by intervening. The Protective Order is an overreach of the Courts authority. Brooks is filing a complaint under 45 CFR §160.306.

Next, note that 45 CFR 164.512(f)(3) specifically details the requirement that the victim of a criminal breach be notified immediately! There is no reason nor safe harbor for the District Court to keep this secret for eight years.

For foreign victims, their government and, if the victim cannot be found, the family or closest relatives of the victim must be notified. This is both HIPAA, SEC, FTC, and treaty law.

There are treaties, signed by the US government and ratified by Congress governing the foreign student records. The Supreme Court decided in 1821, in 9 W. Hening, Statutes of Virginia 377-380,  that it will enforce treaties over state claims of sovereignty. The Disrtrict Court cannot ignore nor overturn those.

The treaties quoted by Brooks has Centene concerned about the UN Human Rights Treaties "Convention on the Prevention and Punishment of Crimes Against Internationally Protected Persons", the "Conventions on the Rights of Children". They also violate the Fourth Geneva Convention, Section 3 - "outrages upon the personal dignity, [and] in particular were humiliating and degrading". Oregon and Agate, and by merging with Agate and subjecting Brooks to retaliation is in violation of that treaty.

The UN Human Rights Treaties are interesting because the UN is hearing cases against the United States at present and are waiting to see the disposition of Brooks' case(s). The first "...Crimes Against Internationally Protected Persons" treaty is especially interesting because it concerns children of government officials and royalty. Some of the student records were for students of government leader and royalty. Agate was stupid and included student visa numbers mixed in the Social Security record sets they collected.

The UN Human Rights Commission is bound to not take cases under active consideration by "state" (meaning their country) courts unless they retaliate against a whistleblower. I regard Agate's counsel as retaliatory.


Brooks filed the False Claims Act case, 6:2014-cv-01424 on September 4, 2014. The reason for that filing was as a favor to an investigator from CMS who was having a hard time convincing his supervisors to take Brooks seriously because Brooks dd not have an attorney.

Brooks could not afford an attorney and does not trust nor like attorneys. When he was terminated by Agate, on the job injuries untreated and defamed for ostensively sexually harassing his supervisor, he hired the firm Arnold Law.

Brooks had no idea that lawyers took cases on a contingence basis and they asked for pre payment. So, Brooks sold his hunting rifles and target pistols, his photographic equipment, and took every dime he had in the bank and gave it to Arnold Law. He still has the emails and receipts for all of that and Stoel Rives has seen all of that. They called Brooks a liar and Brooks had to given them and the Department of Labor ALJ all of those records.

Again, Brooks suspects the present wildly hysterical accusations are motivated by retaliation and a fishing expedition. They were successful once with the Arnold Law records and they are repeating that. Brooks is asking that they be sanctioned and fined for that this time.

That supervisor Brooks was supposed to have sexually harassed was one Brooks had blown the whistle on for substituting and dispensing prescription drugs, was the author of Hot Spotter Report, did patient profiling tables. She was not a very nice person and she was someone who Brooks had filed a formal grievance against.

COO Patrice Korjenek removed Brooks from IT and placed Brooks under this woman in the Analytics Department for speaking out against Agate profiling patients and the Hot Spotter report that resulted in doctors dropping patients at a staff HIPAA training meeting on October 3, 2012. If her testimony is to be believed, and there is no such document anywhere, Korjenek had "written Brooks up a year before that" for "unwanted romantic acts and sexual harassment".

The obvious question is "Why would a Chief Operations Officer or any other executive put someone they believed to be enamored of a woman under them"? Brooks was working on a server to implement Impact Intelligence supposedly of primary use for Medical Management. Why not transfer him to Medical Management? They really liked him.

> *Mike is now the go-to guy should you need a report, from almost anywhere in the building. Among his customers are...diabetes measure, EQRO Audit, Medicare, claims management operations, claim denials, influenza, breast cancer and ost.[osteoposis] screening,....*
> *On the Ingenix project, he dedicated himself to understanding their methodology and was able to solve problems that they could not. Mike finished the initial building cubes in less than half the time the vendor quoted. Mike is now working with their engineers, as there are serious problems with their memory management software.*
> *[Performance Evaluation 4/7/2009]*
>
> *...created reports used to direct medical management and predictive modeling..*
> *[Performance Evaluation 4/14/2010]*
>
> *Dr Sattenspiel (Trillium's Chief Medical Officer) writes "With regards to Mike Brooks I would have difficulty characterizing his work with anything but superlatives. He has brought his extensive knowledge of database management to the Ingenix implementation*

*project and without his efforts we would not have been successful without spending significant dollars from Ingenix for technical support. As a member if the implementation team he has been a gem to work with, always in good spirits and enthusiastic about the tasks at hand. He is working hard, as well at understanding the Ingenix software from the clinical perspective to ensure that his data work is of the highest quality and clinical utility. Overall, his work for medical management has been consistently outstanding.*

In other words, Brooks was a well liked  expert at medical coding and knew clinical reporting needs and formats. Why on earth would Korjenek stick him with a woman he supposedly enamored with?

Brooks says "Agate" but it was "Trillium" a wholly owned shell of Agate that ostensibly had the contract with Oregon. Trillium had no employees, though. They were all Agate employees.

In fact, in Oregon Department of Consumer and Business Service, Division of Financial Regulation", in case INS 15-12-003, "Order to Cease and Desist, Order Assessing Civil Penalty", Agate was fined for passing itself off as an insurer. As the state wrote, and Agate admitted guilt in this case:

**Agate has never been issued a certificate of authority evidencing the authority to transact insurance in Oregon.**

This is interesting because Agate operated as a foreign insurer in 33 states under the pretext that it was an Oregon licensed insurer. Agate acted illegally as an unlicensed third party administrator. Agate illegally operated IPS as medical credentialing contractor for the Oregon Health Authority. Agate illegally operated insurance companies across state lines: Employers Health Alliance, EHA, SelectCare, and a dozen other insurance companies. There are so many felonies by this company that it is ridiculous that we are here.

And, least you think Trillium somehow saved Agate, think again. Trillium was a Business Associate of the Covered Entity, Oregon Health Plan. Trillium was never legally permitted to be anything more than a medical claims processor, on a very limited and restricted basis, and to act as the Benefits Administrator (aka Benefits Manager) for Oregon public employees, public school teachers, Medicaid, some Medicare, and CHIP patients.

That placed OHP, existing under the public corporation, the Oregon Insurance Exchange, in violation of 45 CFR 164.504(e)(1) sending to and permitting Trillium to sell records it was not even permitted to see.

As a Business Associate Trillium is not permitted to retain records, either. 45 CFR 164.502(e), §504(f)(2)(ii)(J) Trillium was required to be separate from Agate and not share records with Agate. Given the corporate structure they claim in Oregon Department of Consumer and Business Services Case No. 15-44-022:

**Agate provides administrative services and leases employees and buildings for Trillium and LIPA…both are wholly owned subsidiaries of Agate Resources.**

As any Agate employees can testify, there was no difference between employees who were leased to Trillium and employees of other identically organized shells like Health Policy Resources Northwest who sold records, also. The exact same circumstances applies to Centene. Only it gets worse because Agate's Oregon records, in violation of §504 (2)(ii)(J) Cetene not only failed to destroy records as required, they transported them across state lines to Saint Louis, Missouri.

Oregon has no sovereign immunity claim. They are the Covered Entity. Add in BOLI allowing Stoel Rives to install an investigator inside of BOLI that collected information from Brooks, passing herself off as an intake clerk and interrogating Brooks about his whistleblowing, what he knew, even accepting records for BOLI None of that ever got to BOLI. BOLI attorney Jeremy Wolff never heard of that woman. Add to that the forged complaint and missing one Mr. Wolff reads to Brooks over the phone, the new one he has Brooks sign and notarizes at BOLI headquarters on March 6, 2014. This is a political case and Oregon is in it up to its eyeballs.

As of October 3, 2012, Agate had 23,000 patients without primary care doctors and Brooks revealed that to co-workers in an October 3, 2012, class on HIPAA compliance. The consequence of those patients lacking primary care providers was not merely being stuck in urgent care centers and seeing strangers, there was no prescriptions for pain or anxiety medications, no one to monitor hypertension, uric acid, potassium, or other critical blood chemistry levels, monitor breast, prostrate, and colon cancer tests and examinations, no one to write referrals or request authorizations for services. It was not merely Trillium being out of compliance with their contract, they were engaged in medical malpractice while pracricing medicine without a license.

Profiling was even worse. Agate was paid a flat rate for taking patients and targeted the poor and helpless for denial of care in order to save money. White Medicaid patients at Agate were granted medical referrals 65% of the time. White foster children, however, were only granted referrals for specialist treatment or testing 26% of the time. These children were denied x-rays for likely broken arms and feet, wound care, even vaccinations. Black foster children,

received approval at half that rate - 13% of the time,  Native American children had approval for 10% of requests, Hispanic children only had a 6% approval rate. Brooks can still show you records of a mixed race four year old girl that died because of this.,..and she wasn't the only one.

Brooks was furious over the lack of prenatal care for Native American women. 36% of the c-section deliveries took place in an emergency room, 26.7% of those women in Lane County were sent home within four hours of surgery (saving Agate money). Major surgery as an outpatient, with over half of them returning because of bleeding with distressed or dead babies… Among white women Brooks can show records of a mere 0.053% that were not granted a hospital room, 24 women over a five year period.

Brooks was threatened with immediate termination by Korjenek and told to sit down and shut up. That was in front of 35 witnesses. Agate was claiming that doctors were accepting OHP and Medicare patients that they were not and claiming on reports to the government that those very doctors had hundreds of patients when in fact those patients had no doctor.

Brooks' original injuries happened on-the-job and he was denied medical care. Now he requires help to answer Motions and Orders, has to pay ten cents a page just to have papers copied, and simply cannot afford food, medicine medical co-payments, transportation, postage, and accommodations and assistance necessary to survive as a disabled person.

Those on the job injuries resulted from a dangerous work environment that saw Brooks with a detached retina and broken right foot, made even worse when a "small" lathe was knocked off a shelf and landed on it.

In retaliation for complaining about medical redlining and  profiling patients in that October 3 staff meeting, Agate  changed Brooks' job classification to "Exempt" and assigned him custodial work as early as 5 AM, before being the regular days work as a DBA and programmer. This in spite of injuries that made that custodial work painful and dangerous.

On August 19, 2013, at approximately 7 AM, while in a cast and on crutches for an earlier injury, Brooks pushed a heavy steel cart loaded with garbage to an outside dumper. On one trip through the warehouse, the cart caught on a door jam and tipped over, crushing his left foot and injuring his back. The back was not too bad and he did not realize the extent of that injury until receiving an MRI in 2017.

Brooks had an MRI on August 28 for the foot injury and was trying to arrange care by applying for Workman's Compensation. Agate hacked into Brooks' private Microsoft email and cloud accounts. Brooks suspects they were looking for medical information and discovered those

whistleblowing records. Brooks has records of those hacks from Microsoft and they were filed with this case in the District Court.

When Brooks submitted the Workman's Compensation paperwork, Agate CCO Patrice Korjenek, CEO Terry Coplin, and HR Manager Nanette Woods fired him. Korjenek tore up the Workman's Compensation paperwork in front of Brooks.

Agate has refused to cover those on the job injuries for eight years. They destroyed weekly status reports along with my workstations that showed Agate knew about those injuries. There were requests to telecommute and doctor requests to allow that, that Agate denied. Agate denied accommodations  to use a wheelchair to get to me cubical and instead provided a wheeled secretary chair that required "polling" around using a crutch. Doctor recommended FMLA requests for time off for treatment and doctor visits were all denied.

Even with that, Brooks has a few emails and lots of declarations from witnesses showing Agate knew of those injuries. Brooks was smart enough to get declarations from witnesses while Stoel Rives and the District Court stalled this case for eight years, waiting for witnesses to move or forget. Brooks was blamed for that, but a blind person can look at the docket and see who filed for those extensions and it wasn't Brooks.

After the termination, Agate, acting as Oregon's Insurance Benefits Administrator, denied doctor requests for MRI's and treatment. By 2017, those untreated spinal injuries turned into a form of MS that is caused by injuries, not the immune system disease. From the surgeon at OSHU:

> *... in MS, the sheath covering nerve fibers in the brain and spinal cord becomes damaged, slowing or blocking electrical signals from reaching the eyes, muscles and other parts of the body. This sheath is called myelin...Although several treatments and medications alleviate the symptoms of MS, there is no cure.*

Brooks is Pro Se, denied Pro Bono counsel, even though he cannot sit up for more that 10 to 15 minutes, has limited use of my left arm, and cannot even sleep or rest reclining because my involuntary swallow reflex is gone and I choke on my own saliva and can barely walk, even with the aid of crutches or a walker. All in violation of the ADA, ADAAA, and Rehabilitation Act.

Respondent is now accusing Brooks of Contempt of Court for trying to bring details about Agate and Centene's  lawlessness to the Courts.

Reilly Keating cites a Protective Order by Judge Aiken that prohibited Brooks from complying with the FTC, SEC and HIPAA Breach Notification Requirements, complying with 45 CFR §§164-400 - 414. That Protective Order is unlawful and runs afoul of federal law.

The Protective Order violates HIPAA. It violates §§164.400 - 414 and in particular §164.404 and §164.406. It violates §164.502(j) - Standard: Disclosures by whistleblowers and workforce member crime victims. The protective Order violates SEC Rule 21F-7, because it fails to create an exception for communications with the SEC. Again, this Court is ignoring statutory law and Keating is asking the District Court to violate federal **and** international law.

When Judge Aiken wrote her Protective Order she cited 45 CFR 164.502 out of context and tried to write a completely new whistleblower law when 164.502(j) already exists!

> *...EXPRESSLY PROHIBITED from using or disclosing PHI subject to this Order for any purpose other than prosecuting or defending this action. (d) Any person or entity who receives PHI subject to this Order is required to either return to the Covered Entity from whom or which such PHI was obtained or to destroy the PHI (including all copies made thereof), immediately upon (and in no event longer than 45 days from) the conclusion of this action. See 45 C.F.R. §§ 164.502(b); 164.502(b). [6:2014-cv-01424, docket #57]*

Look up §164.502(b) and §164.502(b). §164.502(b addresses the minimum necessary standard rule for use of PHI. §164.502(b)(2), states the rule does not even apply to individual notifications under the individual notification requirement, nor to whistleblowers reporting a crime or breach. See, also §164.512(a)(2), §164.512(c), §164.512(d) - Uses and disclosures for health oversight activities, and §164.512(e) - Disclosures for judicial and administrative proceedings and §164.512(f) - Disclosures for law enforcement purposes.

The Court's Order essentially is a gag order prohibiting Brooks from obeying the law. This court made that challenging that Order impossible by prohibiting Brooks from filing in the Court and appointing a complicit attorney, who hired more of the same. Brooks notes, with interest, that the Court refused to permit him to file anything and appointed counsel ensure that. Now, however, the Court refuses to appoint competent counsel while the COurt seks to retaliate against him.

The Oregon District Court prohibits Brooks from speaking with Congress, other Courts, state and federal governments, already. That Protective Order is Unconstitutional and apparently upheld by the Ninth Circuit.

Those appeals are on their way to the US Supreme Court. This Document, too, as soon as it is done. As for signing anything, I will. No submit to self incrimination by signing a poorly worded legal document I do not and cannot understand. Brooks has done nothing wrong and obey the Order by Judge McShayne to the best of his ability. However, what he learned from the

District Courts is that anything any attorney does that merely claims to represent him is the same as he doing it. And Brooks does NOT trust attorneys and he does not trust the Court.

Keating is also repeated what they had their state agent, Tracy Gates do. On June 6, 2017, demanding an accounting of sealed federal investigations. What Keating is asking for this Court's participation in covering up crimes, including homicide, corporate monsters acting like the Mafia under the cover of "free enterpise".

Keating's demands proves beyond any doubt that this is a political crime and it involves political players. Brooks know that Agate did opposition research and knows that Centene does it also. He also knows and wants made public:

> *It bears mentioning that Centene is a political "player" and huge donor to* <u>*President Biden,*</u> *VP Harris, Speaker Pelosi, etc. Anita Dunn, the Democratic Party operative of the Democratic opposition research firm SKDK worked at the White House with Andy Slavitt through August 12, 2012. Dunn recently generated controversy when it was reported that she refused to disclose her work for the White House, a typical requirement of presidential appointees. Evidently, she was supposed to file OEG 450, according to media articles from a number of sources.*
>
> *Dunn is returning to SKDK. Slavitt was interim head of CMS and helped the Centene Corporation to join AVIA's Medicaid Transformation Project and facilitated their move into international markets in the UK, Germany, Spain, Serbia, Portugal, Australia and even Russia. Now, that is falling apart as Centene is being investigated for criminal activities in the UK, Spain, Serbia, Russia, and Australia. Brooks' case has a direct impact on that because foreign college and high school exchange student record involve child victims from those countries.*
>
> *Ms. Dunn is best known for the Russian conspiracy insanity and the backing by Perkins Coie of the Steele dossier.*

How does a District Court overturn Congress, ignore case law precedence, statutory law, and international treaties and deny appealing that by threatening the litigant with contempt for even appealing the Court's overreach? How does that work in the long run? And, note, that District Court is dangerously close to claiming the right to dictate what and what cannot appealed or even written to the US Supreme Court. Add in their communications with Biden's political Solicitor General who is promising to help respondents and you have a disaster.

What are they going to do? Have President Biden use his office to order the US Department of Labor to destroy records Brooks sent to the Secretary, OSHA, EBSA, Contact Compliance? Repeat that with the Department of Justice, the Office of Inspector General, Health and Human Services, CMS, Social Security, the EEOC, Oregon Department of Justice, the Secretary of State (both US and Oregon)…

That, however, is what Keating and Stoel Rives want. That Protective Order resulted from a False Claims Act case closed three years ago, 6:2014-cv-01424. That was provably complied with, because Leiman and Johnson had custody of every shred of PHI on the date it was dismissed.

I could not/can not appeal to the Supreme Court because 6:2014-cv-01424 is closed. Really? I have a bunch of motions containing false accusations and threats because Respondents are using the courts as a weapon for prohibited retaliatory action against a lawful whistleblower. Then, they want a fishing expedition, to so slow down and cripple Brooks that he cannot file appeals with the US Supreme Court and this will all go away and Centene can get on with the business of destroying lives and making money for some of the most wicked people that ever trod the earth.

Brooks knows about evil people, too. When Brooks was confined to a wheelchair in April - July, 2013, he was NOT permitted to use his wheelchair in Agate's "cubical row" by Korjenek. She was trying to humiliate him. Brooks was called "chief", "squaw", "old man", "Scout" and his people were ridiculed for being drunks and meth "tweakers". Cindy Brown and the Analytics Department head were especially bad because they came from Idaho where the Shoshone were considered dogs.

Brooks was told to use a wheeled secretary chair with a crutch to poll from place to place. He was ridiculed for being "old", "lame", and told to look for another job. It was a full court press by Korjenek to get Brooks to quit.

That this female supervisor would come into his cubicle and begin "work" conversations by telling Brooks of the latest guys she picked up and slept with at two Eugene nightclubs: "Davis" and "Cowfish". She referred to a young, newly married, DBA as "Vlad the impaler". She would demand that Brooks come to her cubicle and complain that he was blocking the entry in his chair and demand that he sit on the floor. Then she would sit back and blink and make suggestive remark like "Im having hot flashes", blink, blink, blink. She thought that was hilarious and Brooks reported it to his wife and friends.

What kind of nutcase makes those kinds of suggestive remarks one minute and angry hateful racist remarks the next, to a wheelchair bound, disabled 66 year old man? Someone desperately trying to create such a horrible work environment they will quit,

Brooks never had anything to do with her after work, avoided her. She required everyone working for her to have a FaceBook account. This was the only "social media" account Brooks has ever had. She "messaged" Brooks that she loved him and had an abrasion. Brooks thought

she meant she had a rope burn from her dog tugging her. At work she told Brooks that was from shaving. As Brooks told the administrative judge "And I went – and I actually blushed. It was – it was horrifying. I wasn't used to young women talking to me that way at all".

That supervisor, the Analytics Department head, was used to pre-textually fire other whistleblowers. Dean Harris was accused of "sexually harassing" this woman and fired, too. Dean Harris was the whistleblower in Brooks' position that Brooks replaced. Brooks' supervisor was the head of Apropo Benefits Management, then, that was in trouble for fraud. Coplin somehow got Agate out of that bind. Read "New business faces questions about past" by Robin Moody. It's a May 1, 2005 article from the Oregon Business Journal and well worth reading. It proves you cannot teach an old dog new tricks because Centene is doing the same stuff today and still getting caught. Crooks are not nearly as smart as they think they are.

In total, Brooks has been told there are five, and perhaps six (that being Coplin), complaints of sexual harassment by this woman. That was part of her job. That was how she got her job. This is the kid of people Respondent's counsel are, too.

Brooks filed the False Claims Act case two days **after** he filed his wrongful termination case. The DVD of evidence was filed with the wrongful termination case, not this case. A copy of that was given to US Marshalls in the False Claims Act case on September 10, 2014. That was hand carried to the Portland US Attorney's office. Brooks does not recall giving Judge Aiken's Court a copy of that DVD, but there are references to a "CD", which is electronic data. That is contained in Brooks' original filing of September 4, 2014.

Brooks did this in accord with 45 CFR 164.502(j) and the Howard v. Ark. Children's Hospital case (4:2013-cv-00310). There is a lot of case law supporting whistleblowers having access to PHI. United States v. Lazar, 604 F.3d 230 (6th Cir. 2010) which holds that HIPAA cannot be used to bar the legitimate discovery or use of relevant medical records in litigation involving fraud or record breaches, and Howard v. Ark. Children's Hospital. - 4:2013-cv-00310 where "defendant asked the court to order the return of its documents and argued that the relator was not a "true" whistleblower because his concerns were unreasonable. The court concluded that, regardless of reasonableness, whistleblower safe harbor protected the relator, and refused to order return of the documents".

The Ninth Circuit did not overturn Judge Aiken's ruling setting up a conflict between Judge Aiken's opinion in her Protective Order -and- United States v. Lazar, Howard v. Ark. Children's Hosp. and 45 CFR §164.502(j).

The Ninth Circuit Court, in dismissing 19-35547, concurred. So, you have the First, Second, and Fifth Appellate Courts deciding that Lazer and Howard are correct and the Ninth Circuit Court opposing. The Supreme Court WILL take that case. It will be even more interesting if the Solicitor sides with Centene and the Oregon District Court, and Brooks bets she will. Centene is a big donor.

Brooks has every right to the evidence that was unlawful taken from him and requests its immediate return by Stoel Rives. That shall include the memory sticks order sent them by this Court as well as ALL of the documents given them by Dugan. Brooks also wants for an accounting of anyone they shares, copied or gave those records to detailed.

This Court is required to Order Respondent and Oregon to comply with 45 CFR 164.400 - 414, the HIPAA Breach Notification Statutes. If the have not complied within 30 days, Brooks asks the Court to take possession of those records and file copies as demanded by Statutory law with the OIG at the SEC, FTC, Secretary of HHS, etc. Since their client is Agate Resources and Agate Resources cannot possess or seethe PHI they sold, their counsel cannot see nor possess it either. Neither have any right to those records. Under 45 CFR 164.530 the HIPAA Security Rules and 45 CFR §164.504-Requirement  Respondents are **required** to destroy any records they have in their possession.

This Court is required to comply with  the UN Human Rights and Fourth Geneva Convention, Section 3 - "outrages upon the personal dignity, [and] in particular were humiliating and degrading". It is apparently this Court 's responsibility to notify and provide records to  the UN Human Rights Counsel and  International Court of Justice.

And, again, Trillium provides no safe harbor. CFR §164.316(b)(1) and (2) details how long records may be retained and for Trillium that is 6 years. Centene has no right to possess records and is in violation of HIPAA. Please Order them to destroy those records

The US government sent two investors to meet with Brooks in 2014 (Brooks declines to provide the date because this is/was currently under criminal investigation by the US government). We met at the Social Security Offices in Eugene because Oregon had twice attempted to pass off state employees as federal investigators. Right in the middle of that meeting, a woman calling herself "Shelly" called from "the Unemployment Department" and demanded banking records and the dates and identities of federal investigators he met with.

There were two investigators, Kim **** and Bob *** and witnessed Oregon State employees demanding and phishing for information on behalf of Respondents.

The District Court would not allow Brooks to proceed Pro Se. The Court appointed an attorney, Jesse London. Right at that time, and Brooks has learned there are no coincidences, Brooks found an attorney who was interested. A US Attorney telephoned her. This was the same US Attorney that sent records to Jeffrey Wertkin. That Portland US Attorney told the attorney Brooks had found that Brooks had no case and was lying about evidence he had. She, of course, disappeared. Judge Aiken knows about that, too, because that attorney that there were no CPT codes in the documents Brooks gave to the Court. Brooks wrote a letter on April 30, 2015, to the Judge pointing out the CPT codes and other errors made by the US Attorney.

That Portland based US Attorney was forced to resign because of that. Brooks was shaken by this at the time, but has come to expect that most white government officials are corrupt and politically motivated.

That was when Judge Aiken appointed Jesse London. As previously stated, London hired Leiman and Johnson and all of them, together, hired Marianne Dugan. They called themselves the "Dream Team", but they are a nightmare. Brooks' salvation was that he had virtually nothing to do with that False Claims Act case. The few documents they asked for they ignored. Brooks is too precise, what they call wordy.

The Court, Judges, Stoel Rives, everyone is aware that none of these lawyers was retained by Brooks. Every one of them was appointed. The only attorney Brooks retained in this entire matter was Michael Vergamini who did nothing as far as Brooks can tell.

Mike Brooks, is at a loss about what to say. Stoel Rives seems dead set on blaming Brooks the fiasco **they** and Marianne Dugan created. Brooks, and anyone with can read the docket of 6:2015-cv-00983 and read all about that disaster. Stoel Rives was in communication with Dugan on Sunday, September 10, 2017, and Stephen Galloway threatened her with additional fines and reprisals if she did not blindly and immediately steal everything in that store room and send it to Stoel Rives:

> *I just learned there is approximately a bankers box* [There were 3.] *of documents that were not scanned. I worry that scanning them will eat up too much time - can you send someone down to review?* [0123: Dugan email to Galloway 9/10/17 12:42 PM]
>
> *Regarding the additional documents, you need to find away to get them to us in time to review for the deposition. The court treated this portion of our motion as moot based on your representation (12 days ago) that all documents had been produced.* [mb: it was Galloway who asserted that, not Dugan.] *Otherwise, it would have undoubtedly ordered you to produce them before now and bear responsibility for all costs necessary to do so. A vendor will not have any trouble scanning a box of documents and sending us the files electronically in a day. If we do not get the documents by close of business*

*tomorrow, we will be forced to take the matter up with the court.* [0124:Galloway email to Dugan 9/10/17 1:44 PM]

This was blatant coercion and blackmail, threatening further fines if she spent time looking at the evidence to see what was privileged or not. With Dugan that probably did not matter, but Galloway gave her no choice.

Stoel Rives wants to blame Brooks for their part in the sloppy theft of Brooks' property. Since that has a part to play in the present Motion, Brooks is asking for discovery and **all** of those emails and all of the documents stolen from him before they are ordered to destroy them .

Brooks had nothing to do with that theft. The Court, in fact, used that and Dugan's disappearing act and the phony RFP filings by Stoel Rives to deny Brooks discovery, wherein a declaratory decree deprived Petitioner of his right to discovery and 14th Amendment Due Process. These are declaratory decree violations.

The judge in this case can see those earlier discover conferences. Brooks refers to them on the record. You can see where Brooks filed three different kinds of RFP's before Dugan was appointed. Respondents just ignored them. So you have a real problem with the illicitly imposed Magistrate Judge denying Brooks discovery. In a recorded conference on March 18, 2018, two years after denying discovery to Brooks based on the Dugan's escapades, that Magistrate said Brooks would be permitted discovery sometime off in the distant future after she disposed of dispositive motions (!!!). That day, of course, never arrived.

In the meanwhile the Court allowed Stoel Rives to keep and use had everything Brooks had done in this case and every administrative hearing since 2006, his case notes, strategy documents, all rough drafts, work product, attorney work product, and attorney client emails

Brooks asks the Court to hold Defendants Guilty of Retaliation for Brooks' reporting Respondent's non-compliance with the HIPAA Breach Notification requirements. In Darveau v. Detecon, Inc., the Fourth Circuit held that the kind of groundless threats made by Stoel Rives in the Motions are retaliatory and (1) lacks "reasonable basis in fact or law" and (ii) was filed with "retaliatory motive." 515 F.3d at 341.

Respondent's are asking the Court to Deprive Brooks of his Civil Rights for reporting crimes by them, including homicides. They are asking this court to supersede the US Supreme Supreme and Congress, ignore Congressional statutes and the Constitution.

•       They ask the Court to deprive Brooks of his First Amendment Rights to free speech by dictating what he can and cannot say to the US Supreme Court or other courts. They want to limit what Courts and appeals Brooks can use. Respondents ask the court to deprive Brooks of

his fifth Amendment right against self incrimination by a clever order designed to force him to sign a contrived declaration written in incomprehensible legal jargon. Respondents AND this Court violate Petitioner's *1st Amendment Right To Free Speech, *14th Amendment right to Due Process, and this Court  * and this court refuses to honor its obligations to Petitioner under ADA, ADAAA, and Rehabilitation Act.

And, finally, this Court trying is Brooks for Civil Contempt in retaliation and harassment for appealing its unlawful Protective Order for which he was denied he right to appeal, abrogating Brooks' legal rights and using a "Qui Tam" case as the pretext.

Defendants are asking the Court for revenge and retaliation. That lands this Court in a declaratory issue decided in  Darveau v. Detecon, Inc.. There, the Fourth Circuit held that the kind of exaggerated threats made by Stoel Rives in their Motions are  retaliatory and lack "reasonable basis in fact or law" and  was filed with "retaliatory motive." 515 F.3d at 341. Especially applicable is the section 1107 addition to Sarbannes Oxley and Respondent's deliberately withholding medical care that has resulted in cardiac damage, multiple sclerosis, paralysis:

> *Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.*

Brooks is not a lawyer. He is disabled and has been denied ADA mandated accomodations permitting him to defend himself when the Court decided he could participate in this case when Respondent's abuse it to harm and retaliate against him.

These are criminal as well as civil issues and Brooks in not certain if this Court will hear the criminal issues, but Brooks will pursue them, even if limited before the UN and World Court.

Agate Resources fired brooks in the full knowledge he had been injured as a result of Agate's operating a dangerous workplace. Those on the job injuries occurred over a two year period. Two of those injuries resulted from harassment and are thus, deliberate and fall under ORS 659A-040 - Workers Compensation discrimination and withholding critical care that led to permanent disabilities; and 29 USC LABOR, Ch 28 -  2611 et seq that deprived Brooks for time off for surgery and other medical care and then denied Brooks access to medical care for eight years while Agate and Centene secretly operated Trillium as Oregon Benefits Administrator for Brooks insurance as a dependent on his wife's OEBB (public school teacher) medical insurance.

1.      For example, a still untreated back MRI shows anterior extension of disk material extending into the retoperitoneum at the level of the aorta an cava

2.      L5-L1 broad based disc bulge with moderate left neural foramina stenosis with lateral component adversely effecting nerve root egress at Left L5

- Title VII - 42 USC 200e-2 of the Civil Rights Act for racial taunts and discrimination based on Brooks' Native American race led to discrimination including racial taunts and insults and Agate co-workers encourage to act out racist war whoops, war dances, and so on
- Age discrimination based in Title VII and 29 USC 623 - ADEA,
- 18 USC 1514A, Sarbanes Oxley - opposition for unlawful conduct, Note that Dodd Frank Section 959A changed section 806 of Sarbanes Oxley. Contractor and subcontractors of public and non-profit corporations were subject to Sarbanes-Oxley. Whistleblower protections are far broader than those alleged under Section 959A; Section 1107 addition to SOX
- SEC violations under 17 CFR 21F1 thru 21F-17,  and note that the SEC mfified section 659
- Dodd Frank and Section 1057 Of Dodd Frank 15 USC 78u-6 and 12 USCA 5567,
- 31 USC 3730 - False Claims, 29 USC 218C and 1558 of the Affordable Care Act,
- Worker Compensation Discrimination,
- Failure to provide reason able accommodations under the ADA which had led to worse injuries
- ORS 135.733 - Racism and false accusations of sexual misconduct coupled with criminally altering documents and knowingly making false  states,

Michael T Brooks